IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUST FILM, INC., et al.,

        Plaintiffs,

   v.

MERCHANT SERVICES, INC., et al.,

        Defendants.

_____/

UNIVERSAL CARD, INC. and NATIONAL
PAYMENT PROCESSING, INC.,

        Cross-claimants,

   v.

PROTÉGÉ INVESTMENTS, INC.; ROVER
ENTERPRISES, INC.; MERCHANT SERVICES
F.A., INC.; FIONA WALSHE; and ANTHONY
KUTSCHER, JR.,

        Cross-Defendants.

_____/

ATLAS PAYMENT PROCESSING and FIONA
WALSHE,

        Cross-claimants,

   v.

MERCHANT SERVICES, INC.; UNIVERSAL
CARD, INC.; NATIONAL PAYMENT
PROCESSING, INC.; and JASON MOORE,

        Cross-Defendants.

_____/

No. C 10-1993 CW

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS
(Docket Nos. 108,
109, 112, 114, 115,
121 and 122)

Plaintiffs Just Film, Inc., et al., allege that they were

defrauded in a scheme involving credit card processing services and

equipment. Defendants Merchant Services, Inc., et al., are twenty-

United States District Court
For the Northern District of California

one entities and fifteen individuals that are alleged to have been involved in or benefitted from the alleged fraud. Seven groups of Defendants have moved to dismiss Plaintiffs' claims: (1) Defendants Merchant Services, Inc.; Universal Card, Inc.; National Payment Processing, Inc.; Jason Moore; Eric Madura; Nathan Jurczyk; Robert Parisi; Alicyn Roy; JMW Holdings, LLC; La Quinta Holdings, LLC; and Universal Merchant Services, LLC (collectively, MSI Defendants); (2) Defendants MBF Leasing LLC; Northern Funding, LLC; Northern Leasing Systems, Inc.; Golden Eagle Leasing LLC; Lease Finance Group, LLC; RBL Capital Group, LLC; Jay Cohen; Sarah Krieger; Rich Hahn; Brian Fitzgerald; Sam Buono; Lina Kravic and Leonard Mezei (collectively, Northern Leasing Defendants); (3) Defendant Brian Fitzgerald; (4) Defendants MBF Merchant Capital, LLC, and William Healy; (5) Defendants Joseph Sussman and Joseph I. Sussman, PC (collectively, Sussman); (6) Defendants TransFirst Holdings, Inc.; TransFirst, LLC; TransFirst Third Party Sales, LLC; and Columbus Bank and Trust Company (collectively, TransFirst and CB&T); and (7) Defendant Fifth Third Bank. Defendant Fiona Walshe and Defendant Lease Source-LSI, LLC, apparently erroneously sued as Lease Source, LLC,[1] did not file their own motions to dismiss, but instead join those above. Plaintiffs oppose the motions. A hearing on the motions was held on September 16, 2010, at which the Court identified deficiencies in Plaintiffs' amended complaint and instructed the parties to file a status report within sixty days of the date of the hearing. The parties timely filed their status

---

[1] Plaintiffs' complaint names Lease Source, LLC as a Defendant. However, Lease Source-LSI, LLC, has appeared in the action, contesting Plaintiffs' allegations. It is not clear whether the two entities are the same.

report.

Having considered oral argument and the papers submitted by the parties, the Court GRANTS in part and DENIES in part the MSI Defendants' Motion to Dismiss; GRANTS the Northern Leasing Defendants' Motion to Dismiss; GRANTS Defendant Fitzgerald's Motion to Dismiss; GRANTS MBF Merchant Capital LLC and Healy's Motion to Dismiss; GRANTS Sussman's Motion to Dismiss; GRANTS in part and DEFERS its decision in part on the TransFirst Defendants' Motion to Dismiss; and GRANTS Fifth Third Bank's Motion to Dismiss.

BACKGROUND

Plaintiffs are California businesses and their owners, who are California residents.  Just Film is owned by Volker Von Glasenapp. Rainbow Business Services d/b/a Precision Tune Auto Care is owned by Jerry Su.  Burlingame Motors is owned by Verena Baumgartner. Dietz Towing, Inc., is owned by Terry Jordan.  The Rose Dress Inc. is owned by Lewis Bae.  Below, for brevity, the Court uses each respective owner's last name to refer to both the business and its owner.

Plaintiffs divide the thirty-five Defendants into three separate categories: (1) Merchant Services Defendants, (2) Leasing Defendants and (3) Processor Defendants.  Each category played a different role in the alleged fraudulent scheme.  Unless otherwise noted, all parties named below are Defendants.

The Merchant Services category consists of California-based entities and individuals.  Plaintiffs allege that Merchant Services, Inc. (MSI) also operates under the names Universal Card, Inc.; National Payment Processing; and Universal Merchant Services LLC.  Plaintiffs refer to all of these entities as the Merchant

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Services Companies and aver that each of them is the alter ego of the others.  Plaintiffs allege as follows about the individual Merchant Services Defendants: Moore is MSI's CEO and majority shareholder; Jurczyk is MSI's Vice President of Operations and an MSI shareholder; Parisi is MSI's Senior Vice President and an MSI shareholder; Madura is MSI's Manager of Corporate Operations; Walshe was a regional sales manager for MSI; and Roy was a senior account executive for MSI.  Plaintiffs contend that the Merchant Services Companies are alter egos of Moore, Jurczyk and Parisi.

Although Plaintiffs include in the Merchant Services category JMW Holdings, LLC, and La Quinta Holdings, LLC, these entities were not involved directly in the alleged fraud.  Instead, Plaintiffs allege that these are alter egos of Moore to which Moore transferred various properties purchased with profits from the fraudulent scheme.  Plaintiffs refer to JMW Holdings and La Quinta Holdings as the Moore Shell Companies.  Because the Moore Shell Companies were not directly involved in the alleged fraud, any reference below to the Merchant Services Defendants does not include them.

The Leasing Defendants category consists of entities and individuals based outside of California.  Plaintiffs allege that Northern Leasing Systems Inc. has a principal place of business in New York and owns MBF Leasing LLC; Golden Eagle Leasing LLC; Lease Source, Inc.; Lease Finance Group, LLC; and Forrester UK Holdings LLC.  Plaintiffs refer to all of these entities as the Northern Leasing Companies and contend that each of them is the alter ego of the others.  Plaintiffs allege that the following individual Leasing Defendants are associated directly with the Northern

**United States District Court**
For the Northern District of California

Leasing Companies: Cohen is Northern Leasing's President and CEO and Forrester UK Holdings's President; Mezei is Northern Leasing's chairman of the board; Krieger is Northern Leasing's Vice President of Operations; Hahn is Northern Leasing's Vice President for Sales; Fitzgerald is MBF Leasing's Executive Vice President for Business Development; Kravic is MBF Leasing's Operations Manager; and Buono is MBF Leasing's Vice President of Collections and Customer Service.  Plaintiffs aver that Sussman is a New York-based attorney and is the principal of Joseph I. Sussman, P.C., a law firm.  MBF Merchant Capital has a principal place of business in Illinois, and RBL Capital Group, LLC, has a principal place of business in New York.  Plaintiffs allege that Healy is MBF Merchant Capital's president and sole shareholder and RBL Capital Group's former president.

The Processor Defendants category consists entirely of entities.  Plaintiffs aver that TransFirst Holdings, Inc., is the parent company of TransFirst LLC and TransFirst Third Party Sales, Inc.  Plaintiffs allege that TransFirst Holdings is headquartered in Texas and that the TransFirst subsidiaries operate in Colorado. Also included in this category are CB&T and First Third Bank, to which Plaintiffs refer as the Bank Defendants.  The Bank Defendants are not California citizens.

The alleged fraudulent scheme operated as follows.  The Merchant Services Companies marketed credit card processing services and equipment.  Through their agents, such as Walshe, the Merchant Services Companies misled Plaintiffs about the rates for the services and the necessity and value of the equipment.  In reliance on the alleged misrepresentations, Plaintiffs entered into

United States District Court
For the Northern District of California

two agreements: a Merchant Card Processing Agreement (MCPA) and an Equipment Finance Lease (EFL).  The MCPA governed credit card transaction services, and the EFLs governed the equipment leases. Von Glasenapp's, Su's, Baumgartner's and Jordan's MCPAs were with TransFirst and CB&T; Bae's MCPA was with Fifth Third.[2]  Plaintiffs allege that, along with the Leasing Defendants, the Merchant Services Defendants altered the terms of the MCPAs and EFLs by adding pages that had not been previously presented to Plaintiffs, changing material terms of the contracts and completing fields that were blank at the time of execution.  With regard to the added pages, Plaintiffs maintain that they never saw them.  Plaintiffs allege that any initials or signatures indicating that they reviewed the pages were forged.

The Leasing Defendants financed the EFLs.  Specifically, MBF Merchant Capital and RBL Capital Group provided the Northern Leasing Companies with the funds necessary to finance the leases. Krieger executed the EFLs on behalf of the Northern Leasing Companies.  To collect from lessees who defaulted on their payments, Buono and Sussman filed collection lawsuits in New York, intending to "obtain default judgments which can be sold to collection agencies and also to extort payment from Class members

---

[2] Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question and there are no disputes over their relevance.  Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings").  Although Plaintiffs dispute the authenticity of portions of the MCPAs, they do not challenge the sections that name these Defendants as parties to the agreements.

1   who wish to preserve their good credit ratings."  Am. Compl. ¶ 137.

2   In addition to working with the Merchant Services Defendants to

3   make fraudulent alterations to the terms of the EFLs, the Leasing

4   Defendants engaged in other fraudulent activities, including

5   charging Plaintiffs for a "personal property tax," even though no

6   such tax was owed to a governmental entity.  Id. ¶ 124.

7        The Processor Defendants provided credit card transaction

8   services.  Specifically, TransFirst, which had contracts with the

9   Merchant Services Defendants, offered "credit card acceptance and

10   processing services on behalf of" the Bank Defendants.  Am. Compl.

11   ¶ 45.  The Bank Defendants authorized "the Merchant Services

12   Defendants and the TransFirst Defendants to market and sell credit

13   card processing services."  Id. ¶¶ 46-48.  Plaintiffs allege that

14   TransFirst, along with the Merchant Services Defendants, used

15   "different bill formats to confuse customers and hide false

16   charges."  Id. ¶ 128.

17        The pages allegedly added to Von Glasenapp's, Su's,

18   Baumgartner's and Jordan's MCPAs contained arbitration and forum

19   selection clauses, requiring disputes based on the agreements to be

20   arbitrated and litigated in Colorado.  Bauer Decl., Exs. 1-4.  The

21   pages allegedly added to Bae's MCPA designated Cincinnati or

22   Hamilton County, Ohio as the proper forum for any lawsuit arising

23   from the contract; however, his MCPA did not require arbitration.

24   Bauer Decl., Ex. 5.

25        Plaintiffs bring nine claims: (1) violation of the federal

26   Racketeer Influenced and Corrupt Organizations Act (RICO), 18

27   U.S.C. § 1962(c); (2) conspiracy to commit a RICO violation, in

28   violation of 18 U.S.C. § 1962(d); (3) "Fraud, Deceit and/or

7

Misrepresentation;" (4) negligent misrepresentation; (5) violation of California's False Advertising Law, Cal. & Bus Prof. Code § 17500; (6) breach of contract; (7) breach of the implied covenant of good faith and fair dealing; (8) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, <u>et seq.</u>; and (9) fraudulent conveyance.

On March 26, 2010, Plaintiffs filed their action in San Francisco County Superior Court. On May 7, 2010, Defendants removed the action to federal court. On June 25, 2010, Plaintiffs filed an amended complaint. Plaintiffs intend to move for class certification.

On November 23, 2010, Plaintiffs filed a notice stating that they voluntarily dismissed without prejudice their claims against Merrick Bank, which they had named as a Defendant in their amended complaint.

DISCUSSION

I.  Dismissal under Federal Rule of Civil Procedure 12(b)(2)

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that the Court has jurisdiction. <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. <u>AT&T v. Compagnie Bruxelles Lambert</u>, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. <u>Data Disc, Inc.</u>

**United States District Court**
For the Northern District of California

v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977).  If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor.  AT&T, 94 F.3d at 588.

There are two independent limitations on a court's power to exercise personal jurisdiction over a non-resident defendant: the applicable state personal jurisdiction rule and constitutional principles of due process.  Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990); Data Disc, Inc., 557 F.2d at 1286.  California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis.  Rano v. Sipa Press, Inc., 987 F.2d 580, 587 (9th Cir. 1993).

The exercise of jurisdiction over a non-resident defendant violates the protections created by the due process clause unless the defendant has "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The individual Leasing Defendants assert that the Court lacks personal jurisdiction over them.  Plaintiffs assert that the Court may exercise jurisdiction under the RICO statute or, in the alternative, specific jurisdiction.  Plaintiffs do not contend that general jurisdiction is proper.

A.   RICO Jurisdiction

Plaintiffs maintain that 18 U.S.C. § 1965(b) supports the exercise of personal jurisdiction over all individual Leasing Defendants.

Section 1965(b) provides that, in any civil RICO action,

> in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

"Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it." <u>Butcher's Union v. SDV Inv., Inc.</u>, 788 F.2d 535, 539 (9th Cir. 1986) (citation omitted). However, "the right to nationwide service in RICO suits is not unlimited." <u>Id.</u> A court "must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." <u>Id.</u>

As explained in further detail below, Plaintiffs do not allege sufficient facts to support their RICO claims. Until and unless they state RICO claims, the Court cannot exercise personal jurisdiction under § 1965(b) over the individual Leasing Defendants.

B.   Specific Jurisdiction

The Court has specific jurisdiction over a defendant when the cause of action arises out of or relates to the defendant's activities within the forum. <u>Data Disc, Inc.</u>, 557 F.2d at 1286. The "minimum contacts" required to assert specific jurisdiction are analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof, or perform some

10

act by which it purposefully avails itself of the privilege of
conducting activities in the forum, thereby invoking the benefits
and protections of its laws; (2) the claim must be one which arises
out of or results from the defendant's forum-related activities;
and (3) the exercise of jurisdiction must be reasonable.  <u>Lake v.
Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987).  Each of these
conditions is required for asserting jurisdiction.  <u>Ins. Co. of N.
Am. v. Marina Salina Cruz</u>, 649 F.2d 1266, 1270 (9th Cir. 1981).

Plaintiffs argue that the individual Leasing Defendants
purposefully directed their activities toward California residents.
This suggests that Plaintiffs intend to bring only tort claims
against them; Plaintiffs do not offer a purposeful availment
analysis, which generally applies to contract claims.  <u>See
Schwarzenegger</u>, 374 F.3d at 802 ("A purposeful availment analysis
is most often used in suits sounding in contract.  A purposeful
direction analysis, on the other hand, is most often used in suits
sounding in tort.").

For a defendant's conduct to demonstrate purposeful direction,
the defendant must "allegedly have (1) committed an intentional
act, (2) expressly aimed at the forum state, (3) causing harm that
the defendant knows is likely to be suffered in the forum state."
<u>Id.</u> (quoting <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1111 (9th
Cir. 2002)).

Plaintiffs make only broad, general allegations against Cohen,
Mezei, Hahn, Fitzgerald and Kravic.  Plaintiffs aver that these
Defendants directed and controlled the Northern Leasing Companies,
which is not sufficient to support personal jurisdiction.  Without
more, the fiduciary shield doctrine applies to these Defendants.

United States District Court
For the Northern District of California

Under this doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989). The doctrine is subject to two exceptions: "(1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of, and direct participation in the alleged activities." Wolf Designs, Inc. v. DHR & Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004) (citations omitted). However, Plaintiffs do not allege facts that suggest any of the Northern Leasing companies is an alter ego of any of these Defendants. Nor do Plaintiffs' general allegations explain how these Defendants controlled or directly participated in the alleged fraudulent scheme. Thus, Plaintiffs have not justified specific jurisdiction over these Defendants.

Although Plaintiffs plead additional facts with regard to Krieger, Buono and Sussman, they are not sufficient to support specific jurisdiction. Plaintiffs aver that Krieger executed Von Glasenapp's EFL on behalf of the Northern Leasing Companies. However, Plaintiffs do not plead facts suggesting that Krieger knew or could reasonably foresee that, by executing the lease, she would cause harm to Von Glasenapp. See Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010). Thus, under Plaintiffs' current allegations, the Court lacks specific jurisdiction over Krieger.

Plaintiffs allege that Buono filed lawsuits in New York to collect monies due under the purportedly fraudulent contracts. However, Plaintiffs do not allege that they were the subjects of

12

United States District Court
For the Northern District of California

1  Buono's lawsuits.  Nor do they plead that Buono took any other

2  action against any of them.  Consequently, Plaintiffs' allegations

3  do not support specific jurisdiction over Buono.

4      Plaintiffs aver that Sussman served Bae with a complaint and

5  summons for a collection lawsuit filed in New York state court.

6  However, Plaintiffs do not allege facts tending to show that

7  Sussman knew of the alleged fraudulent scheme or that the filing of

8  the New York lawsuit constituted malicious prosecution or some

9  other tort.  Plaintiffs offer no authority that the filing of a

10 single lawsuit, in the court of another state, is sufficient to

11 support specific jurisdiction in California.  Without more, the

12 Court lacks specific jurisdiction over Sussman.

13     Finally, Plaintiffs fail to establish that specific

14 jurisdiction over Healy is appropriate.  Plaintiffs allege that

15 Healy purposefully directed activities against forum residents by

16 causing MBF Merchant Capital and RBL Capital Group "to unlawfully

17 deduct monies from accounts of Plaintiffs and other Californians."

18 Am. Compl. ¶ 41.  However, Healy filed an affidavit stating that

19 neither he nor MBF Merchant Capital "ever deducted payments from

20 any person's account related to" EFLs.  Healy Decl. ¶ 12.

21 Plaintiffs did not address Healy's assertions in their opposition

22 or proffer an affidavit with contrary facts.  Plaintiffs also

23 allege that Healy recruited the Merchant Services Defendants to

24 market credit card processing services and equipment.  However,

25 Plaintiffs do not plead that Healy knew or reasonably foresaw that

26 this action would cause them harm.  Consequently, Plaintiffs have

27 not justified specific jurisdiction over Healy.

28

C.    Jurisdictional Discovery

Plaintiffs request leave to conduct jurisdictional discovery, which the Court has discretion to grant.  Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008).  "Discovery may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  Data Disc, Inc., 557 F.2d at 1285 n.1. A district court abuses its discretion only if it is evident that denying discovery "results in actual and substantial prejudice to the complaining litigant."  Id.

In accordance with Defendants' proposal in the parties' status report, the Court grants Plaintiffs leave to conduct jurisdictional discovery.  Plaintiffs may propound discovery requests on the individual Leasing Defendants by December 10, 2010.  These requests shall be limited to discovering facts necessary to establish personal jurisdiction.  The individual Leasing Defendants shall respond to the requests by January 20, 2011.

Because the Court grants Plaintiffs leave to take jurisdictional discovery, the individual Leasing Defendants' motions to dismiss for lack of personal jurisdiction are granted and Plaintiffs are granted leave to amend their complaint to plead facts to establish jurisdiction.  Defendants may file their Rule 12(b)(2) motions anew after Plaintiffs file their second amended complaint.

II.  Dismissal under Federal Rule of Civil Procedure 12(b)(3)

A defendant may raise a Rule 12(b)(3) motion to dismiss for improper venue in its first responsive pleading or by a separate pre-answer motion.  Fed. R. Civ. P. 12(b)(3).  Once the defendant

14

challenges venue, the plaintiff bears the burden of establishing that venue is proper. <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 496 (9th Cir. 1979).

When considering a Rule 12(b)(3) motion to dismiss, the pleadings need not be accepted as true, and the court "may consider facts outside of the pleadings." <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1292 (9th Cir. 1998). In "the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." <u>Murphy v. Schneider Nat'l, Inc.</u>, 362 F.3d 1133, 1138 (9th Cir. 2004). If "the facts asserted by the non-moving party are sufficient to preclude enforcement of the forum selection clause, the non-moving party is entitled to remain in the forum it chose for suit unless and until the district court has resolved any material factual issues that are in genuine dispute." <u>Id.</u> at 1139. "As a result, at least until facts are resolved, in many cases the non-moving party will survive the Rule 12(b)(3) motion." <u>Id.</u>

Courts have discretion in resolving factual disputes related to the enforcement of a forum selection clause. As the <u>Murphy</u> court explained,

> To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. Whether to hold a hearing on disputed facts and the scope and method of the hearing is within the sound discretion of the district court. . . . Upon holding an evidentiary hearing to resolve material disputed facts, the district court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion. These factual findings, when based upon an evidentiary hearing and findings on disputed material issues, will be entitled to

United States District Court
For the Northern District of California

1   deference.

2   362 F.3d at 1139-40 (citations omitted).

3       TransFirst and CB&T argue that Von Glasenapp, Su, Baumgartner

4   and Jordan's claims must be dismissed for improper venue because

5   their MCPAs contain a forum selection clause designating "the

6   county and district courts in and for Boulder County, Colorado" as

7   the proper venue.  See, e.g., Sullivan Decl., Ex. 2 at 20.  In the

8   alternative, TransFirst and CB&T move to transfer this action to

9   the District of Colorado pursuant to 28 U.S.C. § 1406(a).  As an

10  additional alternative, TransFirst and CB&T ask the Court to stay

11  this action pending arbitration, which is purportedly required

12  under these Plaintiffs' MCPAs; however, TransFirst and CB&T did not

13  move to compel arbitration.  TransFirst and CB&T's motion does not

14  apply to Bae's claims because his agreement with Fifth Third Bank

15  contains a clause designating the courts of "Cincinnati or Hamilton

16  County, Ohio" as the proper venue.[3]  In their Consolidated Reply,

17  the other Defendants indicate they do not oppose TransFirst and

18  CB&T's transfer request.

19      Forum selection clauses are "presumptively valid" and "should

20  be honored 'absent some compelling and countervailing reason.'"

21  Murphy, 362 F.3d at 1140 (quoting Bremen v. Zapata Off-Shore Co.,

22  407 U.S. 1, 12 (1972)).  There are three reasons, however, that

23  "make enforcement of a forum selection clause unreasonable: (1) 'if

24  the inclusion of the clause in the agreement was the product of

25  fraud or overreaching'; (2) 'if the party wishing to repudiate the

26  clause would effectively be deprived of his day in court were the

27  _____

28      [3] Fifth Third Bank did not move to dismiss Bae's claims under
    Rule 12(b)(3).

United States District Court
For the Northern District of California

clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'"  <u>Murphy</u>, 362 F.3d at 1140 (quoting <u>Richards</u>, 135 F.3d at 1294).

Von Glasenapp, Su, Baumgartner and Jordan claim that the arbitration and forum selection clauses are unenforceable based on their allegations that their inclusion was the product of fraud. TransFirst and CB&T argue, however, that the clauses are enforceable and contests these Plaintiffs' allegations that their signatures and initials were forged.

There appears to be a dispute of material fact concerning the enforceability of the arbitration and forum selection clauses in Von Glasenapp's, Su's, Baumgartner's and Jordan's agreements. Accordingly, the Court reserves its decision on TransFirst and CB&T's motion to dismiss under Rule 12(b)(3) pending resolution of this issue.

In accordance with Defendants' proposal in the parties' status report, TransFirst, CB&T and Plaintiffs shall conduct limited discovery concerning the alleged forgeries.  Discovery on this topic shall be propounded by December 10, 2010.  Responses shall be due by January 20, 2011.

To resolve whether the documents were forged, Plaintiffs and TransFirst and CB&T shall file cross-motions for partial summary judgment.  Plaintiffs shall file their motion for partial summary judgment on February 17, 2011.  TransFirst and CB&T's cross-motion for partial summary judgment and opposition to Plaintiff's motion shall be due March 3, 2011.  Plaintiffs' opposition to TransFirst and CB&T's cross-motion and reply to TransFirst and CB&T's opposition shall be due March 10, 2011.  TransFirst and CB&T's

reply to Plaintiffs' opposition to their cross-motion shall be due March 17, 2011.  A hearing on the cross-motions will be held on March 31, 2011 at 2:00 p.m., unless the matter is taken under submission on the papers.  If necessary, an evidentiary hearing will be scheduled.

III. Dismissal under Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without

United States District Court
For the Northern District of California

contradicting any of the allegations of [the] original complaint."
<u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990).
Leave to amend should be liberally granted, but an amended
complaint cannot allege facts inconsistent with the challenged
pleading.   <u>Id.</u> at 296-97.

A.   RICO Claims

Plaintiffs allege claims for violations of 18 U.S.C. § 1962(c)
and conspiracy to violate § 1962(c).  These claims are directed at
all Defendants, except the Moore Shell Companies.

"To state a claim under § 1962(c), a plaintiff must allege
'(1) conduct (2) of an enterprise (3) through a pattern (4) of
racketeering activity.'"   <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541,
547 (9th Cir. 2007) (quoting <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473
U.S. 479, 496 (1985)).  Stating a § 1962(c) claim is necessary to
assert a claim under § 1962(d) for a RICO conspiracy; thus, the
failure to state the former requires dismissal of the latter.  <u>See
Howard v. Am. Online Inc.</u>, 208 F.3d 741, 751 (9th Cir. 2000).

1.   RICO Enterprise

The Northern Leasing Defendants, TransFirst and CB&T argue
that Plaintiffs fail to allege the existence of a RICO enterprise.
Lease Source-LSI; Walshe; MBF Merchant Capital, LLC; and Healy join
this argument.

An "associated-in-fact enterprise is 'a group of persons
associated together for a common purpose of engaging in a course of
conduct.'"   <u>Odom</u>, 486 F.3d at 552 (quoting <u>United States v.
Turkette</u>, 452 U.S. 576, 583 (1981)).  To plead the existence of
such an enterprise, a plaintiff must allege "both evidence of an
ongoing organization, formal or informal, and evidence that the

United States District Court
For the Northern District of California

19

1   various associates function as a continuing unit." <u>Odom</u>, 486 F.3d

2   at 552 (citation and internal quotation marks omitted).

3       Plaintiffs allege sufficient facts to meet their pleading

4   burden.  According to their complaint, Defendants associated for

5   the common purpose of "executing a scheme to defraud class members

6   through a pattern of racketeering consisting of distinct acts of

7   mail fraud, wire fraud, and money laundering."  Am. Compl.  ¶ 311.

8   Further, they allege facts that, if proven, would establish that

9   Defendants participated in an ongoing organization.  Finally,

10  Plaintiffs plead that Defendants' activities took place over

11  several years, which is sufficient to satisfy the continuity

12  requirement.

13      Accordingly, Plaintiffs plead the existence of a RICO

14  enterprise.

15          2.   "Conduct" of a RICO Enterprise

16      TransFirst, CB&T and Fifth Third move to dismiss Plaintiffs'

17  § 1962(c) claim on the ground that Plaintiffs fail to allege facts

18  tending to show that they conducted a RICO enterprise.  Walshe; MBF

19  Merchant Capital, LLC; and Healy join this argument.

20      To be liable under § 1962(c), one must have "participated in

21  the operation or management of the enterprise itself." <u>Reves v.</u>

22  <u>Ernst & Young</u>, 507 U.S. 170, 183 (1993).  To do so, one must

23  demonstrate "some degree of direction." <u>Id.</u> at 179.  "RICO

24  liability is not limited to those with primary responsibility for

25  the enterprise's affairs," nor is it limited to "those with a

26  formal position in the enterprise." <u>Id.</u>  However, one must have

27  "<u>some</u> part in directing the enterprise's affairs." <u>Id.</u> (emphasis

28  in original).  "Simply performing services for the enterprise does

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

not rise to the level of direction." <u>Walter v. Drayson</u>, 538 F.3d 1244, 1249 (9th Cir. 2008).

Plaintiffs argue that TransFirst and the Bank Defendants were parties to and attempted to enforce the fraudulently-obtained MCPAs, extracted previously undisclosed fees, and generated and sent misleading billing statements. However, none of these allegations suggest that these Defendants directed the affairs of the RICO enterprise. As a result, Plaintiffs' RICO claims against TransFirst and the Bank Defendants fail.

Plaintiffs do not address the joinder of Walshe; MBF Merchant Capital, LLC; and Healy in this argument. The allegations against these Defendants do not evince any direction of the enterprise. Walshe was a regional sales manager who marketed the Merchant Services Defendants' products. Although Plaintiffs aver generally that Walshe "directed and controlled" the Merchant Services Defendants, Am. Compl. ¶ 20, they also allege that she was one of many "independent sales agents" contracted by these Defendants, <u>id.</u> ¶ 76, which suggests she did not exercise the control necessary under § 1962(c).[4] Based on Plaintiffs' existing allegations, it appears that Walshe only performed services on behalf of the enterprise, which is insufficient. Consequently, Plaintiffs fail to state RICO claims against Walshe.

Plaintiffs do not appear to allege that MBF Merchant Capital

---

[4] The problem with categorical pleading, as employed by Plaintiffs, is exemplified by their allegations concerning Walshe. They categorize Walshe as a Merchant Services Defendant, but also allege that she "directed and controlled the Merchant Services Defendants." Am. Compl. ¶¶ 19 and 20. And, they allege that the Merchant Services Defendants contracted Walshe to serve as their agent. <u>Id.</u> ¶ 76.

1    had any part in directing the enterprise's affairs.  Thus,

2    Plaintiffs' RICO claims against MBF Merchant Capital must be

3    dismissed.

4       However, Plaintiffs make sufficient allegations against Healy,

5    who is alleged to be MBF Merchant Capital's president.  Plaintiffs

6    aver that he, among other things, directed MBF Merchant Capital "to

7    consummate the unlawful transactions described herein with

8    Plaintiffs and other Californians, to unlawfully deduct monies from

9    accounts of Plaintiffs and other Californians, and to attempt to

10    enforce unlawful contractual provisions against Plaintiffs and

11    other Californians."  Am. Compl. ¶ 41.  These allegations suggest

12    that Healy exercised some part in directing the enterprise's

13    affairs.

14       Plaintiffs' RICO claims against TransFirst, the Bank

15    Defendants, Walshe and MBF Merchant Capital are dismissed with

16    leave to amend.  In any amended complaint, Plaintiffs must allege

17    that all parties plead as RICO defendants demonstrated some degree

18    of direction over the purported enterprise.

19           3.   Racketeering Activity

20       Plaintiffs allege that the RICO statutes were violated through

21    wire and mail fraud, which constitute predicate acts for a pattern

22    of racketeering activity.  18 U.S.C. § 1961(1).[5]  "A wire fraud

23    violation consists of (1) the formation of a scheme or artifice to

24    defraud; (2) use of the United States wires or causing a use of the

25    United States wires in furtherance of the scheme; and (3) specific

26

27        [5] Although Plaintiffs' complaint contains an allegation of
money laundering, Am. Compl. ¶ 311, they stated at the hearing that
28   their RICO claims are not currently based on money laundering as a
predicate act.

intent to deceive or defraud." <u>Odom</u>, 486 F.3d at 554 (internal quotation marks omitted); 18 U.S.C. § 1343.  The elements of mail fraud differ only in that they involve the use of the United States mails rather than wires.  <u>See</u> 18 U.S.C. § 1341.

Federal Rule of Civil Procedure 9(b) requires that wire and mail fraud be plead with particularity.  <u>See</u> <u>Odom</u>, 486 F.3d at 553-54.  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, <u>id.</u> at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." <u>In re GlenFed, Inc., Secs. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed.  <u>Id.</u> at 1547; <u>see</u> Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").  Based on this heightened pleading standard, the only elements of wire and mail fraud "that require particularized allegations are the factual circumstances of the fraud itself." <u>Odom</u>, 486 F.3d at 554.

In <u>Swartz v. KPMG LLP</u>, the Ninth Circuit addressed the effect of Rule 9(b) in cases involving allegations of a fraudulent scheme perpetuated by multiple defendants.  476 F.3d 756, 764 (9th Cir. 2007).  The court stated that

> there is no absolute requirement that where several
> defendants are sued in connection with an alleged
> fraudulent scheme, the complaint must identify <u>false</u>

<u>statements</u> made by each and every defendant.
Participation by each conspirator in every detail in the
execution of the conspiracy is unnecessary to establish
liability, for each conspirator may be performing
different tasks to bring about the desired result.  On
the other hand, Rule 9(b) does not allow a complaint to
merely lump multiple defendants together but requires
plaintiffs to differentiate their allegations when suing
more than one defendant and inform each defendant
separately of the allegations surrounding his alleged
participation in the fraud.  In the context of a fraud
suit involving multiple defendants, a plaintiff must, at
a minimum, identify the role of each defendant in the
alleged fraudulent scheme.

<u>Id.</u> (citations and internal quotation and editing marks omitted;

emphasis in original).  Based on this standard, the court held that

general allegations that the defendants knew that false statements

were made, that they acted in concert with parties that made false

statements or that they actively participated in a conspiracy are

insufficient as a matter of law.  <u>Id.</u>

Plaintiffs interpret <u>Swartz</u> to mean that Rule 9(b) only

requires that they identify each defendant's role "where possible."

Opp'n at 28.  <u>Swartz</u> does not contain such a qualification; the

case states in unequivocal language that Rule 9(b) mandates the

identification of each defendant's role.

Because Plaintiffs allege that each category of Defendants

made different fraudulent statements and had various roles in the

alleged schemes, the three categories are considered separately

below.

a.   Merchant Services Defendants

According to the complaint, the Merchant Services Defendants

engaged in mail fraud by, among other things, sending Plaintiffs

altered versions of their contracts, which contained forged

signatures.  They also aver that these Defendants sent the

24

purportedly fraudulent contracts to the Leasing and Processing Defendants.   To support their claims of wire fraud, Plaintiffs allege that these Defendants emailed and faxed the fraudulent contracts.

Parisi, Jurczyk and Madura assert that Plaintiffs' wire and mail fraud allegations related to them are not plead with sufficient specificity.   In particular, they argue that Plaintiffs fail to allege what role they played in the purported fraud. Walshe joins this argument.   The Merchant Services Companies, Moore and Roy do not challenge the sufficiency of Plaintiffs' § 1962(c) allegations related to them.

Although Plaintiffs allege with sufficient specificity the factual circumstances of the fraud, they fail to allege the roles played by Parisi, Jurczyk and Madura in the fraudulent scheme. They allege that Parisi, Jurczyk and Madura "direct and control the Merchant Services Defendants and worked in concert to cause the Merchant Services Defendants to engage in the conduct described in this complaint."   Am. Compl. ¶ 20.   This general allegation is not sufficient.   Thus, Plaintiffs' RICO claims against Parisi, Jurczyk and Madura fail.

Plaintiffs sufficiently allege Walshe's role in the alleged fraud.   According to the complaint, among other tasks, Walshe procured contracts on behalf of the Merchant Services Defendants and, in doing so, made misrepresentations.   Nevertheless, as explained above, Plaintiffs' RICO claims against Walshe fail because they do not allege facts to suggest she conducted the enterprise.

Accordingly, because the allegations of wire and mail fraud

**United States District Court**

For the Northern District of California

against them were not plead with sufficient specificity, the RICO

claims against Parisi, Jurczyk and Madura are dismissed with leave

to amend.

b.   Leasing Defendants

The Northern Leasing entities; MBF Merchant Capital, LLC; and

the individual Leasing Defendants argue that Plaintiffs fail to

plead wire and mail fraud against them with particularity.  Lease

Source-LSI joins this argument.

Plaintiffs allege that the "Leasing Defendants in Illinois"

sent letters to Von Glasenapp and Jordan, notifying them of a

"personal property tax" and a fee to file a personal property tax

return.  Am. Compl. ¶¶ 193 and 265.  Leasing Defendants

subsequently withdrew funds from Von Glasenapp's and Jordan's

accounts for the tax and filing fee.  Plaintiffs aver that the

letters and the subsequent withdrawals for the purported tax were

fraudulent because no property tax returns were ever filed on

behalf of Von Glasenapp or Jordan.

These allegations are not sufficient to support wire and mail

fraud claims against the Leasing Defendants.  Although they plead

fraudulent statements with specificity, Plaintiffs do not allege

the roles each of these Defendants played in the fraudulent scheme.

At a minimum, because they have the letters, Plaintiffs could plead

which entity sent the letters.  They did not do so.

Plaintiffs also allege that the Leasing Defendants sent

letters seeking payment on "leases [they] knew to be forged."  Am.

Compl. ¶ 335.  However, Plaintiffs do not allege a factual basis

for their claim that the each of the Leasing Defendants knew of the

purported forgeries.  Further, Plaintiffs fail to differentiate the

26

1  roles of each of the Leasing Defendants.  Thus, this allegation is
2  not plead in accordance in Rule 9(b).

3     Accordingly, Plaintiffs' RICO claims against the Leasing
4  Defendants are dismissed with leave to amend.  In any amended
5  complaint, Plaintiffs must, at a minimum, identify the roles each
6  Leasing Defendant played in perpetuating wire or mail fraud.

7                    c.    Processor Defendants

8     TransFirst and CB&T complain that Plaintiffs have not alleged
9  mail or wire fraud against them with sufficient specificity.  In
10  its separate brief, Fifth Third echoes this objection.

11     Plaintiffs generally allege that TransFirst engaged in mail
12  fraud by sending "details of transaction processing it knew to be
13  fraudulent and in violation of" Plaintiffs' contracts.  Am. Compl.
14  ¶ 341.  Plaintiffs appear to claim that these details were
15  fraudulent because the fees charged for credit card transactions
16  were at "a much higher rate than what" was represented by the
17  Merchant Services Defendants.  See Am. Compl. ¶ 189.  This is not
18  sufficient to plead mail fraud against TransFirst.  Although the
19  Merchant Services Defendants may have misrepresented the
20  transaction rates, Plaintiffs do not allege that TransFirst played
21  a role in making the falsehoods.  Nor do Plaintiffs allege a
22  factual basis on which it could be inferred that TransFirst knew of
23  them or intended for them to be made.  Based on Plaintiffs'
24  allegations, TransFirst cannot be held liable for mail fraud.

25     Plaintiffs also aver that TransFirst sent misleading and
26  deceptive billing statements.  Although the statements disclosed
27  all the fees charged, Plaintiffs maintain that they were
28  "complicated and hid the fact that" each credit card transaction

27

incurred a fee higher than what was represented when Plaintiffs entered into their agreements. Am. Compl. ¶ 189. Again, this allegation is not sufficient. Plaintiffs do not allege that TransFirst knew of or had any role in the failure to disclose the fees at the time the agreements were executed. Further, because Plaintiffs plead that TransFirst disclosed all of the fees it charged on the statements, it does not appear to have engaged in any independent fraud.

Plaintiffs do not allege any instances of mail fraud by the Bank Defendants. Nor do they aver the Bank Defendants' roles in the perpetration of mail fraud.

With regard to wire fraud, Plaintiffs allege that the Bank Defendants caused credit card transactions to be processed at "unreasonable transaction rates that had not been disclosed." Id. ¶ 365. TransFirst is alleged to have debited, through electronic transfers, various amounts from Plaintiffs' bank accounts. For reasons already stated, these allegations are not sufficient. Plaintiffs have not averred that any of these Defendants knew of or played any role in the fraudulent conduct that led to the imposition of these fees.

In sum, Plaintiffs fail to plead mail or wire fraud against any of the Processor Defendants. Accordingly, for this additional reason, the RICO claims against these Defendants are dismissed with leave to amend. Plaintiffs must plead with specificity that these Defendants made or had a role in the making of false statements.

5. RICO Conspiracy

The MSI Defendants and Fifth Third argue that Plaintiffs' § 1962(d) claim must be dismissed because, even if Plaintiffs

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

alleged a substantive RICO violation, they do not aver facts evincing an agreement to commit wire and mail fraud.

Section 1962(d) proscribes conspiracies to violate any of the substantive provisions of RICO.  To state a claim under § 1962(d), plaintiffs must "allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses."  <u>Howard</u>, 208 F.3d at 751 (citation omitted).  The conspiring defendants must be alleged to "have been 'aware of the essential nature and scope of the enterprise and intended to participate in it.'"  <u>Id.</u> (quoting <u>Baumer v. Pachl</u>, 8 F.3d 1341, 1346 (9th Cir. 1993)).

Plaintiffs point to three paragraphs in their amended complaint in which they explain the benefits obtained by the Merchant Services Defendants, Leasing Defendants and Processor Defendants through associating together.  However, none of these allegations suggest that Defendants agreed to commit a substantive violation of RICO or to commit the alleged predicate offenses.  Nor do Plaintiffs allege that all Defendants were aware of the nature and scope of the enterprise or had intent to participate in it.

Accordingly, Plaintiffs' § 1962(d) claims are dismissed with leave to amend.

      6.   RICO Injury

To have standing to bring a civil RICO claim, shareholders of a corporation must allege a direct injury from the alleged violation.  <u>Sparling v. Hoffman Const. Co.</u>, 864 F.2d 635, 640 (9th Cir. 1988).  Corporate shareholders lack standing to assert RICO claims if their harm "derivative of harm to the corporation."  <u>Id.</u>

The MSI and TransFirst Defendants argue that the individual

United States District Court
For the Northern District of California

Plaintiffs' RICO claims must be dismissed because they did not suffer direct and actual harm from the alleged racketeering activity. However, Plaintiffs allege that they were personal guarantors of the agreements at issue. The contracts proffered by TransFirst do not indicate otherwise.

Accordingly, the individual Plaintiffs have standing to bring their RICO claims.

### 7.   RICO Statute of Limitations

RICO actions are subject to a four-year statute of limitations. Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001) (citation omitted). Under the Ninth Circuit's "separate accrual rule," the limitations period can be reset by an overt act with two characteristics: (1) it must be "a new and independent act that is not merely a reaffirmation of a previous act;" and (2) it must inflict "new and accumulating injury on the plaintiff." Grimmett v. Brown, 75 F.3d 506, 513 (9th Cir. 1996) (emphasis in original); see also Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1246 (D. Hawaii 2000).

The MSI Defendants argue that Bae's RICO claims are time-barred. Bae signed contracts for services in May, 2005. Thus, under the statute of limitations, his RICO claims were time-barred as of May, 2009. This action was initiated on March 26, 2010, and Bae was not a named Plaintiff until June 25, 2010, the date the amended complaint was filed.

Plaintiffs argue that the separate accrual rule applies to Bae's claims, resetting the statute of limitations. They point to "negative marks" placed on his credit report, although they do not plead when these notations were made. Opp'n at 48. Plaintiffs

also point to the collection lawsuit Sussman filed against Bae in March, 2010.

Plaintiffs do not address how this conduct reflects new and independent acts separate from the injury Bae allegedly suffered "when he signed the contract." Opp'n at 48. Instead, these acts appear to arise from the contract. Furthermore, placing negative information on a credit report and filing a lawsuit do not appear to be predicate acts of racketeering activity that would trigger application of the separate accrual rule. See Klehr v. A.O. Smith Corp., 521 U.S. 179, 190 (1997) (explaining that the rule requires "the commission of a separable, new predicate act within a 4-year limitations period"); Tanaka, 104 F. Supp. 2d at 1246.

Accordingly, based on Plaintiffs' current pleading, Bae's RICO claims are time-barred. In any amended complaint, Plaintiffs may plead facts suggesting that Bae's RICO claims accrued within the limitations period.

B.   Common Law Fraud Claims

Plaintiffs allege common law claims for "Fraud, Deceit and/or Misrepresentation" (hereinafter, intentional misrepresentation) and negligent misrepresentation, which are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Although Plaintiffs bring their intentional misrepresentation claims against all Defendants except the Moore Shell Companies, they plead their negligent misrepresentation claims only against Merchant Services Defendants. They state that this was a "typographical error," and seek leave to amend to plead this claim against the Leasing Defendants, TransFirst and the Bank Defendants. Opp'n at 40 n.27. The Merchant Services Companies, Moore and Roy

do not move to dismiss the common law fraud claims alleged against them.

To state a claim for fraud, a plaintiff must plead "'(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" In re Napster, Inc. Copyright Litig., 479 F.3d 1078, 1096 (9th Cir. 2007) (quoting Small v. Fritz Cos., Inc., 30 Cal. 4th 167, 173 (2003)); see generally Cal. Civ. Code §§ 1709-10. In relevant part, deceit is defined as the "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710. The elements of negligent misrepresentation are similar to those for intentional misrepresentation, except that a plaintiff need not plead knowledge of falsity; instead, negligent misrepresentation requires that the defendant made a representation "without reasonable ground for believing it to be true." Glenn K. Jackson, Inc. v. Roe, 273 F.3d 1192, 1200 n.2 (9th Cir. 2001).

Plaintiffs state claims for intentional and negligent misrepresentation against Walshe. In particular, they allege that in or about June, 2007, Walshe represented to Von Glasenapp that the Merchant Services Defendants' rates were lower than those for which he was subsequently charged. She also provided Von Glasenapp an EFL that had many of "the fields for the cost of the equipment and terms of the lease" left blank, Am. Compl. ¶ 177, which he signed, apparently under a misimpression as to the nature of the EFL. These allegations are sufficient.

Plaintiffs do not allege that Parisi, Jurczyk or Madura made

any misrepresentations.[6]  Instead, Plaintiffs argue that the Merchant Services Companies' acts should be imputed to Parisi, Jurczyk or Madura, who were officers of the entities.  However, to be held liable for torts of a corporation, officers must authorize, direct or otherwise actively participate in the alleged tortious activity.  PMC, Inc. v. Kadisha, 78 Cal. App. 4th 1368, 1379-80 (2000).  Plaintiffs have not plead any facts suggesting that Parisi, Jurczyk or Madura consented to or approved of the Merchant Services Companies' alleged torts.  Plaintiffs also argue that the Merchant Services Companies were alter egos of Parisi and Jurczyk.  This argument is unavailing, however, because Plaintiffs offer no factual allegations to support their alter ego theory.  The Court need not accept as true "a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1950 (citation and internal quotation marks omitted).  Accordingly, Plaintiffs' intentional and negligent misrepresentation claims against Parisi, Jurczyk and Madura are dismissed with leave to amend.

Plaintiffs' intentional misrepresentation claims against the Leasing Defendants, TransFirst and the Bank Defendants fail for the same reasons that their allegations of the RICO predicate acts of wire and mail fraud fail.

In sum, because they were not subject to a motion to dismiss, Plaintiffs' fraud claims against the Merchant Services Companies, Moore and Roy may go forward.  Plaintiffs also state cognizable

---

[6] Plaintiffs assert that Parisi, Jurczyk or Madura did not move to dismiss their common law fraud claims.  See Opp'n at 40 n.27.  This is incorrect.  These Defendants' motions to dismiss challenge the sufficiency of Plaintiffs' fraud claims.  See MSI Defs.' Mot. at 12-15.

common law fraud claims against Walshe.  The Court dismisses with leave to amend Plaintiffs' intentional misrepresentation claims against Parisi, Jurczyk, Madura, the Leasing Defendants, Transfirst and the Bank Defendants.  Plaintiffs' negligent misrepresentation claims against Parisi, Jurczyk and Madura are likewise dismissed with leave to amend.

    C.    Claims for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiffs bring claims for breach of contract and the implied covenant of good faith and fair dealing against the Merchant Services Defendants, the Leasing Defendants, TransFirst and CB&T. Plaintiffs have voluntarily dismissed such claims against Fifth Third and the Moore Shell Companies.

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).

Without any citation to authority, the Northern Leasing Defendants argue that, because Plaintiffs allege fraudulent conduct related to the MCPAs and EFLs, their claims for breach of contract and the implied covenant should be subject to Rule 9(b).  The Court understands Plaintiffs to allege that they were fraudulently induced to enter into their contracts, in that they were led to believe that the forms they signed contained all material terms of the agreements, and that the contracts were later breached.  While the former is subject to Rule 9(b), the latter is not.  Thus,

United States District Court
For the Northern District of California

34

**United States District Court**
For the Northern District of California

Plaintiffs' breach of contract claims are subject to the general
pleading standard set forth in Rule 8.

        1.   Existence of Contracts

    Plaintiffs appear to allege that they entered into three
contracts: (1) the MCPAs, (2) the EFLs and (3) the "Rate Estimation
Comparison Sheet," or "Rate Sheet."

    As noted above, Von Glasenapp's, Su's, Baumgartner's and
Jordan's MCPAs indicate that they contracted with TransFirst and
CB&T; Bae's MCPA states that he contracted with Fifth Third.
Plaintiffs' MCPAs do not name the Merchant Services Defendants or
the Leasing Defendants as parties.  Plaintiffs nevertheless argue
that, because they plead that these Defendants were parties, their
allegations must be taken as true.  This is incorrect.  Courts
"need not accept as true allegations contradicting documents that
are referenced in the complaint." <u>Lazy Y Ranch Ltd. v. Behrens</u>,
546 F.3d 580, 588 (9th Cir. 2008).  Thus, Plaintiffs' claims for
breach of contract against the Merchant Services Defendants and the
Leasing Defendants, insofar as these claims are based on the MCPAs,
are dismissed with leave to amend.  If Plaintiffs intend to
maintain breach of contract claims based on the MCPAs against these
Defendants, they must explain how these Defendants were parties to
the MCPAs, notwithstanding these agreements' plain language.

    Plaintiffs allege that the EFLs, which are not before the
Court, are contracts with the eighteen Leasing Defendants.  Am.
Compl. ¶ 100.  Plaintiffs, who presumably have the EFLs, must plead
which of the Leasing Defendants are parties to the agreements.
Plaintiffs do not allege that the Merchant Services Defendants or
the Processor Defendants are parties to the EFLs.  Accordingly,

Plaintiffs' claims for breach of contract, insofar as these claims are based on the EFLs, are dismissed with leave to amend.  If Plaintiffs intend to maintain breach of contract claims related to the EFLs, they shall identify which Defendants were parties to them.

Finally, Plaintiffs maintain that the Rate Sheet was a contract that was breached.  However, Plaintiffs do not allege that any Defendant was a party to a contract contained in the Rate Sheet.  Nor do they allege that the Rate Sheet was incorporated into any contract to which a Defendant was a party.  Accordingly, to the extent that Plaintiffs' claims for breach of contract are based on the Rate Sheet, they are dismissed with leave to amend. If Plaintiffs intend to maintain breach of contract claims related to the Rate Sheet, they must plead which Defendant was a party to it or, alternatively, that the Rate Sheet was incorporated into a contract to which a named Defendant was a party.

        2.   Defendants' Breach

Plaintiffs theorize that the MCPAs and EFLs were breached in three ways: (1) by "charging and collecting sums in excess" of disclosed amounts, (2) by "injecting new contractual provisions" and (3) by "imposing lengthy terms on the lease and contract durations."  Am. Compl. ¶ 411.  Only the first appears to support a claim for breach of contract.  However, Plaintiffs do not identify the challenged fees or the contractual provisions that set out the agreed-upon rates.  Without additional information, Plaintiffs do not provide adequate notice as to how the contracts were breached. Accordingly, Plaintiffs' first theory of breach does not support their breach of contract claims.

As for Plaintiffs' second theory, they have not identified an MCPA or EFL provision that would be breached based on the insertion of new provisions.  Indeed, they do not even allege facts to suggest that TransFirst and CB&T inserted new terms into the MCPAs.  Further, this allegation appears to pertain to Plaintiffs' fraud theories, not a breach of contract claim.  Without more, Plaintiffs' second theory fails to support their claims for breach of contract.

Finally, it is not apparent how contracts could be breached by the imposition of "lengthy terms."  If Plaintiffs intend to allege that these terms were inserted after they entered into the contracts, their theory of breach based on these added terms fails for reasons already stated.  If they intend to allege that these terms were imposed in contravention of other contractual terms, they must do so explicitly.  However, if these "lengthy terms" existed at the time the contracts were executed, it is not apparent how they could constitute a breach of contract.

Plaintiffs do not plead adequately how any Defendant breached the respective contracts.  Accordingly, Plaintiffs' breach of contract claims are dismissed with leave to amend.

>            3.   Breach of the Implied Covenant of Good Faith and
>                 Fair Dealing

The existence of a contract is necessary for any claim for breach of the implied covenant of good faith and fair dealing.  Spinks v. Equity Residential Briarwood Apartments, 171 Cal. App. 4th 1004, 1033 (2009) (citation and internal quotation marks omitted).  "The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the

37

contract, and cannot be extended to create obligations not contemplated by the contract." <u>Pasadena Live, LLC v. City of Pasadena</u>, 114 Cal. App. 4th 1089, 1094 (2004) (emphasis in original). The implied covenant "not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." <u>Id.</u> (citation and internal quotation marks omitted).

Because Plaintiffs have not adequately plead that they had a contract with the Merchant Services Defendants and the Leasing Defendants, their claims for breach of the implied covenant against these Defendants are dismissed with leave to amend.

Plaintiffs plead that TransFirst and CB&T interfered with their rights under their MCPAs by "refusing to address complaints by Plaintiff[s] and the class about billing and service." Am. Compl. ¶ 416. However, Plaintiffs do not point to a contractual provision that governed how TransFirst and CB&T were to respond to complaints or explain how these Defendants' conduct prevented any party from performing obligations required by the MCPAs.

Plaintiffs also plead that TransFirst and CB&T violated the implied covenant by "including additional pages and terms into the contract" and "engaging in a pattern of threats and harassment to enforce the fraudulent terms and conditions of the contracts." Am. Compl. ¶ 416. It is not clear how these acts precluded compliance with the express terms of the contracts. Furthermore, even if they did, Plaintiffs do not allege facts that suggest TransFirst and CB&T committed these acts.

**United States District Court**
For the Northern District of California

Accordingly, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing against TransFirst and CB&T are dismissed with leave to amend.

D.   False Advertising Claims

Plaintiffs bring a claim under section 17500 of the California Business and Professions Code against the Merchant Services Defendants, the Leasing Defendants and the Processor Defendants. The Merchant Services Companies, Moore and Roy did not move to dismiss these claims.

Section 17500 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." A false advertising claim under this section may be brought "where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false." <u>Day v. AT&T Corp.</u>, 63 Cal. App. 4th 325, 332 (1998). Section 17500 proscribes "not only those advertisements which have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive." <u>Id.</u>

Plaintiffs state a section 17500 claim against Walshe. As already explained, Plaintiffs allege that she made misrepresentations in marketing and advertising credit card processing services and equipment.

However, Plaintiffs' section 17500 claims against Parisi, Jurczyk, Madura, the Leasing Defendants and the Processor Defendants fail. Plaintiffs have not plead that any of these Defendants marketed or advertised services or equipment to them. And, as noted above, Plaintiffs fail to provide a factual basis for

39

**United States District Court**
For the Northern District of California

alter ego liability against Parisi and Jurcyzk.

Accordingly, Plaintiffs' section 17500 claims against the Merchant Services Companies, Moore, Roy and Walshe may go forward. Their section 17500 claims against Parisi, Jurcyzk, Madura, the Leasing Defendants and the Processor Defendants fail.

E.   Unfair Competition Claims

Plaintiffs plead claims under California's UCL against the Merchant Services Defendants, the Leasing Defendants and the Processor Defendants.  The Merchant Services Companies, Moore and Roy did not move to dismiss these claims.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  <u>Chabner v. United Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim.  <u>Saunders v. Superior Court</u>, 27 Cal. App. 4th 832, 838-39 (1994).  In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law."  <u>Olszewski v. Scripps Health</u>, 30 Cal. 4th 798, 827 (2003).

Because Plaintiffs' section 17500 claims against the Merchant Services Companies, Moore, Roy and Walshe are actionable, they also state section 17200 claims against these Defendants.  However, Plaintiffs have not plead an adequate basis for their UCL claims against Parisi, Jurcyzk, Madura, the Leasing Defendants, TransFirst or the Bank Defendants.

Accordingly, Plaintiffs' UCL claims against the Merchant

Services Companies, Moore, Roy and Walshe may go forward.  Their UCL claims against Parisi, Jurcyzk, Madura, the Leasing Defendants, TransFirst and the Bank Defendants are dismissed with leave to amend.

> F.   Fraudulent Conveyance Claims

Plaintiffs bring fraudulent conveyance claims against Moore and the Moore Shell Companies.

The Uniform Fraudulent Transfer Act (UTFA) "permits defrauded creditors to reach property in the hands of a transferee." <u>Mejia v. Reed</u>, 31 Cal. 4th 657, 663 (2003).  Transfers can be fraudulent "both as to present and future creditors." <u>Id.</u> at 664.

A transfer can be invalid if a debtor transfers with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1).  "Whether a conveyance was made with fraudulent intent is a question of fact, and proof often consists of inferences from the circumstances surrounding the transfer." <u>Filip v. Bucurenciu</u>, 129 Cal. App. 4th 825, 834 (2005). In determining a debtor's intent, courts may consider whether "the debtor retained possession or control of the property transferred after the transfer;" whether "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;" and whether "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." Cal. Civ. Code § 3439.04(b)(2), (4) and (8).

Plaintiffs do not plead in their complaint that Moore retained control or possession of the transferred properties.  Plaintiffs argue that, because the Moore Shell Companies are alter egos of

United States District Court
For the Northern District of California

Moore, he retained possession and control of the properties and did not receive reasonably equivalent value for the transfers. However, Plaintiffs do not offer an adequate factual basis to support their legal conclusion that the Moore Shell Companies were alter egos. Nor do they allege a factual basis for their conclusion that he did not receive sufficient consideration for the transfers.

Plaintiffs also argue that, when he initiated the transfers in April, 2009, Moore had been sued or had notice of impending lawsuits. However, Plaintiffs identify only one lawsuit, <u>Navratil v. Merchant Services, Inc.</u>, No. 2:09-cv-05945-DDP-SS (C.D. Cal.), which was apparently filed in July, 2009. Plaintiffs do not allege that Moore received notice of this suit before it was filed. The filing of <u>Navratil</u>, on its own, does not support their fraudulent conveyance claims.

Finally, Plaintiffs argue that Moore "was profiting from a massive scheme of defrauding small business and that Moore used the profits from this scheme to purchase the properties in question." Opp'n at 44. This, without more, is not sufficient to show Moore's fraudulent intent. Plaintiffs allege that the purported fraudulent scheme had existed since at least 2005. This dissipates any reasonable inference that, in April, 2009, Moore fraudulently transferred properties because of his involvement in the scheme.

Accordingly, Plaintiffs' fraudulent conveyance claims against Moore and the Moore Shell Companies are dismissed with leave to amend. Plaintiffs must plead a factual basis to support their assertions that Moore had fraudulent intent.

**United States District Court**
For the Northern District of California

1    IV.   Preliminary Discovery

2         Pursuant to Federal Rule of Civil Procedure 26(d)(1) and in

3    accordance with Defendants' proposal in the parties' joint status

4    report, the Court grants the parties leave to conduct discovery on

5    the following matters: (1) the alleged forgeries of Plaintiffs'

6    initials or signatures, (2) alter ego theories of liability and

7    (3) personal jurisdiction.  Discovery requests shall be propounded

8    by December 10, 2010.  Responses are due January 20, 2011.  The

9    parties shall not take discovery on matters outside of the scope of

10   those listed above.

11        The Court notes that several of Plaintiffs' discovery

12   requests, contained in Exhibit A of the parties' status report,

13   appear overbroad, particularly in light of the issues raised by the

14   Court at the September 16 hearing.  To be clear, the Court grants

15   limited preliminary discovery only to resolve issues of personal

16   jurisdiction and proper venue.  Plaintiffs shall not take discovery

17   that relates solely to the merits of their case.  All discovery-

18   related motions shall be referred to a magistrate judge.

19                              CONCLUSION

20        For the foregoing reasons, the Court GRANTS in part and DENIES

21   in part the MSI Defendants' Motion to Dismiss (Docket No. 112);

22   GRANTS the Northern Leasing Defendants' Motion to Dismiss (Docket

23   No. 114); GRANTS Defendant Fitzgerald's Motion to Dismiss (Docket

24   No. 115); GRANTS MBF Merchant Capital LLC and Healy's Motion to

25   Dismiss (Docket No. 108); GRANTS Sussman's Motion to Dismiss

26   (Docket No. 122); GRANTS in part and DEFERS its decision in part on

27   the TransFirst Defendants' Motion to Dismiss (Docket No. 121); and

28   GRANTS Fifth Third Bank's Motion to Dismiss (Docket No. 109).

The Court's rulings are summarized as follows:

1.  Plaintiffs have not established that the Court has personal jurisdiction over the individual Leasing Defendants.  Plaintiffs may conduct discovery to establish jurisdictional facts.  Plaintiffs are granted leave to amend their complaint to add facts that support personal jurisdiction.  The individual Leasing Defendants may renew their motions to dismiss for lack of personal jurisdiction after Plaintiffs file their second amended complaint.

2.  There is a dispute concerning the enforceability of the arbitration and forum selection clauses in Von Glasenapp's, Su's, Baumgartner's and Jordan's MCPAs. TransFirst, CB&T and Plaintiffs may conduct discovery on whether Von Glasenapp's, Su's, Baumgartner's and Jordan's initials and signatures were forged.  To resolve this matter, TransFirst, CB&T and Plaintiffs shall then file cross-motions for partial summary judgment on the alleged forgeries.  Plaintiffs shall file their motion on February 17, 2011.  TransFirst and CB&T's cross-motion and opposition to Plaintiff's motion shall be due March 3, 2011.  Plaintiffs' opposition to TransFirst and CB&T's cross-motion and reply to TransFirst and CB&T's opposition shall be due March 10, 2011.  TransFirst and CB&T's reply to Plaintiffs' opposition to their cross-motion shall be due March 17, 2011.  A hearing on the cross-motions will be held on March 31, 2011 at 2:00 p.m. if the matter is not submitted on the papers.  An

**United States District Court**
For the Northern District of California

1          evidentiary hearing will be scheduled if necessary.

2    3.    Because they were not subject to a motion to dismiss,

3          Plaintiffs' RICO claims under 18 U.S.C. § 1962(c) against

4          the Merchant Services Companies, Moore and Roy are

5          cognizable.  However, their § 1962(c) claims against the

6          other Defendants are dismissed with leave to amend to

7          plead, among other things, that these Defendants

8          conducted the RICO enterprise and engaged in a pattern of

9          racketeering activity.

10   4.    Plaintiffs' claim under 18 U.S.C. § 1962(d) for

11         conspiracy to commit a RICO violation is dismissed with

12         leave to amend to plead a conspiratorial agreement and

13         each Defendants' awareness of the RICO conspiracy.

14   5.    Bae's RICO claims are dismissed as time-barred.  He is

15         granted leave to amend to plead facts indicating that his

16         RICO claims accrued during the limitations period.

17   6.    Because they were not subject to a motion to dismiss,

18         Plaintiffs' common law fraud claims against the Merchant

19         Services Companies, Moore and Roy are cognizable.

20         Plaintiffs have stated actionable common law fraud claims

21         against Walshe.  However, their common law fraud claims

22         against the other Defendants are dismissed with leave to

23         amend to plead with specificity, among other things, the

24         actionable misrepresentations these Defendants made.  In

25         the alternative, Plaintiffs may allege an alter ego

26         theory of liability, so long as evidence obtained through

27         discovery supports their claim.  Plaintiffs are also

28         granted leave to amend to plead negligent

                                    45

**United States District Court**
For the Northern District of California

misrepresentation claims against Defendants other than the Merchant Services Defendants, so long as they have a factual basis to do so.

7.   Plaintiffs' breach of contract claims against the Merchant Services Defendants and Leasing Defendants are dismissed with leave to amend to plead facts indicating that these Defendants were parties to Plaintiffs' contracts.   Plaintiffs' breach of contract claims against TransFirst and CB&T are dismissed with leave to amend to plead the provisions breached by these Defendants.

8.   Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing against the Merchant Services Defendants and Leasing Defendants are dismissed with leave to amend to plead facts that these Defendants were parties to Plaintiffs' contracts.   Their claims against TransFirst and CB&T are dismissed to plead conduct that violated the implied covenant.

9.   Because they were not subject to a motion to dismiss, Plaintiffs' section 17500 claims against the Merchant Services Companies, Moore and Roy are cognizable. Plaintiffs have stated cognizable section 17500 claims against Walshe.   Plaintiffs' section 17500 claims against the other Defendants are dismissed with leave to amend to plead that they made actionable statements.   In the alternative, Plaintiffs may allege an alter ego theory of liability, so long as evidence obtained through discovery supports their claim.

10.   Because they were not subject to a motion to dismiss,

Plaintiffs' UCL claims against the Merchant Services Companies, Moore and Roy are cognizable. Plaintiffs have stated cognizable UCL claims against Walshe. Plaintiffs' UCL claims against the other Defendants are dismissed with leave to amend to plead actionable conduct. In the alternative, Plaintiffs may allege an alter ego theory of liability, so long as evidence obtained through discovery supports their claim.

11. Plaintiffs' fraudulent conveyance claims against Moore and the Moore Shell Companies are dismissed with leave to amend to plead facts that suggest Moore had fraudulent intent.

Plaintiffs' second amended complaint shall be filed fourteen days after the Court issues an order on the cross-motions for partial summary judgment on the alleged forgeries. Defendants shall answer or move to dismiss the second amended complaint fourteen days after it is filed. If Defendants intend to move to dismiss Plaintiffs' second amended complaint, those represented by the same counsel shall support their motion in a consolidated opening brief. Plaintiffs' opposition to the motions to dismiss shall be contained in a consolidated brief not to exceed forty-five pages filed fourteen days thereafter. Defendants may file their replies seven days after that. The motions will be decided on the papers, unless the Court sets a hearing.

As noted above, claims against the Merchant Services Companies, Moore, Roy and Walshe are cognizable. The Court extends the time these Defendants have to answer Plaintiffs' complaint. If this action is not dismissed for improper venue or transferred,

47

these Defendants' answers shall be due fourteen days after the
Court enters an order on any motion to dismiss the second amended
complaint.  These Defendants may not move to dismiss claims in
Plaintiffs' second amended complaint that are identical to those
alleged in Plaintiffs' current pleading.

The case management conference, previously scheduled for March
15, 2011, is reset for March 31, 2011.

IT IS SO ORDERED.

Dated: 11/29/2010                    _____
                                     CLAUDIA WILKEN
                                     United States District Judge

**United States District Court**
For the Northern District of California

48