IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST FILM, INC.; RAINBOW BUSINESS SOLUTIONS, doing business as PRECISION TUNE AUTO CARE; BURLINGAME MOTORS, INC.; DIETZ TOWING, INC.; THE ROSE DRESS, INC.; VOLKER VON GLASENAPP; JERRY SU; VERENA BAUMGARTNER; TERRY JORDAN; LEWIS BAE; and ERIN CAMPBELL, on behalf of themselves, the general public and those similarly situated, | No. C 10-1993 CW<br><br>ORDER ON DEFENDANTS' MOTIONS (Docket Nos. 221, 246, 247, 248 and 249) |

         Plaintiffs,

     v.

MERCHANT SERVICES, INC.; NATIONAL PAYMENT PROCESSING; UNIVERSAL MERCHANT SERVICES, LLC; UNIVERSAL CARD, INC.; JASON MOORE; NATHAN JURCZYK; ROBERT PARISI; ERIC MADURA; FIONA WALSHE; ALICYN ROY; MBF LEASING, LLC; NORTHERN FUNDING, LLC; NORTHERN LEASING SYSTEMS, INC.; GOLDEN EAGLE LEASING, LLC; LEASE SOURCE-LSI, LLC; LEASE FINANCE GROUP, LLC; JAY COHEN; LEONARD MEZEI; SARA KRIEGER; BRIAN FITZGERALD; SAM BUONO; MBF MERCHANT CAPITAL, LLC; RBL CAPITAL GROUP, LLC; WILLIAM HEALY; JOSEPH I. SUSSMAN; JOSEPH I. SUSSMAN, PC; and SKS ASSOCIATES, LLC,

         Defendants.

_____/

AND ALL RELATED CROSS-CLAIMS

_____/

     Plaintiffs Just Film, Inc., and its owner Volker von

Glasenapp; Rainbow Business Solutions, doing business as Precision

Tune Auto Care, and its owner Jerry Su; Burlingame Motors, Inc.,

and its owner Verena Baumgartner; Dietz Towing, Inc., and its owner

Terry Jordan; The Rose Dress, Inc., and its owner Lewis Bae; and

Erin Campbell allege that twenty-eight Defendants defrauded them in a scheme involving credit and debit card processing services and equipment.  Defendants Merchant Services, Inc. (MSI); Universal Card, Inc.; Universal Merchant Services LLC; National Payment Processing; Jason Moore; Nathan Jurczyk; Eric Madura; Robert Parisi; and Alicyn Roy (collectively, MSI Defendants) move to dismiss certain claims against them for failure to state a claim.  Separately, Universal Card, National Payment Processing and Moore move to compel arbitration of the claims of Just Film, Rainbow Business Solutions, Burlingame Motors, Dietz Towing and their respective owners.  Defendants William Healy and MBF Merchant Capital, LLC, move to dismiss Plaintiffs' claims against them for lack of personal jurisdiction and failure to state a claim.  Defendants Northern Leasing Systems, Inc.; Northern Funding, LLC; MBF Leasing, LLC; Golden Eagle Leasing, LLC; Lease Source-LSI, LLC; Lease Finance Group, LLC; RBL Capital Group and Joseph I. Sussman, PC (collectively, Leasing Defendant Entities) move to dismiss certain claims against them for failure to state a claim and improper venue, and to compel arbitration of Campbell's claims. Defendants Jay Cohen; Leonard Mezei; Sara Krieger; Sam Buono; Joseph I. Sussman; and Brian Fitzgerald (collectively, Leasing Defendant Control Persons) move to dismiss Plaintiffs' claims against them for lack of personal jurisdiction, improper venue and failure to state a claim.  These individual Defendants also move to compel arbitration of Campbell's claims.  Finally, Defendant Fiona Walshe joins portions of the MSI Defendants' motion to dismiss and offers additional arguments why Plaintiffs' first cause of action against her must be dismissed.  Universal Card, et al.'s motion to

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

compel arbitration was heard on June 2, 2011; the remaining motions were taken under submission on the papers.  Having considered oral argument and the papers submitted by the parties, the Court GRANTS in part and DENIES in part MSI Defendants' motion to dismiss; DENIES Universal Card, et al.'s motion to compel; GRANTS Healy and MBF Merchant Capital's motion to dismiss; GRANTS in part and DENIES in part Leasing Defendant Entities and Leasing Defendant Control Persons' motions to dismiss and to compel arbitration; and GRANTS in part and DENIES in part Walshe's motion to dismiss.

BACKGROUND

Plaintiffs are six individuals and five businesses.  Below, for brevity, each individual Plaintiff's last name is used to refer to both that Plaintiff and his or her business.  Plaintiffs divide the twenty-eight Defendants into two categories: Merchant Services Defendants and Leasing Defendants.

Merchant Services Defendants are California-based entities and individuals.  Plaintiffs allege that MSI operates under the names Universal Card, Inc.; National Payment Processing; and Universal Merchant Services LLC.  Plaintiffs collectively refer to these entities as the Merchant Services Companies, each of which is allegedly the alter ego of the others.  Plaintiffs allege the following about the individual Merchant Services Defendants: Moore is MSI's chief executive officer (CEO) and the majority shareholder of each of the Merchant Services Companies; Jurczyk is Vice President of Operations for National Payment Processing and a shareholder of an unspecified Merchant Services Company; Parisi is National Payment Processing's Senior Vice President and a shareholder of an unspecified Merchant Services Company; Madura is

3

National Payment Processing's Manager of Corporate Operations; Walshe was a regional sales manager for the Merchant Services Companies; and Roy was a senior account executive for the Merchant Services Companies. Plaintiffs contend that the Merchant Services Companies are alter egos of Moore, Jurczyk and Parisi.

Leasing Defendants are entities and individuals based outside of California. Plaintiffs allege that Northern Leasing has a principal place of business in New York and owns MBF Leasing, Golden Eagle Leasing, Lease Source-LSI, Lease Finance Group, and Defendant SKS Associates, LLC. Plaintiffs collectively refer to these entities as the Northern Leasing Companies, each of which is allegedly the alter ego of the others. The following individuals allegedly directed and controlled the Northern Leasing Companies: Cohen, Northern Leasing's president and CEO; Mezei, Northern Leasing's chairman of the board; Krieger, Northern Leasing's Vice President for Operations; Fitzgerald, MBF Leasing's former Executive Vice President for Business Development; Buono, Northern Leasing's and MBF Leasing's former Vice President of Collections and Customer Service; and Sussman, an attorney. These individuals allegedly invest profits obtained through the alleged fraud in shell companies, such as Northern Funding.

Plaintiffs also include as Leasing Defendants MBF Merchant Capital, which has a principal place of business in Illinois, and RBL Capital Group, LLC, which has a principal place of business in New York. Plaintiffs allege that Healy is MBF Merchant Capital's president and sole shareholder and RBL Capital Group's former president.

Plaintiffs explain the alleged fraud as follows. Credit and

4

debit card transactions are processed through financial networks, called interchanges, run by entities like Visa and Mastercard. Financial institutions, as members of these interchanges, can sell card processing services directly to merchants, or indirectly through companies and individuals known as Independent Sales Organizations and Merchant Service Providers (ISOs/MSPs). These ISOs/MSPs must be licensed and registered with the financial institutions.

Merchants pay a fee for each credit and debit card transaction. The fee is "shared among (1) the bank that issued the credit or debit card to the customer, (2) the interchange, (3) the bank through whom the merchant is accepting the card, (4) the ISO/MSP that solicited the merchant and/or provides customer service to the merchant (if any) and (5) the third party-processor (if any)." 2AC ¶ 69. Merchants may also be required to pay for credit and debit card processing equipment, such as card terminals.

In this case, Merchant Services Defendants are ISO/MSPs, and Leasing Defendants provided card processing equipment. In or about 2003, Healy and Moore executed a contract involving the Merchant Services Companies, Moore and Leasing Defendants. 2AC ¶ 139. Under the arrangement, Merchant Services Defendants marketed equipment leases to merchants on behalf of MBF Leasing. Id. ¶ 133.

When marketing card processing services, the Merchant Services Companies' independent sales agents, such as Walshe, misled merchants about card transaction rates. In particular, these sales agents used a so-called Rate Sheet, which suggested that the merchants would be charged a fixed rate of 1.79 percent for each

5

**United States District Court**
For the Northern District of California

card transaction plus a flat monthly service fee.  In fact, however, the rates for each transaction varied based on the type of credit card a consumer used.  Further, not all of the charges associated with card processing services were reflected on the Rate Sheet, even though sales agents represented they were.  The Rate Sheet had a signature line for a merchant to affirm that "all fees have been sufficiently explained to my satisfaction."  2AC ¶ 212. If a merchant decided to seek card processing services through Merchant Services Defendants, the merchant generally was asked to sign an Application for Merchant Agreement.  Sales agents were instructed to represent that the Application reflected "the entire arrangement with the Merchant Services Defendants." Id. ¶ 257. However, sales agents did not provide the merchant with the Merchant Card Processing Agreement (MCPA), which provided the terms for card processing services.  The Application referred to the MCPA and instructed the merchant "to review the terms and conditions of a 'Merchant Card Processing Agreement included with this application.'" Id. ¶ 258.

The sales agents also misrepresented the need for and value of leasing card processing equipment from MBF Leasing.  Equipment Finance Leases (EFLs) governed merchants' use of this equipment.

Von Glasenapp, Su, Baumgartner, Jordan and Bae sought card processing services through Merchant Services Defendants, relying on misrepresentations by sales agents or on the Rate Sheet.  These Plaintiffs' circumstances differed.  Su and Baumgartner signed the Rate Sheet, but there are no allegations that Von Glasenapp, Jordan or Bae also did so.  Su signed the Application for Merchant Agreement, Jordan initialed the first page, and Bae was presented

United States District Court
For the Northern District of California

with the first page but does not appear to have signed it.  Von Glasenapp allegedly never saw an Application for Merchant Agreement, and Baumgartner contends that someone forged her signature on the Application attributed to her.  Von Glasenapp's, Su's, Baumgartner's and Jordan's MCPAs, which they contend they never received, were contracts between them and non-parties TransFirst and Columbus Bank & Trust (CB&T),[1] which performed card processing services.  These Plaintiffs' MCPAs contained arbitration and forum selection clauses, requiring arbitration in Colorado of any dispute arising from the MCPA.  Bae's MCPA, which he contends he never received, was between him and non-party Fifth Third Bank,[2] another card processor.  His MCPA designated Cincinnati or Hamilton County, Ohio as the proper forum for any lawsuit arising from the contract, but did not require arbitration.  According to Plaintiffs, although the MCPAs may have signatures acknowledging their terms, this is because "Merchant Services Defendants create a signed version using scanners and computer programs to copy the signature . . . onto the document."  2AC ¶ 264.

Von Glasenapp signed a one-page EFL; Su "signed the personal guaranty portion" of the EFL, 2AC ¶ 388; and Jordan was presented with only the first page of the EFL and signed it.  Although sales agents offered Baumgartner and Bae an equipment lease, they

---

[1] Plaintiffs originally named TransFirst Holdings, Inc.; TransFirst, LLC; TransFirst Third Party Sales, LLC; and Columbus Bank and Trust as Defendants in this action.  However, Plaintiffs voluntarily dismissed their claims against these entities on January 18, 2011.  (Docket No. 183.)

[2] Although Plaintiffs originally named Fifth Third Bank as a Defendant, they dismissed their claims against it on December 30, 2010.  (Docket No. 180.)

declined.   Nevertheless, EFLs were executed for Baumgartner and Bae, and they contend that the signatures on the EFLs attributed to them are forged.

Campbell did not have any interactions with Merchant Services Defendants and did not enter into an MCPA.  However, in 2002, she executed an EFL with Lease Finance Group for a forty-eight-month lease.  The EFL required monthly payments of $79.95 per month and included an arbitration clause, providing,

> Any claim or controversy including any contract or tort claim, between or among us, you or any Guarantor related to this Lease, shall be determined by binding arbitration in accordance with Title 9 of the U.S. Code and the Commercial Arbitration Rules of the American Arbitration Association.  All statutes otherwise applicable shall apply.  Judgment upon the arbitration award may be entered in any court having jurisdiction.  In event you or Guarantor Defaults, these provisions regarding arbitration shall not apply to our right to repossess the Equipment.  This Lease is made in interstate commerce.  Any arbitration shall take place in Chicago, Illinois.

Krieger Decl. in Support of Mot. to Compel Arbitration (Krieger Arbitration Decl.), Ex. 1, at 3.[3]

Plaintiffs complain about various fees they were charged.  By using "different bill formats to confuse customers and hide false charges," Merchant Services Defendants billed merchants "for fees purportedly incurred when processing transactions."  2AC ¶ 282.

---

[3] Although courts generally cannot consider documentary evidence on a motion to dismiss, doing so is appropriate when the pleadings refer to the documents, their authenticity is not in question and there are no disputes over their relevance.  <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1038 (9th Cir. 2010); <u>Branch v. Tunnell</u>, 14 F.3d 449, 454 (9th Cir. 1994) (holding that courts may properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings").  Although Plaintiffs dispute the authenticity of portions of the MCPAs, they do not challenge the sections that name these Defendants as parties to the agreements.

The billing statements were not itemized, but instead contained lump sums that included "fraudulent charges."  2AC ¶ 282.

Von Glasenapp, Jordan and other merchants also received "letters a couple times a year informing them of their obligation to pay a personal property tax on the equipment they" leased.  2AC ¶ 274.  Leasing Defendants determined the amount of this tax and debited it, along with a processing fee, from Von Glasenapp's, Jordan's and other merchants' bank accounts.  However, the collected taxes "are not actually due to, nor are they remitted to, any taxing authority."  Id. ¶ 277.  Instead, the funds were transferred to shell companies owned by Leasing Defendants.

To collect on delinquent bills, Sussman, on behalf of Leasing Defendants, filed lawsuits in New York, with the intention to "obtain default judgments which can be sold to collection agencies and also to extort payment from Class members who wish to preserve their good credit ratings."  2AC ¶ 295.  Sussman and Sussman PC (hereinafter, the Sussman Law Firm) "routinely violate" provisions of New York Civil Practice Law and Rules.  Id. ¶ 307.  Sussman allegedly filed lawsuits against Bae on July 27, 2006 and March 22, 2010.

Finally, certain Defendants engaged in unlawful conduct with respect to Von Glasenapp's and Bae's consumer credit reports.  In particular, without a permissible purpose, MBF Leasing inquired into Von Glasenapp's consumer credit report on February 20, 2009 and placed a negative notation on it in April 2009.  Also without a permissible purpose, Universal Merchant Services inquired into Von Glasenapp's consumer credit report on March 20, 2009.  Northern Leasing placed a negative notation on Bae's consumer credit report

United States District Court
For the Northern District of California

sometime after Sussman filed the July 2006 lawsuit on its behalf. On September 25, 2008, December 11, 2009, and February 22, 2010, without a permissible purpose, MBF Leasing inquired into Bae's credit report.

Unless otherwise stated, the following claims are asserted by all Plaintiffs except Campbell and are against all Defendants:[4] (1) by all Plaintiffs, violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c); (2) by all Plaintiffs, conspiracy to commit a RICO violation, in violation of 18 U.S.C. § 1962(d); (3) intentional misrepresentation, against all Defendants except Healy and MBF Merchant Capital; (4) negligent misrepresentation, against all Defendants except Healy and MBF Merchant Capital; (5) violation of California's False Advertising Law, Cal. & Bus Prof. Code §§ 17500, et seq., against all Defendants except Healy and MBF Merchant Capital; (6) breach of contract, against Merchant Services Defendants, the Northern Leasing Companies and Leasing Defendant Control Persons; (7) breach of the implied covenant of good faith and fair dealing, against all Defendants except Healy and MBF Merchant Capital; (8) by Von Glasenapp and Bae, violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, against the Merchant Services Companies and the Northern Leasing Companies; (9) abuse of process, against Leasing Defendants except Healy and

---

[4] Plaintiffs state that Campbell is a named Plaintiff with respect to only "the two counts under Racketeer Influenced and Corrupt Organizations Act." Pls.' Reply in Support of Mot. for Prelim. Injunction at 2:24-25. Also, Plaintiffs have clarified that their "remaining claims" against Healy and MBF Merchant Capital are their claims under the Racketeer Influenced and Corrupt Organizations Act and California's Unfair Competition Law. Pls.' Notice of May 6, 2011 at 1 n.1.

MBF Merchant Capital; (10) conversion, against all Defendants except Healy and MBF Merchant Capital; and (11) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq.

On November 29, 2010, pursuant to Defendants' motions, the Court dismissed with leave to amend several of Plaintiffs' claims. However, Von Glasenapp's, Su's, Baumgartner's and Jordan's section 1962(c) claims against the Merchant Services Companies, Moore and Roy were deemed cognizable. Common law fraud, section 17500 and UCL claims were found to be stated against the Merchant Services Companies, Moore, Roy and Walshe. The Court afforded Plaintiffs leave to conduct discovery to establish facts supporting the exercise of personal jurisdiction over the individual Leasing Defendants.

Plaintiffs filed their 2AC on March 18, 2011. On June 13, 2011, the Court issued a preliminary injunction against SKS Associates and denied its motion to compel arbitration of Campbell's claims. SKS Associates has not moved to dismiss Plaintiffs' claims and did not join any of the current motions.

DISCUSSION

I.   Motions to Compel Arbitration

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., reflects a "liberal federal policy favoring arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). However, the FAA "imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" Stolt-Nielsen

United States District Court
For the Northern District of California

S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1773 (2010)
(quoting Volt Information Sciences, Inc. v. Bd. of Trustees of
Leland Stanford Univ., 489 U.S. 468, 479 (1989)). "The right to
compel arbitration stems from a contractual right," which generally
"may not be invoked by one who is not a party to the agreement and
does not otherwise possess the right to compel arbitration."
Britton v. Co-op Banking Group, 4 F.3d 742, 744 (9th Cir. 1993)
(citation omitted). When a question arises as to whether "a
particular party is bound by the arbitration agreement," "the
liberal federal policy regarding the scope of arbitrable issues is
inapposite." Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th
Cir. 2006) (emphasis in original; citation omitted).

There are limited exceptions under which an arbitration
agreement may be enforced by or against non-signatories. See,
e.g., Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1045 (9th
Cir. 2009); Ross v. Am. Express Co., 547 F.3d 137, 143 (2d Cir.
2008). Among these exceptions is the doctrine of equitable
estoppel, which "precludes a party from claiming the benefits of a
contract while simultaneously attempting to avoid the burdens that
contract imposes." Mundi, 555 F.3d at 1045-46 (citation and
internal quotation marks omitted).

Non-signatories have been permitted to enforce an arbitration
clause against a signatory when it would be "'unfair to allow the
party opposing arbitration to avoid its commitment to arbitrate on
the ground that the non-signatory was not the very entity with
which the party opposing arbitration had a contract.'" Ross, 547
F.3d at 145-46 (quoting Sokol Holdings, Inc. v. BMB Mumbai, Inc.,
542 F.3d 354, 361 (2d Cir. 2008)) (internal editing marks by Ross

12

court omitted).  Such unfairness may arise when two circumstances exist: (1) the disputed issues are "intertwined with the contract providing for arbitration" and (2) there is "a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Sokol, 542 F.3d at 359, 361; see also Mundi, 555 F.3d at 1046 (noting the holding in Sokol).[5]  The Ross observed that the cases in which the Second Circuit has permitted a non-signatory to compel arbitration against a signatory "have tended to share a common feature in that the non-signatory party asserting estoppel has had some sort of corporate relationship to a signatory party."  547 F.3d at 144.  These cases, the court noted, were those "involving subsidiaries, affiliates, agents, and other related business entities."  Id.

>    A.   Universal Card, National Payment Processing and Moore's
>         Motion to Compel Arbitration

Universal Card, National Payment Processing and Moore move to compel arbitration of Von Glasenapp's, Su's, Baumgartner's and

---

[5] Citing MS Dealer Services Corporation v. Franklin, 177 F.3d 942 (11th Cir. 1999), Universal Card, National Payment Processing and Moore argue that the relationship between a non-signatory seeking to assert an absent signatory's right to arbitration is not a requirement, but instead only a factor a court may consider in deciding whether to apply equitable estoppel.  In Mundi, however, the Ninth Circuit noted that other courts have found this relationship to be a requirement.  555 F.3d at 1046.  Further, Ross and the cases on which it relies were decided after MS Dealer and persuasively establish the necessity of a close relationship.

13

United States District Court
For the Northern District of California

Jordan's claims against them.[6]  Although they were not signatories to these Plaintiffs' MCPAs, which contained a disputed arbitration clause, Universal Card, National Payment Processing and Moore assert that they are entitled to pursue arbitration under them based on the doctrine of equitable estoppel.

Even if Von Glasenapp's, Su's, Baumgartner's and Jordan's claims were intertwined with their MCPAs, Universal Card, National Payment Processing and Moore are not entitled to compel arbitration of their claims.  These Defendants fail to establish a sufficiently proximate relationship with TransFirst and CB&T, the signatories to the MCPAs.  Moore and Jurczyk state that National Payment Processing is under contract with TransFirst and CB&T to market and sell TransFirst's and CB&T's products and services.  In turn, according to Moore and Jurczyk, National Payment Processing has subcontracted its marketing and sales duties to Universal Card.  However, none of this establishes that Universal Card, National Payment Processing or Moore have "some sort of corporate relationship to a signatory party."  Ross, 547 F.3d at 144.

Universal Card, National Payment Processing and Moore point to allegations in the First Amended Complaint (1AC) that they were engaged in a conspiracy with TransFirst and CB&T to accept fraudulent MCPAs, worked in concert with TransFirst and CB&T to issue deceptive billing statements and shared with TransFirst and CB&T proceeds fraudulently obtained from Plaintiffs.  That Plaintiffs previously plead these facts, which do not appear in

---

[6] As noted above, Campbell did not enter into an MCPA at issue in this litigation and Bae's MCPA was with Fifth Third Bank. Universal Card, National Payment Processing and Moore do not contend that they have a relationship with Fifth Third.

**United States District Court**
For the Northern District of California

their 2AC, does not suffice for equitable estoppel purposes. Universal Card, National Payment Processing and Moore, as the parties seeking to invoke estoppel, have the burden to show that it applies. *See Crestline Mobile Homes Mfg. Co. v. Pac. Fin. Corp.*, 54 Cal. 2d 773, 778 (1960) (stating that, under California law, party relying on equitable estoppel doctrine has burden to show it applies); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010) (noting that party seeking arbitration has burden of proving existence of arbitration agreement). They do not satisfy their burden. Notably, Moore and Jurczyk do not assert in their declarations that Universal Card and National Payment Processing have an agency or corporate relationship with TransFirst and CB&T.

In *Mundi*, the Ninth Circuit suggested that, "in light of the general principle that only those who have agreed to arbitrate are obliged to do so," courts should be cautious in extending the bounds of the doctrine of equitable estoppel. 555 F.3d at 1046. In *Stolt-Nielsen*, the Supreme Court reiterated that "it is . . . clear from our precedents and the contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes." 130 S. Ct. at 1774 (emphasis in original). Based on these teachings, Universal Card, National Payment Processing and Moore cannot avail themselves of the disputed arbitration clause in Von Glasenapp's, Su's, Baumgartner's and Jordan's MCPAs.

> **B.** Leasing Defendant Entities and Leasing Defendant Control Persons' Motion to Compel Arbitration

Leasing Defendant Entities and Leasing Defendant Control Persons move to compel arbitration of Campbell's claims against

**United States District Court**
For the Northern District of California

them.   They point to Campbell's EFL, which was between her and Lease Finance Group.   Krieger Decl. in Support of Mot. to Compel Arbitration, Ex. 1.

The Leasing Defendant Entities other than Lease Finance Group, and Leasing Defendant Control Persons, acknowledge they were not signatories to Campbell's lease, but assert that they may invoke the doctrine of equitable estoppel to compel arbitration of her claims.   However, these Defendants do not meet their burden to show that they have a sufficiently close relationship with Lease Finance Group.   They point only to Plaintiffs' allegations that they are associated with Lease Finance Group.   As explained above, this is inadequate.

Furthermore, as explained in the Court's Court's June 13, 2011 Order denying SKS Associates's motion to compel arbitration, arbitration of Campbell's claims is not appropriate.   The record indicates that Campbell's lease, which contained the arbitration clause at issue, has expired.   Even if the lease were operative, there is no evidence that Campbell's claims arise under it.

Accordingly, Leasing Defendant Entities and Leasing Defendant Control Persons' motion to compel arbitration is denied.

II.   Leasing Defendant Entities and Leasing Defendant Control
      Persons' Motion to Dismiss for Improper Venue Von Glasenapp's,
      Su's, Baumgartner's, Jordan's and Bae's Claims

Pursuant to Federal Rule of Civil Procedure 12(b)(3), Leasing Defendant Entities and Leasing Defendant Control Persons move to dismiss for improper venue Von Glasenapp's, Su's, Baumgartner's Jordan's and Bae's claims against them.   These Defendants assert that the forum selection clause in these Plaintiffs' EFLs requires litigation of their claims in the state courts of New York County

**United States District Court**
For the Northern District of California

1    in New York State.

2        In July and August 2010, Leasing Defendant Entities and

3    Leasing Defendant Control Persons moved to dismiss these

4    Plaintiffs' claims pursuant to various Rule 12(b) defenses.  At

5    that time, however, they did not assert a defense of improper

6    venue, even though they could have.  Accordingly, these Defendants

7    have waived their defense of improper venue, and their Rule

8    12(b)(3) motion to dismiss must be denied.  See Fed. R. Civ. P.

9    12(g)(2) and (h)(1)(A).

10   III. Motions to Dismiss for Failure to State a Claim

11       A complaint must contain a "short and plain statement of the

12   claim showing that the pleader is entitled to relief." Fed. R.

13   Civ. P. 8(a).  Dismissal under Rule 12(b)(6) for failure to state a

14   claim is appropriate only when the complaint does not give the

15   defendant fair notice of a legally cognizable claim and the grounds

16   on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

17   (2007).  In considering whether the complaint is sufficient to

18   state a claim, the court will take all material allegations as true

19   and construe them in the light most favorable to the plaintiff.  NL

20   Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

21   However, this principle is inapplicable to legal conclusions;

22   "threadbare recitals of the elements of a cause of action,

23   supported by mere conclusory statements," are not taken as true.

24   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly,

25   550 U.S. at 555).

26       A.   Relevant Limitations Periods

27       Various Defendants assert that certain claims are barred by

28   the statute of limitations.  These arguments are considered below.

17

United States District Court
For the Northern District of California

1.   Bae's Claims

MSI Defendants argue that Bae's claims against them for intentional misrepresentation, negligent misrepresentation, violation of section 17500, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion and violation of the UCL are time-barred.  Bae did not respond to this argument.  Accordingly, these claims are dismissed without leave to amend.  His claims against Walshe for the same are likewise dismissed without leave to amend because she stands in a position similar to that of the MSI Defendants.  See Abaqninin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008); Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

MSI Defendants, Leasing Defendant Entities and Leasing Defendant Control Persons contend that Bae's RICO claims are barred by the statute of limitations.

RICO actions are subject to a four-year statute of limitations.  Pincay v. Andrews, 238 F.3d 1106, 1108 (9th Cir. 2001) (citation omitted).

Plaintiffs do not respond to MSI Defendants' arguments that Bae's RICO claims against them are time-barred.  Accordingly, Bae's RICO claims against the MSI Defendants are dismissed without leave to amend.  His claims against Walshe are likewise dismissed without leave to amend because she stands in a position similar to that of the MSI Defendants.

**United States District Court**
For the Northern District of California

Plaintiffs argue that the separate accrual rule saves Bae's claims against the Leasing Defendant Entities and Leasing Defendant Control Persons.  Under the Ninth Circuit's "separate accrual rule," the limitations period can be reset by an overt act with two characteristics: (1) it must be "a new and independent act that is not merely a reaffirmation of a previous act;" and (2) it must inflict "new and accumulating injury on the plaintiff."  Grimmett v. Brown, 75 F.3d 506, 513 (9th Cir. 1996) (emphasis in original); see also Tanaka v. First Hawaiian Bank, 104 F. Supp. 2d 1243, 1246, 1250-52 (D. Haw. 2000).  Plaintiffs point to Northern Leasing's lawsuit against Bae, filed on July 17, 2006; the negative notation Northern Leasing placed on Bae's credit report after its lawsuit was filed; and MBF Leasing's lawsuit against Bae, filed on March 22, 2010.  However, Plaintiffs do not show how these acts inflicted injury independent from the injury Bae allegedly suffered when he signed the May 2005 EFL that was allegedly procured by fraud and forms the basis of his RICO claims.  Plaintiffs acknowledge that Bae's EFL could be used to "undertake collections activities . . . and file a lawsuit in the event of default." Opp'n at 44:18-19.  Plaintiffs nevertheless contend that Bae's RICO claims against the Leasing Defendant Entities and Leasing Defendant Control Persons remain viable because his injuries are based on the fact that Northern Leasing attempted to collect fees from him, even though his EFL was with MBF Leasing.  This argument is not persuasive.  Bae does not identify any new and accumulating injury he suffered arising specifically from the fact that Northern Leasing, and not MBF Leasing, took action against him.

Accordingly, Bae's RICO claims are time-barred and are

1 dismissed without leave to amend.

2        2.   Su's and Campbell's Claims

3      Leasing Defendant Entities and Leasing Defendant Control

4 Persons assert that Su's and Campbell's claims against them are

5 time-barred to the extent they seek relief for conduct before March

6 19, 2010.  These Defendants point to a provision in Su's and

7 Campbell's EFLs, which states that any action arising from their

8 EFLs must be brought within one year of the date it accrues.

9      Although contractual provisions limiting statutory periods can

10 be enforceable, they may be subject to general contract defenses,

11 such as unconscionability.  See, e.g., Soltani v. W. & S. Life Ins.

12 Co., 258 F.3d 1038, 1042 (9th Cir. 2001).  However, many

13 "California cases have upheld contractual shortening of statutes of

14 limitations in different types of contracts."  Id.  "California

15 case law strongly indicates that [a] six-month limitation provision

16 is not substantively unconscionable."  Id. at 1043.

17      Plaintiffs assert that the provision imposing a shorter

18 limitations period is unenforceable because it is unconscionable.

19 Plaintiffs argue that the relevant provision was on pages not shown

20 to Su or Campbell.

21      The Court declines to limit Su's and Campbell's claims at this

22 time.  It is not apparent, on the current record, that the

23 contractual limitations period is not unconscionable.  After

24 discovery, Leasing Defendant Entities and Leasing Defendant Control

25 Persons may seek summary adjudication based on the shortened

26 limitations period imposed by these Plaintiffs' EFLs.

27      B.   RICO Claims

28      "To state a claim under § 1962(c), a plaintiff must allege

United States District Court
For the Northern District of California

'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). Stating a section 1962(c) claim is necessary to assert a claim under section 1962(d) for a RICO conspiracy; thus, the failure to state the former requires dismissal of the latter. See Howard v. Am. Online Inc., 208 F.3d 741, 751 (9th Cir. 2000).

As noted above, Von Glasenapp, Su, Baumgartner and Jordan have stated section 1962(c) claims against the Merchant Services Companies, Moore and Roy. Because Plaintiffs do not oppose MSI Defendants' motion to dismiss Campbell's RICO claims against them, these claims are dismissed without leave to amend. Campbell's RICO claims against Walshe are likewise dismissed without leave to amend because there are no allegations that Campbell had any interactions with Walshe.

Defendants' arguments concerning the remaining RICO claims are considered below.

1.   "Conduct" of a RICO Enterprise

Walshe contends that the RICO claims brought against her fail because Plaintiffs' pleadings do not suggest that she asserted sufficient control over the alleged RICO enterprise.

To be liable under section 1962(c), one must have "participated in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993). To do so, one must demonstrate "some degree of direction." Id. at 179. "RICO liability is not limited to those with primary responsibility for the enterprise's affairs," nor is it limited to "those with a

United States District Court
For the Northern District of California

formal position in the enterprise." Id.  However, one must have "some part in directing the enterprise's affairs." Id. (emphasis in original).  "Simply performing services for the enterprise does not rise to the level of direction." Walter v. Drayson, 538 F.3d 1244, 1249 (9th Cir. 2008).

Walshe allegedly entered into an agreement with Moore that required her to relocate from Southern California to San Jose to perpetrate the alleged fraud in a new location.  She then allegedly employed Moore's "sales tactics and training programs" and hired "independent contractors" to advance the fraudulent scheme.  2AC ¶ 176.  These allegations sufficiently suggest that Walshe exercised some degree of direction over the purported RICO enterprise.

> 2.   Racketeering Activity

Leasing Defendant Entities, Leasing Defendant Control Persons, Healy and MBF Merchant Capital argue that Plaintiffs fail to plead that they participated in racketeering activity.  Parisi, Jurczyk and Madura contend that the claims against them must be dismissed because Plaintiffs do not allege their roles in any fraud.

Plaintiffs' RICO claims are based on alleged instances of wire and mail fraud, which constitute predicate acts for a pattern of racketeering activity.  18 U.S.C. § 1961(1).  "A wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud." Odom, 486 F.3d at 554 (internal quotation marks omitted); 18 U.S.C. § 1343.  The elements of mail fraud differ only in that they involve the use of the United States

United States District Court
For the Northern District of California

mail rather than wires.  See 18 U.S.C. § 1341.

Federal Rule of Civil Procedure 9(b) requires that wire and mail fraud be plead with particularity.  See Odom, 486 F.3d at 553-54.  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false."  In re GlenFed, Inc., Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).  Scienter may be averred generally, simply by saying that it existed.  Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally.").  Based on this heightened pleading standard, the only elements of wire and mail fraud "that require particularized allegations are the factual circumstances of the fraud itself."  Odom, 486 F.3d at 554.

In Swartz v. KPMG LLP, the Ninth Circuit addressed the effect of Rule 9(b) in cases involving allegations of a fraudulent scheme perpetuated by multiple defendants.  476 F.3d 756, 764 (9th Cir. 2007).  The court stated that

> there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant. Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.  On the other hand, Rule 9(b) does not allow a complaint to

merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.  In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.

Id. (citations and internal quotation and editing marks omitted; emphasis in original); see also Moore v. Kayport Package Express, Inc., 885 F.2d 531, 541 (9th Cir. 1989) ("Allegations of fraud under section 1962(c) must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme.") (citation and internal quotation marks omitted).

Here, Plaintiffs allege a fraudulent scheme perpetrated through the wires and mail.  They plead with specificity the Merchant Services Companies' sales agents' misrepresentations about card processing fees and the need to obtain equipment from Leasing Defendants.  Parisi and Jurczyk, among other things, allegedly trained sales agents to complete the misleading Rate Sheet.  The sales agents' alleged deceptions led merchants to complete applications for card processing services and enter into EFLs, which required Krieger's approval.  Krieger allegedly approved the EFLs with knowledge of the sales agents' deceptions.  Madura allegedly forged signatures on merchants' applications.  MBF Leasing used the EFLs to make electronic debits from merchants' bank accounts and send allegedly false letters asserting that property tax was owed on card processing equipment.  Cohen, Mezei and Krieger allegedly caused these letters to be sent, knowing that "no such taxes and fees were due."  2AC ¶ 154.  Based on the EFLs, Buono allegedly undertook collection efforts against merchants,

24

**United States District Court**
For the Northern District of California

which entailed phone calls and letters.  Funds obtained based on the EFLs are allegedly invested in Northern Funding.  These allegations, among others, are sufficient to suggest that Parisi, Jurczyk, Madura, MBF Leasing, Northern Funding, Cohen, Mezei, Krieger, and Buono participated in racketeering activity.

However, Plaintiffs' allegations against Northern Leasing, Golden Eagle Leasing, Lease Finance Group and Lease Source-LSI are deficient.  Plaintiffs allege that Northern Leasing acquired Golden Eagle Leasing, Lease Finance Group and Lease Source-LSI, and individuals associated with Northern Leasing represent that they are also connected with Golden Eagle Leasing, Lease Finance Group and Lease Source-LSI.  None of these representations, however, were allegedly made to Plaintiffs.  Plaintiffs also allege that Golden Eagle Leasing, Lease Finance Group and Lease Source-LSI share with Northern Leasing an address, "a common switchboard, staff, postage meter, computer network, and server."  2AC ¶ 85.  These allegations do not suggest that Northern Leasing, Golden Eagle Leasing, Lease Finance Group or Lease Source-LSI participated in the alleged wire and mail fraud.

Likewise, Plaintiffs' allegations pertaining specifically to MBF Merchant Capital, RBL Capital Group, Fitzgerald and Healy do not suggest they engaged in racketeering activity.  These Defendants allegedly were involved in the recruitment of ISOs/MSPs that Plaintiffs contend were "unscrupulous."  MBF Merchant Capital and RBL Capital Group allegedly provided loans to sales agents.  These allegations do not suggest that these Defendants participated in wire or mail fraud.

Finally, there are no allegations that Sussman or the Sussman

**United States District Court**
For the Northern District of California

Law Firm took any action against Plaintiffs whose claims are not barred by the statute of limitations.

The RICO claims against Parisi, Jurczyk, Madura, MBF Leasing, Northern Funding, Cohen, Mezei, Krieger and Buono will not be dismissed for a failure to plead racketeering activity.  However, Plaintiffs' section 1962(c) and section 1962(d) claims against Northern Leasing, Golden Eagle Leasing, Lease Finance Group, Lease Source-LSI, MBF Merchant Capital, RBL Capital Group, Fitzgerald, Healy, Sussman and the Sussman Law Firm are dismissed.  Because Plaintiffs have been unable to state these claims, notwithstanding the Court's previous instructions, this dismissal is without leave to amend.  See, e.g., McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

3.   Conspiracy to Commit RICO Violations

MSI Defendants argue that Plaintiffs do not allege a RICO conspiracy in violation of section 1962(d).  Walshe joins this argument.[7]

As noted above, in 2006, Moore and Walshe allegedly agreed that Walshe would relocate to San Jose to open an office to perpetuate the fraudulent scheme on behalf of the Merchant Services Companies.  Walshe then allegedly misrepresented to merchants, including Von Glasenapp, the contracts associated with card processing services and equipment.  These allegations, among

---

[7] MBF Leasing, Northern Funding, Cohen, Mezei, Krieger and Buono moved to dismiss Plaintiffs' section 1962(d) claims only on the ground that such claims cannot be stated if Plaintiffs did not state section 1962(c) claims.  However, as noted above, Plaintiffs state their section 1962(c) claims against these Defendants.  Thus, these Defendants' motion to dismiss Plaintiffs' section 1962(d) claims must be denied.

United States District Court
For the Northern District of California

others, "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." <u>Twombly</u>, 550 U.S. at 556.  Thus, the section 1962(d) claims against the MSI Defendants and Walshe will not be dismissed for insufficient pleading.

C.   Common Law Fraud Claims

Plaintiffs bring common law claims for intentional and negligent misrepresentation (collectively, common law fraud claims), which are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  As noted above, common law fraud claims against the Merchant Services Companies, Moore, Roy and Walshe have been stated.  Parisi, Jurczyk, Madura, Leasing Defendant Entities and Leasing Defendant Control Persons move to dismiss the common law fraud claims brought against them.

Plaintiffs state common law fraud claims against Parisi, Jurczyk, Madura, MBF Leasing, Northern Funding, Cohen, Mezei, Krieger and Buono for the reasons they adequately plead that these Defendants participated in racketeering activity.  The common law fraud claims against Northern Leasing, Golden Eagle Leasing, Lease Finance Group, Lease Source-LSI, RBL Capital Group, Fitzgerald, Sussman and the Sussman Law Firm fail are dismissed for the reasons stated above.  Because Plaintiffs have been unable to state these claims, notwithstanding the Court's previous instructions, this dismissal is without leave to amend.  <u>See, e.q.</u>, <u>McHenry</u>, 84 F.3d at 1177.

D.   Claims for Breach of Contract and Breach of the Implied
     Covenant of Good Faith and Fair Dealing

To assert a cause of action for breach of contract, a plaintiff must plead: (1) the existence of a contract; (2) the

27

plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  <u>Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co.</u>, 116 Cal. App. 4th 1375, 1391 n.6 (2004).  The existence of a contract is necessary for any claim for breach of the implied covenant of good faith and fair dealing.  <u>Spinks v. Equity Residential Briarwood Apartments</u>, 171 Cal. App. 4th 1004, 1033 (2009) (citation and internal quotation marks omitted).  Unless otherwise distinguished below, the Court refers collectively to claims for breach of contract and breach of the implied covenant of good faith and fair dealing as "contract claims."

     1.   Claims Against Merchant Services Defendants

MSI Defendants and Walshe argue that Plaintiffs' contract claims based on the Rate Sheet fail because it is not a contract. However, Plaintiffs allege sufficient facts to suggest that sales agents represented that the Rate Sheet listed all the fees for processing card transactions.  Contractual terms can be established "by such words or conduct 'as justifies the promisee in understanding that the promisor intended to make a promise.'" <u>Horacek v. Smith</u>, 33 Cal. 2d 186, 194 (1948).  Thus, Plaintiffs' contract claims based on the Rate Sheet do not fail as a matter of law.

MSI Defendants and Walshe argue that Plaintiffs do not state contract claims based on an alleged oral contract that the "merchants could cancel electronic payment services at any time without penalty."  2AC ¶ 641.  In particular, these Defendants note that Plaintiffs do not allege that anyone made such a representation.  Plaintiffs did not respond to this argument, and

28

no such allegation appears in the 2AC.  Accordingly, Plaintiffs'
contract claims are dismissed without leave to amend to the extent
they are based on this purported oral contract.

Finally, MSI Defendants and Walshe assert that they cannot be
held liable for breaches of the EFLs.  Because Plaintiffs plead no
facts to suggest that MSI Defendants and Walshe were parties to the
EFLs, their contract claims based on this theory are dismissed.
This dismissal is without leave to amend because the Court's
previous instructions put Plaintiffs on notice as to what is
necessary to state their contract claims.  See, e.g., McHenry, 84
F.3d at 1177.

> 2.   Claims Against Leasing Defendant Entities and
>      Leasing Defendant Control Persons

Leasing Defendant Entities and Leasing Defendant Control
Persons contend that Plaintiffs' contract claims against them must
be dismissed because Plaintiffs do not plead a contractual
relationship with them.

Plaintiffs do not allege that Leasing Defendant Control
Persons, Northern Funding, RBL Capital Group or the Sussman Law
Firm were parties to the EFLs.  Thus, the contract claims against
Leasing Defendant Control Persons and the claims for breach of the
implied covenant of good faith and fair dealing against Northern
Funding, RBL Capital Group and the Sussman Law Firm must be
dismissed.

Plaintiffs allege that all Northern Leasing Companies were
parties to the EFLs.  However, the EFLs state that they were with
MBF Leasing.  Thus, Plaintiffs' allegation must be rejected.
Courts "need not accept as true allegations contradicting documents

United States District Court
For the Northern District of California

that are referenced in the complaint." <u>Lazy Y Ranch Ltd. v.</u>
<u>Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008).  Plaintiffs insist that
the Northern Leasing Companies other than MBF Leasing may be held
liable based on an alter ego theory of liability.  However,
Plaintiffs' boilerplate alter ego allegations are not sufficient.
Indeed, Plaintiffs do not allege that it would be inequitable if
only MBF Leasing were held liable on their contract claims.  <u>See</u>
<u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th 523, 538
(2000).

Plaintiffs state contract claims against MBF Leasing.
However, the Court dismisses without leave to amend Plaintiffs'
contract claims against Leasing Defendant Control Persons, Northern
Leasing, MBF Leasing, Golden Eagle Leasing, Lease Source-LSI and
Lease Finance Group.  Plaintiffs' claims for breach of the implied
covenant of good faith and fair dealing against Northern Funding,
RBL Capital Group and the Sussman Law Firm are also dismissed.
Because Plaintiffs have been unable to state contract claims
against these Defendants, notwithstanding the Court's previous
instructions, these dismissals are without leave to amend.  <u>See,</u>
<u>e.g.</u>, <u>McHenry</u>, 84 F.3d at 1177.

E.   False Advertising Claims

As noted above, claims under section 17500 against the
Merchant Services Companies, Moore, Roy and Walshe have been found
sufficient.  Parisi, Jurczyk, Madura, Leasing Defendant Entities
and Leasing Defendant Control Persons move to dismiss Plaintiffs'

30

section 17500 claims against them.[8]

Section 17500 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  A false advertising claim under this section may be brought "where the advertising complained of is not actually false, but thought likely to mislead or deceive, or is in fact false."  Day v. AT&T Corp., 63 Cal. App. 4th 325, 332 (1998).  Section 17500 proscribes "not only those advertisements which have deceived or misled because they are untrue, but also those which may be accurate on some level, but will nonetheless tend to mislead or deceive."  Id.  A "defendant's liability must be based on his personal participation in the unlawful practices and unbridled control over the practices that are found to violate" section 17500.  Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 961 (2002) (citation and internal quotation marks omitted).

A section 17500 claim is not stated against Madura. Plaintiffs do not contend that he engaged in deceptive advertising or that he exercised unbridled control over those who did. However, section 17500 claims are stated against Parisi and Jurczyk for the reasons that Plaintiffs have plead cognizable RICO and common law fraud claims against them.  Parisi and Jurczyk allegedly participated in training sales agents to make deceptive representations.

Plaintiffs' section 17500 claims against Leasing Defendant Entities and Leasing Defendant Control Persons fail because

---

[8] Plaintiffs incorrectly assert that Parisi, Jurczyk and Madura do not seek dismissal of the section 17500 claims against them.  See MSI Defs.' Mot. at 16.

31

Plaintiffs do not identify the roles each entity or individual Defendant had in disseminating deceptive advertising.  Instead, they point to allegations concerning "Leasing Defendants."  <u>See</u> 2AC ¶¶ 214-21.  As explained above, such categorical pleading does not satisfy Rule 9(b), which applies to Plaintiffs' section 17500 claims.  Because Plaintiffs have already been warned that non-specific allegations do not comply with Rule 9(b), their section 17500 claims against Leasing Defendant Entities and Leasing Defendant Control Persons are dismissed without leave to amend. <u>See, e.g.</u>, <u>McHenry</u>, 84 F.3d at 1177.

     F.    FCRA

As noted above, Von Glasenapp and Bae bring claims under FCRA against the Merchant Services Companies and Northern Leasing Companies.  MSI Defendants and Leasing Defendant Entities move to dismiss these claims.

The FCRA limits the purposes for which consumer reporting agencies may disclose credit reports.  15 U.S.C. § 1681b.  For willful violations of the statute, prevailing consumers may recover actual or statutory damages, punitive damages and reasonable attorneys' fees.  15 U.S.C. § 1681n(a).

Von Glasenapp and Bae state FCRA claims against Universal Merchant Services, Northern Leasing and MBF Leasing.  However, their FCRA claims against the Merchant Services Companies, other than Universal Merchant Services; Golden Eagle Leasing; Lease Source-LSI; and Lease Finance Group are dismissed because they are based on Plaintiffs' rejected alter ego theory of liability.  This dismissal is without leave to amend because, despite the Court's warnings regarding their boilerplate alter ego allegations,

Plaintiffs have failed to allege sufficient facts.  <u>See, e.g.</u>,
<u>McHenry</u>, 84 F.3d at 1177.

    G.   Abuse of Process

    Bae brings a claim under New York law against Leasing
Defendants for abuse of process.  A claim for abuse of process has
three elements: "(1) regularly issued process, either civil or
criminal, (2) an intent to do harm without excuse or justification,
and (3) use of the process in a perverted manner to obtain a
collateral objective."  <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113, 116
(1984) (citation omitted).  The "process used must involve an
unlawful interference with one's person or property."  <u>Id.</u>
(citation and internal quotation marks omitted).  The "institution
of a civil action by summons and complaint is not legally
considered process capable of being abused."  <u>Id.</u>

    Bae's abuse of process claim is based on MBF Leasing's lawsuit
against him, filed on March 22, 2010.[9]  Under <u>Curiano</u>, Bae's claim
cannot rest on the summons issued in conjunction with the
institution of MBF Leasing's lawsuit.  To claim that he can,
Plaintiffs cite <u>State v. Cohen</u>, 473 N.Y.S.2d 98 (1983); however,
<u>Cohen</u> did not concern the tort of abuse of process or address its
elements.  Even if it did, <u>Cohen</u> preceded <u>Curiano</u>.  <u>See PSI Metals,
Inc. v. Firemen's Ins. Co. of Newark, NJ</u>, 839 F.2d 42, 43-44 (2d
Cir. 1988) (noting change in law based on <u>Curiano</u>).  Plaintiffs
identify no other regularly issued process that interfered with
Bae's person or property.

---

[9] Plaintiffs do not dispute that abuse of process claims are
subject to a one-year limitations period and, therefore, Bae cannot
bring a claim based on Northern Leasing's alleged 2006 lawsuit
against him.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

1    Plaintiffs do not suggest that Bae's claim is based on process

2   other than the summons associated with the March 2010 lawsuit.

3   Accordingly, his abuse of process claim is futile and is dismissed

4   without leave to amend.  See, e.g., Cook, Perkiss and Liehe, Inc.

5   v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 247 (9th Cir.

6   1990).

7        H.   Conversion

8        Under California law, a claim for conversion requires a

9   plaintiff to allege (1) "ownership or right to possession of

10   property;" (2) a defendant's wrongful act toward the property,

11   causing interference with the plaintiff's possession; and

12   (3) damage to the plaintiff.  PCO, Inc. v. Christensen, Miller,

13   Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384,

14   394 (2007).

15        Plaintiffs state a claim for conversion against MSI and MBF

16   Leasing.  However, their conversion claims against the Merchant

17   Services Companies, other than MSI, and the individual Merchant

18   Services Defendants are based on their rejected alter ego theory of

19   liability.  As explained above, Plaintiffs have failed to allege

20   facts supporting this theory, notwithstanding the Court's warning;

21   thus, this dismissal is without leave to amend.  See, e.g.,

22   McHenry, 84 F.3d at 1177.  Plaintiffs' conversion claims against

23   the Leasing Defendant Entities, other than MBF Leasing, and the

24   Leasing Defendant Control Persons are dismissed without leave to

25   amend because they do not allege that these Defendants converted

26

27

28

their funds within the limitations period.[10]   See, e.g., Cook, Perkiss and Liehe, Inc., 911 F.2d at 247.

    I.   UCL Claims

    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

    As noted above, Plaintiffs' 1AC contained cognizable UCL claims against Merchant Services Companies, Moore, Roy and Walshe. And because Plaintiffs state claims for violations of federal and state law against Parisi, Jurczyk, Madura, MBF Leasing, Northern Funding, Cohen, Mezei, Krieger and Buono, they state UCL claims against these Defendants. However, because Plaintiffs do not state claims against Northern Leasing, Golden Eagle Leasing, Lease Finance Group, Lease Source-LSI, RBL Capital Group, MBF Merchant Capital, Fitzgerald, Healy, Sussman and the Sussman Law Firm, their UCL claims against these Defendants are dismissed. Because Plaintiffs have been unable to state UCL claims against these

_____

    [10] Plaintiffs do not dispute that Lease Finance Group's debits of Campbell's bank account fall outside the three-year limitations period.

United States District Court
For the Northern District of California

Defendants, despite the Court's previous instructions, this dismissal is without leave to amend. See, e.g., McHenry, 84 F.3d at 1177.

IV.  Leasing Defendant Control Persons', MBF Merchant Capital's and Healy's Motions to Dismiss for Lack of Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that the court has jurisdiction. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the complaint must be taken as true. AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). However, the court may not assume the truth of such allegations if they are contradicted by affidavit. Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If the plaintiff also submits admissible evidence, conflicts in the evidence must be resolved in the plaintiff's favor. AT&T, 94 F.3d at 588.

Because Plaintiffs fail to state claims against MBF Merchant Capital, Fitzgerald, Healy and Sussman, the Court need not consider whether it has personal jurisdiction over them. With respect to Cohen, Mezei, Krieger and Buono, Plaintiffs assert that the Court may exercise specific jurisdiction or RICO jurisdiction over them.

A court has specific jurisdiction over a defendant when the cause of action arises out of or relates to the defendant's activities within the forum. Data Disc, Inc., 557 F.2d at 1286.

36

United States District Court
For the Northern District of California

The "minimum contacts" required to assert specific jurisdiction are analyzed using a three-prong test: (1) the non-resident defendant must purposefully direct its activities towards, or consummate some transaction with, the forum or a resident thereof; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). Each of these conditions is required for asserting jurisdiction. Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

For a defendant's conduct to demonstrate purposeful direction, the defendant must "allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 802 (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

As noted above, Cohen and Mezei, among other things, allegedly caused letters to be sent to merchants to California, such as Campbell, indicating that property taxes were due even though they were not.  Cohen and Mezei allegedly knew that such taxes were not due.  Krieger, among other things, approved EFLs of California merchants, even though she allegedly knew that they were based on misrepresentations.  Buono directed employees to engage in collection activities against California merchants, including Von Glasenapp, based on the EFLs he allegedly knew to be procured by fraud.  These allegations satisfy the purposeful direction prong.

Plaintiffs' claims are based in part on these allegations and there is no evidence that the exercise of jurisdiction over Cohen,

United States District Court
For the Northern District of California

Mezei, Krieger and Buono would be unreasonable.  Accordingly, the Court denies these Defendants' motion to dismiss for lack of personal jurisdiction.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part MSI Defendants' motion to dismiss (Docket No. 247); DENIES Universal Card, et al.'s motion to compel (Docket No. 221); GRANTS Healy and MBF Merchant Capital's motion to dismiss (Docket No. 246); GRANTS in part and DENIES in part Leasing Defendant Entities and Leasing Defendant Control Persons' motions to dismiss and to compel arbitration (Docket No. 249); and GRANTS in part and DENIES in part Walshe's motion to dismiss (Docket No. 248).  Defendants' motions are granted as follows:

1.   The following claims of Bae are dismissed without leave to amend as time-barred: (1) claims under section 1962(c) and (d); (2) claims for intentional and negligent misrepresentation against MSI Defendants and Walshe; (3) claims for breach of contract and breach of the implied covenant of good faith and fair dealing against MSI Defendants and Walshe; (4) claims under section 17500 against MSI Defendants and Walshe; and (5) claims for conversion against MSI Defendants and Walshe.

2.   Plaintiffs assert claims for violations of sections 1962(c) and (d) of title 18 of the U.S. Code against Defendants.  The claims under section 1962(c) and (d) against Northern Leasing, Golden Eagle Leasing, Lease Finance Group, Lease Source-LSI, MBF Merchant Capital, RBL Capital Group, Fitzgerald, Healy, Sussman, and the

38

**United States District Court**
For the Northern District of California

1  Sussman Law Firm are dismissed without leave to amend.

2  3.   All Plaintiffs except Campbell assert claims for

3      intentional and negligent misrepresentation against all

4      Defendants except Healy and MBF Merchant Capital.  The

5      intentional and negligent misrepresentation claims

6      against Northern Leasing, Golden Eagle Leasing, Lease

7      Finance Group, Lease Source-LSI, RBL Capital Group,

8      Fitzgerald, Sussman and the Sussman Law Firm are

9      dismissed without leave to amend, for failure to plead

10     actionable misrepresentations or participation in the

11     making of actionable misrepresentations.

12 4.   All Plaintiffs except Campbell assert claims for breach

13     of contract against Merchant Services Defendants, the

14     Northern Leasing Companies and Leasing Defendant Control

15     Persons.  All Plaintiffs except Campbell assert claims

16     for breach of the implied covenant of good faith and fair

17     dealing against all Defendants except Healy and MBF

18     Merchant Capital.  The claims for breach of contract and

19     breach of the implied covenant against MSI Defendants and

20     Walshe based on any alleged oral contract or the EFLs are

21     dismissed without leave to amend.  The claims for breach

22     of contract and breach of the implied covenant against

23     Leasing Defendant Control Persons, Northern Leasing,

24     Golden Eagle Leasing, Lease Source-LSI and Lease Finance

25     Group are dismissed without leave to amend.  The claims

26     for breach of the implied covenant of good faith and fair

27     dealing against Northern Funding, RBL Capital Group and

28     the Sussman Law Firm are also dismissed without leave to

1    amend.

2    5.    All Plaintiffs except Campbell assert claims for

3          violations of California Business and Professions Code

4          section 17500 against all Defendants except Healy and MBF

5          Merchant Capital.  The claims under section 17500 against

6          Madura are dismissed without leave to amend.  The section

7          17500 claims against Leasing Defendant Entities and

8          Leasing Defendant Control Persons are dismissed without

9          leave to amend because Plaintiffs do not identify these

10         Defendants' roles in disseminating deceptive advertising.

11   6.    Von Glasenapp and Bae assert claims for violations of the

12         FCRA against the Merchant Services Companies and the

13         Northern Leasing Companies.  Von Glasenapp's and Bae's

14         FCRA claims against the Merchant Services Companies,

15         other than Universal Merchant Services; Northern Leasing,

16         Golden Eagle Leasing, Lease Source-LSI and Lease Finance

17         Group are dismissed without leave to amend because their

18         alter ego theory of liability is unavailing.

19   7.    Bae asserts a claim for abuse of process against all

20         Leasing Defendants except Healy and MBF Merchant Capital.

21         This claim is dismissed without leave to amend.

22         Plaintiffs do not suggest that his claim is based on

23         process other than the summons associated with the March

24         2010 lawsuit filed against him.

25   8.    All Plaintiffs except Campbell assert claims for

26         conversion against all Defendants except Healy and MBF

27         Merchant Capital.  The conversion claims against the

28         Merchant Services Companies, other than MSI; the

40

**United States District Court**
For the Northern District of California

1                   individual Merchant Services Defendants; Leasing

2                   Defendant Entities, other than MBF Leasing; and Leasing

3                   Defendant Control Persons are dismissed without leave to

4                   amend because these Defendants did not allegedly convert

5                   any property owned by Plaintiffs and because these claims

6                   are based on Plaintiffs' rejected alter ego theory of

7                   liability.

8        9.    All Plaintiffs except Campbell bring claims for

9                   violations of the UCL against all Defendants.  The UCL

10                  claims against Golden Eagle Leasing, Lease Finance Group,

11                  Lease Source-LSI, RBL Capital Group, MBF Merchant

12                  Capital, Fitzgerald, Healy, Sussman and the Sussman Law

13                  Firm are dismissed without leave to amend because

14                  Plaintiffs do not allege that these Defendants engaged in

15                  unlawful, unfair or fraudulent conduct.

16 Based on these rulings, all claims against Golden Eagle Leasing,

17 Lease Source-LSI, Lease Finance Group, RBL Capital Group, MBF

18 Merchant Capital, Fitzgerald, Healy, Sussman and the Sussman Law

19 Firm are dismissed without leave to amend.  In all other respects,

20 Defendants' motions are DENIED.

21      As explained above, to the extent that the Court denies leave

22 to amend, it does so because Plaintiffs have failed to state

23 claims, notwithstanding the Court's previous instructions, or

24 because they do not suggest that the claims are not futile.

25 However, if Plaintiffs obtain evidence over the course of discovery

26 supporting any claim dismissed by the Court, they may move for

27 leave to amend their complaint.

28      Merchant Services Defendants, Northern Leasing, MBF Leasing,

Northern Funding, Cohen, Mezei, Krieger and Buono shall answer
within fourteen days of the date of this Order.  Fed. R. Civ. P.
12(a)(4)(A).

        IT IS SO ORDERED.


Dated: 8/29/2011

CLAUDIA WILKEN
United States District Judge