IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUST FILM, INC.; RAINBOW BUSINESS SOLUTIONS, doing business as PRECISION TUNE AUTO CARE; BURLINGAME MOTORS, INC.; DIETZ TOWING, INC.; THE ROSE DRESS, INC.; VOLKER VON GLASENAPP; JERRY SU; VERENA BAUMGARTNER; TERRY JORDAN; LEWIS BAE; and ERIN CAMPBELL, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MERCHANT SERVICES, INC.; NATIONAL PAYMENT PROCESSING; UNIVERSAL MERCHANT SERVICES, LLC; UNIVERSAL CARD, INC.; JASON MOORE; NATHAN JURCZYK; ROBERT PARISI; ERIC MADURA; FIONA WALSHE; ALICYN ROY; MBF LEASING, LLC; NORTHERN FUNDING, LLC; NORTHERN LEASING SYSTEMS, INC.; GOLDEN EAGLE LEASING, LLC; LEASE SOURCE-LSI, LLC; LEASE FINANCE GROUP, LLC; JAY COHEN; LEONARD MEZEI; SARA KRIEGER; BRIAN FITZGERALD; SAM BUONO; MBF MERCHANT CAPITAL, LLC; RBL CAPITAL GROUP, LLC; WILLIAM HEALY; JOSEPH I SUSSMAN; JOSEPH I. SUSSMAN, P.C.; and SKS ASSOCIATES, LLC,<br><br>    Defendants.<br>_____/ | No. C 10-1993 CW<br><br>ORDER DENYING MOTION TO STAY OR TRANSFER, DENYING WITHOUT PREJUDICE MOTION FOR PROTECTIVE ORDER AND CLARIFYING ORDER OF AUGUST 29, 2011 (Docket No. 303) |

    In a single joint motion, Defendant SKS Associates, LLC, moves for a stay pending its appeal of the Court's order denying its motion to compel arbitration with Plaintiff Erin Campbell, Defendant MBF Leasing, LLC moves for a stay or transfer of

Plaintiffs' breach of contract claim against it and Defendant Northern Leasing Systems, Inc. moves for a stay or transfer of Plaintiffs' Fair Credit Reporting Act (FCRA) claim against it. Defendants also seek protective orders limiting the scope of discovery against them. Plaintiffs oppose the motion. The matter has been taken under submission on the papers. Having considered the papers filed by the parties, the Court DENIES Defendants' motion. The Court also clarifies its August 29, 2011 Order.

## BACKGROUND

The facts relevant to this motion are largely set forth in this Court's Orders of June 13, 2011, August 29, 2011 and August 30, 2011. Only the additional facts necessary to resolve the instant motion are provided below.

Prior to the filing of this action, two class action lawsuits were filed in the Supreme Court of the state of New York against certain Defendants in the instant case. In <u>Pludeman v. Northern Leasing Systems, et al.,</u> Index No. 04/101059, filed in 2004 and still ongoing, the plaintiffs are pursuing a breach of contract claim on behalf of a certified class against Northern Leasing, alleging that it improperly charged class members a monthly "loss damage waiver" fee that was not disclosed on the first page of their lease. Second Amended Complaint ¶ 323. In <u>Aldrich v. Northern Leasing Systems, Inc.</u>, Index No. 07/602803, filed in 2007, the plaintiffs are pursuing claims under the Fair Credit Reporting Act (FCRA) and the New York state law equivalent against

2

Northern Leasing for accessing their credit reports without permission. Simplicio Decl. ¶ 14, Ex. I ¶¶ 63(a)(i)-(ii).

On August 30, 2011, this Court denied without prejudice SKS's first motion to stay proceedings pending its appeal of the order denying its motion to compel arbitration and granting Plaintiffs' motion for a preliminary injunction against it. In that order, the Court granted SKS leave to renew its motion if it could establish that discovery has become unduly burdensome. The Court stated that the renewed motion to stay should be accompanied by some evidence that the monies SKS seeks to collect from Plaintiff Campbell are for taxes actually owed and paid during her lease term.

DISCUSSION

I.  SKS's Motion to Stay Pending Appeal

"A stay is not a matter of right, even if irreparable injury might otherwise result." Nken v. Holder, 129 S. Ct. 1749, 1760 (2009) (citation and internal quotation marks omitted). Instead, it is "an exercise of judicial discretion," and "the propriety of its issue is dependent upon the circumstances of the particular case." Id. (citation and internal quotation and alteration marks omitted). The party seeking a stay bears the burden of justifying the exercise of that discretion. Id.

"A party seeking a stay must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in

3

his favor, and that a stay is in the public interest." Humane Soc. of U.S. v. Gutierrez, 558 F.3d 896, 896 (9th Cir. 2009); see also Perry v. Schwarzenegger, 702 F. Supp. 2d 1132, 1135 (N.D. Cal. 2010). The first two factors of this standard "are the most critical." Nken, 129 S. Ct. at 1761. Once these factors are satisfied, courts then assess "the harm to the opposing party" and weigh the public interest. Id. at 1762.

With the renewed motion, SKS submits what it purports is evidence that it seeks to collect from Campbell taxes actually owed and paid during her lease term. However, as Plaintiffs point out, this evidence is not credible for a variety of reasons. SKS submits the declaration of Dinesh Kulangroth, Vice President of Northern Leasing, from whom SKS "purchased the right to reimbursement for certain taxes and fees," accompanied by documents that Mr. Kulangroth states are evidence that Northern Leasing made payments on behalf of Campbell for the periods July 1, 2006 through June 30, 2007 and July 1, 2007 through June 30, 2008. Kulangroth Decl. ¶¶ 2-5. Mr. Kulangroth also attests that it is his "understanding that taxes were paid by the lessor on behalf of [Campbell] in prior years as well," but does not indicate that this statement is based on his personal knowledge. Id. at ¶ 4.

Campbell's lease was terminated in June 2007 and thus any payments between July 1, 2007 through June 30, 2008 were not within her lease period.

4

The documents related to the time period from July 1, 2006 through June 30, 2007 also lack foundation or otherwise lack credibility. Mr. Kulangroth provides a property tax bill from the County of Santa Clara for this time period assessing taxes in the amount of $490.31, a "corresponding" check made payable to the Santa Clara Tax Collector dated February 28, 2007 in the amount of $45,746.46, and a "backup spreadsheet" that Mr. Kulangroth states shows that the tax bill and payment included monies paid on behalf of Campbell. Kulangroth Decl. ¶ 2, Exs. A, B, C.

The property tax bill shows taxes assessed upon "GCN Holdings LLC" for the time period July 1, 2006 through June 30, 2007. Kulangroth Decl. ¶ 2, Ex. A. Neither SKS nor Mr. Kulangroth explains who GCN Holdings is or how an assessment upon GCN Holdings could be related to Campbell's lease with Northern Leasing. Mr. Kulangroth does not describe his relationship with GCN Holdings and does not provide any basis for finding that he is able to authenticate the document.

The check made payable to the Santa Clara Tax Collector was issued by "PFSC / Northern Leasing Systems," not GCN Holdings, and it is for an amount that is dramatically different than the amount on the property tax bill. Kulangroth Decl. ¶ 2, Exs. A, B. It is thus not clear that this check is related to the tax bill.

The spreadsheet also lacks foundation and is otherwise unreliable. Mr. Kulangroth does not authenticate the document or describe his knowledge of it. It is not clear if this document is

5

from the records of Northern Leasing, GCN Holdings, SKS or some other entity, or when it was created. There are also a number of indications that this document is not credible. Several columns of the spreadsheet are missing data in all rows except two that purportedly relate to "Sunclare/Silicon Valley Pet C." Kulangroth Decl. ¶ 2, Ex. C. However, the lease number in these two rows differs from the lease number on Campbell's lease and from the lease number on the letter that SKS sent to Campbell. Compare Kulangroth Decl. ¶ 2, Ex. 3 (spreadsheet with lease number 001-0484101-00) with Krieger Decl. in Support of Mot. to Compel Arbitration, Ex. 1, at 3 (Campbell's lease with lease number 673597), and Campbell Decl. in Support of Mot. for Prelim. Inj., Ex. A, at 1 (SKS letter to Campbell referencing lease number 0722579A). It is also not clear how this spreadsheet relates to the check and the tax bill. There is nothing that correlates the spreadsheet t the check paid to the Santa Clara Tax Assessor, and the tax rate in the spreadsheet differs from that on the tax bill. Kulangroth Decl. ¶ 2, Exs. 1-3.

    Further, even if this evidence were credible, the spreadsheet would establish that the actual taxes paid on behalf of Campbell totaled $2.35 for 2006 through 2007 and that no fees were assessed for this time period, while SKS seeks to collect $85.50 from Campbell. Thus, the spreadsheet does not establish that the amount that SKS seeks to collect is for taxes actually owed and paid.

6

SKS responds to the lack of foundation and the various inconsistencies in these documents by arguing that these arguments "challenge the weight of the evidence," which can only properly be decided by "the arbitrator." Reply, at 1-2. SKS misunderstands the Court's reason for suggesting that it present evidence of the merits of its position, which was to assess its likelihood of success. SKS fails to bolster its showing.

The Court notes that SKS could have, but did not, seek a stay from the Ninth Circuit. Accordingly, SKS's motion to stay is DENIED.

## II. MBF and Northern Leasing's Motion to Stay or Transfer of Claims

MBF and Northern Leasing move to stay the claims against them to be stayed or to transfer them to the Supreme Court of the State of New York based upon the first-to-file rule, arguing that the earlier filed New York state actions should take priority over this later filed federal action involving some overlapping issues.

While this Court may transfer a case to another federal district court under certain circumstances pursuant to 28 U.S.C. §§ 1404 and 1406, MBF and Northern Leasing cite no authority that would give this Court authority to transfer the instant case to a state court, including the Supreme Court of the State of New York. Accordingly, MBF and Northern Leasing's motion to transfer is DENIED.

7

The first-to-file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-5 (9th Cir. 1982). This doctrine "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993). Because "the first to file priority presumption has evolved from and is applied in cases involving intra-federal conflicts between federal district courts of concurrent jurisdiction" in order to promote efficiency and to avoid duplicative litigation, it "is not necessarily the guidepost for the setting here, where parallel litigation is pending in federal and state courts." Newmont USA Ltd. v. Am. Home Assur. Co., 2009 U.S. Dist. LEXIS 52365, at *13 (E.D. Wash. June 21, 2009) (citing Colorado River Water Conservation Dist. No. 7 v. United States, 424 U.S. 800, 817 (1976)). Indeed, each case that MBF and Northern Leasing cite in favor of the application of the first-to-file doctrine involves simultaneous actions in federal district courts.

"The Supreme Court has in fact repeatedly held that the pendency of an action in a state court is no bar to proceedings concerning the same matter in the federal court having

8

jurisdiction." Id. at *13-14 (citing Exxon Mobil v. Saudi Basic Industries Corp., 544 U.S. 280, 293 (2005); McClellan v. Carland, 217 U.S. 268, 282 (1910)). The general rule regarding concurrent, duplicative litigation in state and federal court is that "[e]ach court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court," and that "whichever court rules first will, via the doctrines of res judicata and collateral estoppel, preclude the other from deciding that claim or issue." AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1151-1152 (9th Cir. 2007) (citation and internal quotation and alteration marks omitted). This Court, and surely the New York Supreme Court, will guard against double recovery for Plaintiffs.

Accordingly, MBF and Northern Leasing have not established that the first-to-file rule requires that this action be stayed and their motion to stay the claims against them is DENIED.

III. Motion for a Protective Order

Defendants SKS, MBF and Northern Leasing each request a protective order limiting the scope of Plaintiffs' discovery against them.

The Court DENIES without prejudice Defendants' motion for a protective order. If Defendants renew their motion, it must be accompanied by a certification that they have conferred or attempted to confer with Plaintiffs again in a good faith effort to resolve the dispute without court action and must comply with

9

Magistrate Judge Laporte's Order Regarding Discovery Procedures, Docket No. 313, in this case. Any renewed motion for a protective order shall be referred to Magistrate Judge Laporte in accordance with Docket No. 312.

The parties may use reciprocally the discovery obtained in this case, in the cases pending in the Supreme Court of the State of New York and in arbitration to the extent possible to avoid duplicative discovery, and shall prioritize discovery that is more relevant in light of the pending appeal and New York cases. Any discovery disputes will be referred to Magistrate Judge Laporte, after the parties have met and conferred.

IV. August 29, 2011 Order

In their opposition, Plaintiffs note that this Court's August 29, 2011 Order was less than clear regarding whether the Court had dismissed their claim against Northern Leasing alleging a violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq. See Opp. at 2 n.1. In that Order, the Court found that Plaintiffs Volker Von Glasenapp and Lewis Bae stated an FCRA claim against several Defendants, including Northern Leasing. Docket No. 292, at 32. Later in the Order, the Court stated that "because Plaintiffs do not state claims [for violations of federal and state law] against Northern Leasing [and certain other Defendants], their UCL claims against these Defendants are dismissed." Id. at 35. However, in the Court's summary of its rulings, it omitted Northern Leasing from the list

10

of Defendants against whom the UCL claims were dismissed. See id. at 41.

Because the Court found that Plaintiffs Von Glasenapp and Bae did sufficiently allege a claim against Northern Leasing for a violation of the FCRA, they also sufficiently stated a UCL claim against Northern Leasing. The Court's August 29, 2011 Order did not dismiss these Plaintiffs' UCL claim against Northern Leasing.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to stay or transfer and DENIES without prejudice their motion for a protective order (Docket No. 303).

IT IS SO ORDERED.

Dated: 1/3/2012

CLAUDIA WILKEN
United States District Judge

11