ROD O. DIVELBISS (SBN 102345)
RDIVELBISS@JRALP.COM
JRA LAW PARTNERS, LLP (formerly Collette Erickson Farmer & O'Neill LLP)
235 PINE STREET, SUITE 1300
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 788-4646
FACSIMILE: (415) 788-6929

SCOTT E. SILBERFEIN (*Pro Hac Vice*)
JENNIFER NIGRO (*Pro Hac Vice*)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Telephone:    (212) 554-7800
Facsimile:    (212) 554-7700

Attorneys for Defendants Northern Leasing Systems, Inc., MBF Leasing, LLC, Northern Funding, LLC, SKS Associates, LLC, Jay Cohen, Sara Krieger, Leonard Mezei and Sam Buono

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JUST FILM, INC.; ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCHANT SERVICES, INC.; ET AL.,<br><br>Defendants. | CASE NO. CV 10-01993 CW<br><br>DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION PLAINTIFFS' MOTION FOR CLASS CERTIFICATION |

Case No. C 10-1993 CW

I, JENNIFER NIGRO, declare:

1. I am an attorney with the law firm of Moses & Singer LLP, attorneys for defendants Northern Leasing Systems, Inc., MBF Leasing, LLC, Northern Funding, LLC, SKS Associates, LLC, Jay Cohen, Sara Krieger, Leonard Mezei and Sam Buono (collectively, "Leasing Defendants") in the referenced action. I submit this declaration in support of Leasing Defendants' opposition(s) to Plaintiffs' motion for class certification ("Plaintiffs' Motion").

2. I am an active member in good standing of the courts of the State of New York and the State of New Jersey, 2002; United States District Court for the Southern and Eastern Districts of New York, 2002, the Northern and Western Districts of New York, 2004; United States District Court for the District of Connecticut (*pro hac vice*), 2008. My application to appear *pro hac vice* in this matter was granted by the Court by Order dated June 22, 2010.

**Leasing Defendants Submissions On This Motion**

3. In opposition to Plaintiffs' Motion, Leasing Defendants are submitting declarations by individuals having personal knowledge of the facts. Leasing Defendants believe that the declarations will highlight the need for individualized inquiries in this case.

4. As counsel, I have personal knowledge of the proceedings that have taken place in this case. The primary purpose of this declaration is to put before the Court: the deposition testimony of the plaintiffs and other witnesses who have been deposed in this case; certain exhibits that were marked at those depositions; court decisions, including unreported decisions, in cases involving the Leasing Defendants or their affiliates. The discussion below shows how various putative class members have different levels of sophistication, and how the lease origination process was different for each lease transaction.

5. The Declaration of Lina Kravic, Northern's Director of Operations, discusses the many different types of leases executed by members of the putative class, some of the material differences in those leases, and the procedures that are followed by Leasing Defendants in originating leases. Ms. Kravic's declaration also discusses facts relating to the particular lease

Case No. C 10-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

provisions addressed in Plaintiffs' Motion, such as the property tax provision, and the property tax administrative fee provision.

6. The Declaration of Joseph I. Sussman, Esq., of the law firm of Joseph I. Sussman, PC, whose firm does collections work for Northern and its affiliated companies, discusses judgments and mutual releases obtained by Leasing Defendants against lessees or personal guarantors of leases during the time period of April 1, 2006 and December 31, 2012.

7. The Declaration of Dinesh V. Kulangroth, Northern's Vice President of Finance, discusses the collection of personal property taxes imposed on the subject equipment by various taxing jurisdictions, and the administrative fee collected by Northern in connection with assessing and paying personal property taxes.

8. The Declaration of Paul Bent, an expert in the field of equipment leasing, discusses why there is nothing improper or unlawful about the practice of charging an amount that exceeds Leasing Defendants Suggested Lease Caps, and why individual lessees may have different logical reasons for entering into an equipment lease that will result in them paying more than they otherwise would if they obtained equipment through other alternatives. Mr. Bent's declaration also discusses the process of paying for property taxes on leased equipment, and why the use of Leasing Defendants acquisition cost in its property tax filings was in accordance with the custom and practices of the equipment leasing industry.

### The Individual Plaintiffs

9. I, along with counsel for Merchant Services Defendants, deposed each of the named plaintiffs in this case. From their depositions, I can attest that in addition to serious credibility issues, there is a wide disparity among their claims, particularly with respect to their interactions with Merchant Services' sales representatives.

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**VonGlasenapp/Just Film**

10. On January 16-17, 2012, I, along with counsel for Merchant Services Defendants, deposed plaintiff Volker VonGlasenapp ("VonGlasenapp") and his business, Just Film Inc.[1] Excerpts from the transcript of that deposition, and exhibits referenced therein, are attached hereto as <u>Exhibit 1</u>.

11. According to VonGlasenapp, his business, Just Film, Inc., had been processing credit card transactions since the late 80's. Ex. 1, pp. 34:22-35:4. Just Film was processing credit card transactions through another vendor when VonGlasenapp was approached by defendant Fiona Walshe in 2007. *Id.*, pp. 35:5-36:25.

12. Just Film had previously leased credit card processing equipment 'in the past' for approximately '$30 per month.' *Id.*, p. 46:12- 47:23.[2] VonGlasenapp claims that Walshe showed him a one-page equipment lease, which he signed. *Id.*, pp. 47:24-48:18. VonGlasenapp thought he had agreed to lease credit card processing equipment for the amount of $49.99 per month to lease the equipment. *Id.* The actual document that he signed is four pages long. Ex. 2.

13. In the Third Amended Complaint ("TAC") (dkt. # 427), VonGlasenapp claims that after he signed up to lease equipment for $49.99 per month, defendant Walshe added a "1" to that amount and he was charged more than he agreed to pay for the equipment. TAC, ¶ 455; see also Ex. 1, p. 444:16-19.

14. Notwithstanding the allegations set forth in the TAC, according to bank statements produced by Just Film and marked during VonGlasenapp's deposition, lease payments, including applicable taxes and fees, to MBF were automatically deducted from Just Film's bank account on

---

[1] At the time of VonGlasenapp's deposition, Just Film, Inc., was in the process of being dissolved. Ex. 1, p. 15:17-21. According to his deposition testimony, VonGlasenapp sold the assets of his business in or about March 2010. *Id.*, p. 24:5-25:15. VonGlasenapp filed for bankruptcy in August 2010. *Id.*, p. 125:16-126:13.

[2] According to the allegations set forth in Plaintiffs' Third Amended Class Action Complaint ("TAC") (dkt. # 427), VonGlasenapp previously leased credit card processing equipment for $39.99 per month. TAC, ¶ 452.

3          Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

| | |
|---|---|
| 1 | a monthly basis from July, 2007 through September, 2008. VonGlasenapp testified that he placed |
| 2 | check marks along side the entries "MBF LEASING LEASE PMT" on each of the bank |
| 3 | statements as he received them, and "booked them as lease payments" in connection with the lease |
| 4 | that he signed when he met with Ms. Walshe. Ex. 1. pp. 353:18-365:6. At no time during that |
| 5 | period did VonGlasenapp contact MBF to inquire what the payments were for, because he knew |
| 6 | what they were for. *Id.*, p. 364:20-365:6. In total, Just Film made 15 consecutive monthly |
| 7 | payments on the lease without complaint. *Id.*; see also Kravic Decl., Ex. 37. |

15. The section entitled "SCHEDULE OF PAYMENTS – PAYABLE AT SIGNING OF THE LEASE on the first page of the equipment finance lease identified by plaintiff VonGlasenapp at his deposition, includes the language: "plus applicable taxes". *See* VonGlasenapp Exhibits 82 and 95, copies of which are attached hereto as <u>Exhibit 2</u>, at p. 1.

16. Directly below that section, in the section entitled ABOUT YOUR BANK, under which VonGlasenapp's initials appear, the following language appears:

> Lessee hereby authorizes MBF Leasing LLC or its designee successor or assign (hereinafter "Lessor") to withdraw any amounts including any and all sales and property taxes now due or hereinafter imposed owed by Lessee under this Equipment Finance Lease ("Lease")..."

Ex. 2, p. 1. When asked whether, at the time of initialing this provision, VonGlasenapp knew what was being referred to in terms of property taxes, he answered in the affirmative:

> Q. What did you believe property taxes meant at the time when you initialed this page?
> A. That the local taxing authorities want equipment/personal property taxed. Q. And how did you know that?
> A. Because I have been paying attention. Q. Had you paid personal property tax on equipment prior to this?
> A. Of course
> Q. Okay. On leased equipment?
> A. Sometimes, depending on the lease.
> Q. On business equipment?

4   Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

|   | A. On business equipment. |
|---|---|
| 1 | Q. Such as what kind of equipment? |
| 2 | A. We had some processing machines, for example. |
| 3 | Q. Okay. And were you obligated to pay personal taxes on that -- personal property taxes on that? |
| 4 | MR. SWEET Objection Lacks foundation |
| 5 | A. I was obligated to declare the equipment that I have in my business. |
| 6 | Q. Okay |
| 7 | A. I give it a value and a purchase date and that the assessor would then determine what the tax on that item would be. |
| 8 | Q. And the assessor, was that a state assessor? |
| 9 | A. That tends to be a county issue. |
| 10 | Q. Right. Which county would that be? |
| 11 | A. In this case it's San Francisco. |
| 12 | Q. San Francisco. So you had paid on behalf of your business personal property taxes before on equipment? |
| 13 | A. Yes. |

    A. On business equipment.

    Q. Such as what kind of equipment?

    A. We had some processing machines, for example.

    Q. Okay. And were you obligated to pay personal taxes on that -- personal property taxes on that?

    MR. SWEET Objection Lacks foundation

    A. I was obligated to declare the equipment that I have in my business.

    Q. Okay

    A. I give it a value and a purchase date and that the assessor would then determine what the tax on that item would be.

    Q. And the assessor, was that a state assessor?

    A. That tends to be a county issue.

    Q. Right. Which county would that be?

    A. In this case it's San Francisco.

    Q. San Francisco. So you had paid on behalf of your business personal property taxes before on equipment?

    A. Yes.

    Q. Okay. But at the time when you initialed this first page you didn't inquire about obligations to pay property taxes under this lease?

    MS SIMPLICIO Objection. Misstates the testimony. Asked and answered.

    A. I did not inquire about it, no.

Ex. 1, pp. 242:5 -243:19.

    17.    At paragraph 6 of VonGlasenapp's equipment finance lease, the section entitled NET LEASE TAXES contains the following language:

> Lessee intends the monthly lease payments hereunder to be net to Lessor, and Lessee shall pay all sales, use, excise, personal property, stamp, documentary, ad valorem, gross receipt, occupation and other taxes, license and registration fees, assessments, fines, penalties and other charges imposed on the ownership, possession or use of the Equipment during the term of this Lease. **Lessor will add such taxes, fees and other charges to the monthly payments hereunder including handling and administration costs. To the**

5     Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

> extent that such taxes, fees and other charges are not imposed in
> equal monthly payments, Lessor may estimate the amount
> thereof and include a proportional amount with each monthly
> payment hereunder. Lessee agrees to pay such monthly amount
> as additional monthly rent during the term of this lease and any
> extension thereof. Upon Lessors' request, Lessee shall file all
> necessary returns and reports relating to such taxes, fees and
> charges. Lessee's obligations under this paragraph 6 shall survive
> the termination of this Lease. Ex. 2, pp. 2-3. (Emphasis added).

18. In accordance with the terms of the equipment finance lease executed by VonGlasenapp, additional payments for personal property taxes and associated fees, including a $25 processing fee, were made by Just Film in January 2008 (in the amount of $56.01), and September 2008 (in the amount of $54.84), without objection. Kravic Decl., Exs. 37 and 38.

19. Just Film stopped payments under the lease in October 2008. Kravic Decl., Ex. 37.

20. In April 2009, a payment of $400 was made by VonGlasenapp via credit card, as partial settlement of the overdue balance on the lease. Kravic Decl., Exs. 37 and 38.

21. Neither Just Film nor VonGlasenapp ever complained to Leasing Defendants about defendant Walshe and the alleged alteration of the base lease payment, as alleged in the TAC. Kravic Decl., Ex. 38.

**Jerry Su/Rainbow Business Solutions, Inc. (Precision Tune Auto Care)**

22. On January 9-10, 2012, I, along with counsel for Merchant Services Defendants, deposed plaintiff Jerry Su ("Su") and his business, Rainbow Business Solutions, Inc. (Precision Tune Auto Care). Excerpts from the transcript of that deposition, and exhibits referenced therein, are attached hereto as Exhibit 3 (vol. I) and Exhibit 4 (vol. II).[3]

23. Su holds a Masters Degree in Electrical Engineering, and a PhD in Electrical Engineering/Communications. Ex. 3, pp. 18:24-19:24. In addition to Rainbow Business

---

[3] Rainbow Business Solutions, Inc., is a corporate entity – "a holding company" created by plaintiff Su for "liability" purposes. Rainbow Business Solutions, Inc. owns Precision Tune Auto Care, which is a franchise. See Ex. 3, p. 26:16-27:11.

6     Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  Solutions, Inc., Su has other business ventures, including a holding company in the Cayman
2  Islands which received venture capital funding. *Id.*, pp. 30:7-32:15.

3  24.  At the time when he met with the vendor from Merchant Services, Derrick Yu, Su
4  was already leasing credit card processing equipment through defendant MBF Leasing. *Id.*, pp.
5  34:7-35:14; *Id.*, pp. 129:10-141:23 (referring to Su Exhibits 30-32, copies of which are attached to
6  Ex. 3).[4] Su was processing credit card transactions through another processor, Pegasus. *Id.*, p.
7  59:22-24. Mr. Su had not a single complaint about his then-existing MBF lease. Kravic Decl.,
8  Exs. 39 and 40.

9  25.  Su testified that he met with Derrick Yu, a customer of Precision Tune Auto Care,
10 on several occasions and had "a bunch" of conversations with him concerning switching his
11 processing program to Merchant Services. Ex. 3, pp. 59:18-63:25; 73:15-22.

12 26.  According to Su, he wanted to reciprocate the business that Derrick Yu gave to
13 Su's shop and he trusted Yu because he spoke the same language and "he wanted to save me
14 money." *Id.*, p. 65:-17.

15 27.  Su testified repeatedly during his deposition that he signed multiple documents
16 given to him by Derrick Yu without reading them, and signed documents that were blank. *Id.* pp.
17 77:3-80:24; 114:22-121:2; 134:4-15; 146:2-150:11.

18 28.  The sole basis of Rainbow Business Solutions' and Mr. Su's complaint with respect
19 to the new equipment finance lease that he executed in April 2008 (without reading – as he
20 testified repeatedly at his deposition) was that it reflected the incorrect number of machines. This
21 is repeated in several letters and/or summaries created by Su and identified by him at his

---

[4]  In addition to that lease, there is a record of another equipment finance lease executed by Su on behalf of his business, Rainbow Business Solutions, Inc., with Lease Finance Group, LLC, dated May 2007 (referring to Su Exhibit 34, a copy of which is attached to Ex. 3). At his deposition, Su could not answer when or why he executed the lease with LFG. Ex. 4, pp. 148:14-150:16. Su ultimately identified the April 2008 MBF lease (Su Exhibit 6, a copy of which is attached hereto as <u>Exhibit 5</u>) as the lease on which his claims in this case are based. Ex. 3, pp. 201-202; *see also* Ex. 5.

7   Case No. 10-0-1993 CW
DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

deposition. *Id.*, pp. 170:10-173:17 (referring to Su Exhibits 7 and 29, copies of which are attached to Ex. 3). At his deposition, he did not claim that he was misled about the base lease amount that he was paying under the lease.

29. In the Third Amended Complaint however, Su alleges that he signed a lease containing blanks, which were subsequently filled in by the Merchants Services Defendants without his approval. TAC, ¶510. He claims to be a representative of the Excessive Lease Amount Subclass, among others.

30. Rainbow Business Solutions made 23 consecutive monthly payments on the lease, including *after* this action was commenced in March 2010. Ex. 41. Rainbow Business Solutions still processes its credit card transactions through Merchant Services. Ex. 3, p. 218:6-19.

31. Paragraph 22 of Su's equipment finance lease contains the provision entitled: "Ability To Opt Out" (Ex. 5). Upon reading it at his deposition, Su testified that he understood that provision to mean that he had seven days from the time executing the lease to cancel out of it; but that he did not read that language at the time of the lease or anytime thereafter. Ex. 4, pp. 47:4-49:1. Similarly, Su could not recall reviewing the Net Lease Taxes provision of his equipment finance lease at the time of signing it; but at deposition, after reading that provision (paragraph 11 of the lease), he testified that he knew what it meant. *Id.* pp. 51-52.

32. Su has at least 3 sets of equipment in his shop. He currently uses the equipment he used in connection with his original MBF lease *Id.* pp. 77-85.

33. Su never filed a police report alleging fraud or forgery with respect to the equipment finance lease he executed in April 2008; he never sent any written complaint to MBF – he testified that he believed the error on the lease – specifically the multiple pieces of equipment – was due to the Merchant Services Defendants – specifically, Mr. Yu. *Id.* pp. 239-241; see also Ex. 42.

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**Verena Baumgartner/Burlingame Motors**

34. On January 11, 2012, I, along with counsel for Merchant Services Defendants, deposed plaintiff Verena Baumgartner ("Baumgartner"), d/b/a Burlingame Motors ("Burlingame"). Excerpts from the transcript of that deposition, and exhibits referenced therein, are attached hereto as Exhibit 6.

35. Baumgartner has been running her business, a Mercedes Benz repair shop, for over 13 years. Ex. 6, pp. 23:25-24:12. Burlingame is a family-owned business. *Id.*, pp. 24:24-25:5. Baumgartner's son-in-law manages the shop. *Id.*, pp.27:14-28:1.

36. In her complaint, Baumgartner alleges that her signature on the equipment finance lease for Burlingame Motors was forged. TAC, ¶539. A copy of the lease that she claims was forged is annexed hereto as Exhibit 7.

37. At her deposition, Baumgartner also claimed that her signature on the lease was forged, although she also made several statements that were inconsistent with that testimony. Baumgartner testified that when she met with "Penny", a representative from Merchant Services (Ex. 6, p. 56:24-57:13), Baumgartner declined to lease equipment. Ex. 6, pp. 74:8-18. Burlingame testified that the business was already leasing equipment with First Data Global Leasing, and processing credit card transactions through Heartland. Approximately one week after her meeting with Penny, equipment was delivered to Burlingame; Baumgartner testified that she was not present when the equipment was delivered and installed, and that her son-in-law, Renee, signed for it. *Id.*, pp.64:6-65:17; 254-255; 92-94. Notwithstanding her claim that she didn't sign a lease, Baumgartner testified that she knew equipment would be delivered – "They told me somebody will come and install the machine." *Id.*, p. 255. She also testified that when she met with Penny, Baumgartner "knew at the time [I] had to pay something for the equipment." *Id.*, p. 252. Baumgartner also testified that she knew there would be a monthly withdrawal for the equipment, but that with taxes and insurance it was more than the $129 discussed with Penny – it was $140 with the taxes and insurance. *Id.*, pp. 195:10-198:1.

9    Case No. 10-0-1993 CW
DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

38. Baumgartner testified that the equipment was used at Burlingame for approximately 2 months (*Id.*, p. 255:15-18) and that Burlingame still has the equipment in its possession. *Id.*, p. 257:21-25.

39. When shown copies of business bank statements produced by Burlingame for the periods May 2007 through October 2007, Baumgartner confirmed that she understood, at the time when she received and reviewed the bank statements, that the automatic deductions made by MBF for "lease pmt" were for the equipment. *Id.*, pp. 276:3-277:18. Baumgartner closed that account in August 2007 in order to stop those payments. *Id.*, 277:21-278:2.

40. Burlingame made payments under the lease for five months, during which time Baumgartner, despite claiming that she had no lease with MBF, requested that her insurer, Zurich, add MBF as an additional loss payee on Burlingame's insurance policy in order to comply with Burlingame's obligations under the lease to maintain insurance on the equipment and to have the monthly $4.95 liability and destruction waiver fee waived. *Id.*, pp. 261:7-269:25.

41. Neither Baumgartner nor her business has been sued by Leasing Defendants for defaulting under the lease. *See* Kravic Decl., Ex. 43.

**Dietz Towing, Inc./Terry Jordan**

42. On January 18-19, 2012, I along with counsel for Merchant Services Defendants, deposed plaintiff Terry Jordan and her business, Dietz Towing, Inc. Excerpts from the transcript of that deposition, and exhibits referenced therein, are attached hereto as <u>Exhibit 8</u>.

43. Plaintiff Jordan has worked for Dietz Towing, Inc., a family-owned business, of which she is currently CEO, for over 28 years. Ex. 8, pp. 19:16-20:20. Plaintiff Jordan owns a 1% interest in the company, her sister owns 1%, and Jordan's mother owns 98%. *Id.*, pp. 30:17-32:14.

44. Plaintiff Jordan testified that when she met with the Merchant Services representative, defendant Alicyn Roy, she believed that it was related to a recent inquiry she had

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

made to Chase Paymentech – the processing company that Dietz Towing was using prior to Merchant Services – regarding a reduction in processing rates. *Id.*, pp. 43:2-9; 81:11-17.

45. Jordan testified that she knew the lease and the processing where two separate things; that she was not happy with the lease, but she decided to stick with it and the processing because she felt 'stuck'. She could not articulate whether she or Dietz Towing actually saved money through the new processing arrangement in comparison to her former with Chase Paymentech. *Id.*, pp. 126:2-131:25.

46. Jordan testified that she went over documents when she and her mother met with Ms. Roy, including the lease agreement. *Id.*, p.73:14-24. Jordan confirmed that she signed the lease agreement. *Id.*, p. 75:2-11, 25.

47. According to Jordan's testimony, Ms. Roy only went over the first page of the lease with her. *Id.*, p. 79:12-25 (referring to Jordan Exhibits 111 and 137[5], copies of which are attached hereto as <u>Exhibit 9</u>), and that she (Jordan) signed the document in two places, including the personal guaranty section. Ex. 8, p. 292:19-293:18. At that time, according to Jordan, the equipment information, schedule of payments and payable at signing of the lease sections were not filled in. *Id.*, pp. 79:12-81:5; 301:11-306. According to Jordan, Ms. Roy told her that the lease would be 'minimal, cheap'. *Id.*, p. 81:18-25. Plaintiff Jordan further testified that she knew her signatures on the lease were binding. *Id.*, p. 83:6-9.

48. During the term of the lease, Jordan routinely caused Dietz Towing's insurer to provide certificates of insurance listing MBF as additional insured in order to comply with the insurance requirements under the lease, and to have the monthly $4.95 LDW fee waived. *Id.*, pp. 312:19-315:15; 334:4-336:5; 336:14-338-13, (referring to Jordan Exhibits 139, 142, 143, copies of which are attached to Ex. 8).

---

[5] The original lease was produced at deposition; a copy of it was marked as Exhibit 137.

49. During the term of the lease, Dietz Towing also received letters from MBF alerting it to deductions for personal property taxes on the equipment, and those deductions were made from Dietz Towing's bank accounts without objection. Ex. 8, pp. 337- 340 (referencing Jordan Exhibits 144-146, copies of which are attached to Ex. 8).

50. Dietz Towing made 31 consecutive monthly payments on the lease from November 2007 through May 2010. Ex. 8, pp. 306:8-17; *see also* Kravic Decl., Ex. 44.

51. In June, 2010, Jordan sent a letter to MBF requesting that Dietz Towing be invoiced for lease payments, as opposed to having them automatically deducted from the business's bank account. Thereafter, Dietz Towing made one more payment on the lease. Ex. 8, pp. 326:16- 327:24 (referring to Jordan Exhibit 141, a copy of which is attached to Ex. 8). That was the last payment made by Dietz Towing under the lease. Kravic Decl., Ex. 44.

**The Rose Dress/Lewis Bae**

52. On May 14-15, 2012, I along with counsel for Merchant Services Defendants, deposed plaintiff Lewis Bae and his business, The Rose Dress, Inc. Excerpts from the transcript of that deposition, and exhibits referenced therein, are attached hereto as Exhibit 10.

53. The Rose Dress, Inc. was started by Bae in or about 2001 at the Great Mall in Milpitas, CA. The company no longer has a storefront. Since 2005 or 2006, it is primarily an online business based out of a warehouse. Ex. 10, pp. 20-21; 25-27; 35-36. Plaintiff Bae owns 100% of the company, which is an S corporation. He is the sole officer. *Id.*, pp. 29:12-31:5.

54. At the time when plaintiff Bae met with a Merchant Services sales representative, whose name Bae could not recall, the Rose Dress, Inc. was processing credit card transactions through Chase Paymentech. *Id.*, pp. 55:21-58:24. Bae met with the representative for approximately one hour. *Id.*, p. 230:21-25.

55. Bae testified that he provided the representative with bank account information – routing numbers and account numbers – so that the representative could set him up with new processing services. *Id.*, pp. 62:9-64:2.

12    Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

56. Bae testified: "I have accepted credit cards, you know, for many years... it's a standard procedure. In order to give this a -- cost saving I try, that information was necessary. And that's the standard for the industry." *Id.*, p. 64:4-14. Bae had been through this process twice before. *Id.*

57. Bae testified that he signed and/or initialed forms without reading them when he met with a representative from a credit card processing company; but he could not recall whether the representative showed him a lease or not; he recalls signing or initialing a document that was maybe two pages – but could not identify if it was two separate pages or in booklet form. *Id.*, pp.64:15-67:12; 77:9-25. Bae testified that he remembered signing "something similar" to the lease (referring to Bae Exhibit 204, a copy of which is attached as <u>Exhibit 11</u>) when he met with the representative in May 2005. Ex. 10. pp. 68:21-70:24. The representative took the document with him, and Bae could not recall if he made a copy. Bae was not given the opportunity to read the documents. *Id.*, pp. 188:1-189:10.

58. Bae testified that the signatures in Lease Acceptance and Personal Guaranty sections of the lease (Ex. 11) are "different from my signature" but it is possible it is his signature. *Id.*, pp. 78:22-79:2.

59. Bae confirmed that equipment was delivered to his place of business, but he could not recall if it was sent in the mail or if a person came to set it up. The equipment was installed and used for approximately 2 months. When Bae received a copy of the lease – he returned the equipment; he could not recall to whom he returned the equipment or where he got the address to which he returned it. Ex. 10, pp. 93:1-95:22; *see also* Bae Exhibit 211 (a copy of which is attached to Ex. 10). Bae confirmed his signature on the Delivery & Acceptance Receipt, but does not recall if he signed for the equipment, but knew the date to be accurate. Ex. 10, pp. 137:17-140:6.

60. Bae closed the Rose Dress's business bank account after approximately 2-3 months of withdrawals by MBF under the lease, while Bae was "trying to remedy the situation or fix the

13      Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

situation." *Id.*, pp. 98:20-99:6. MBF withdrew approximately three months of payments from the account that Bae closed. *Id.*

61. Bae testified that he was "not sure" if someone forged his initials and/or signature on the lease; when Bae met with the sales representative, he signed and/or initialed forms that the representative filled out in front of him. *Id.*, pp. 105:7-106:20.

62. According to his own account of what transpired, which he documented in a letter dated March 14, 2008 (referring to Bae Exhibit 215, a copy is attached to Ex. 10):"after getting my signature, the rep filled in all other information without explaining anything about the lease term." When questioned about this statement, Bae confirmed that it was true. Ex. 10, p. 203:15-21 (referencing Bae Ex. 215). Bae also stated that he understood that Merchant Services was a processor and MBF was a separate company, and that he would get separate statements from each. Ex. 10, pp. 198:20—201:24.

63. Bae did not know one way or the other if his processing rates went up or down from when he was processing through Paymentech versus Merchant Services. His "main concern was this -- this 48-month term [for the lease]." *Id.*, p. 115:15-21. Bae closed his bank account so that MBF could not make any more charges. *Id.*, p. 115:22-116:6.

**Erin Campbell/SVPC**

64. On May 16, 2012, I, along with counsel for Merchant Services Defendants, deposed plaintiff Erin Campbell ("Campbell"). Excerpts from that deposition, and exhibits referenced therein, are attached hereto as <u>Exhibit 12</u>.

65. Campbell testified that she received a letter from SKS on or about March 10, 2011. Ex. 12, pp. 53:6-54:24.

66. According to her deposition testimony, consistent with the allegations in Plaintiffs' Second Amended Complaint dkt. # 207), Campbell did not sustain any damage to business or property as a result of any action (or inaction) taken by SKS or any of the Leasing Defendants.

14     Case No. 10-0-1993 CW

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1  *Id.*, pp. 76:17-79:22. Campbell testified that SKS never took money from her business bank
2  account and that the letter did not result in any change(s) to her credit report or history to date. *Id.*

3      67.    Campbell's alleged damages, as articulated by her during her deposition, are limited to the "threatening" nature of the letter, and the "time and energy it took off and as a distraction from being able to actually work. And having to pursue the information that has taken… it took a lot of preoccupation and time when that letter came." *Id.*, p. 79:6-12. When asked about the 'time' and 'distraction' she was unable to identify any financial loss(es) sustained as a result of the letter.

## ADDITIONAL EXHIBITS SUBMITTED HEREWITH

    68.    Exhibit 13 is excerpts from the transcript of the July 16, 2012 deposition of Sara Krieger.

    69.    Exhibit 14 is a true and correct copy of the transcript of the November 29, 2012 hearing on plaintiffs' motion for class certification, before the Hon. Katherine B. Forrest, U.S.D.J., Southern District of New York, in the cases of *Simington et al v. Lease Finance Group, LLC, et al* (10 CV 6052 (KBF)) and *Avila* [formerly *Teague*] *et al v. Lease Finance Group, LLC et al* (11 CV 8125 (KBF)) (hereinafter referred to as *Simington*).

    70.    Exhibit 15 is a true and correct copy of the Opinion and Order, dated December 14, 2012, denying plaintiffs motion for class certification in *Simington*.

    71.    Exhibit 16 is the July 13, 2012 Decision and Order of the Supreme Court State of New York, County of New York, whereby the Court decertified the class in the matter of *Pludeman et al. v. Northern Leasing Systems, et al.*, Index no. 101059/04.

    72.    Exhibit 17 is the August 16, 2012 Decision and Order of the Supreme Court State of New York, County of New York, in the matter of *Aldrich et al v. Northern Leasing Systems, Inc., et al*, Index No. 602803/07, whereby the Court denied plaintiffs' motions for class certification and for summary judgment, and granted, in part, defendants' cross-motion for summary judgment.

73. <u>Exhibit 18</u> is excerpts from the transcript of the May 17, 2012 deposition of defendant Fiona Walshe ("Walshe"). Walshe, a former independent sales representative for defendant Merchant Services, testified that not all merchants that sign up for credit card processing also enter into a lease for equipment. Ex. 18, p. 201.

74. <u>Exhibit 19</u> is excerpts from the rough transcript of the January 29, 2013 deposition of Robyn Sands. The final transcript from Ms. Sands' deposition is not yet available, but will be provided to the Court upon receipt from the court reporting service.

75. <u>Exhibit 47</u> is a true and accurate copy of an email dated January 31, 2013 whereby Plaintiffs' counsel, Adam Gutride, confirmed that Lewis Bae is now deceased.

76. <u>Exhibit 48</u> is a true and accurate copy of a letter dated January 31, 2013 from Scott E. Silberfein, Esq., Moses & Singer, LLP to the Hon. Donna Mills, J.S.C., Supreme Court for the State of New York, County of New York, in reference to the action entitled *People of the State of New York v. SKS Associates LLC, et al.*, Index No. 400908/12, notifying the Court of a settlement reached by the parties to that action. Under the settlement referenced in the letter, currently being reduced to a writing by parties, all members of the putative "SKS Post-Lease Expiration Class" identified by Plaintiffs in the instant action will be entitled to restitution for all amounts deducted from their respective bank accounts, either by way of an automatic reimbursement or through a claims process.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED: January 31, 2013

*/s/ Jennifer Nigro*
JENNIFER NIGRO

DECLARATION OF JENNIFER NIGRO IN SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION