ROD O. DIVELBISS (SBN 102345)
RDIVELBISS@JRALP.COM
JRA LAW PARTNERS, LLP
(FORMERLY COLLETTE ERICKSON
FARMER & O'NEILL LLP)
235 PINE STREET, SUITE 1300
SAN FRANCISCO, CA 94104
TELEPHONE: (415) 788-4646
FACSIMILE: (415) 788-6929

ROBERT D. LILLIENSTEIN (Pro Hac Vice)
SCOTT E. SILBERFEIN (Pro Hac Vice)
JENNIFER NIGRO (Pro Hac Vice)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Telephone:    (212) 554-7800
Facsimile:    (212) 554-7700

Attorneys for Defendants Northern Leasing Systems, Inc., MBF Leasing, LLC, Northern Funding, LLC, SKS Associates, LLC, Jay Cohen, Sara Krieger, Leonard Mezei and Sam Buono

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| JUST FILM, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCHANT SERVICES, INC., et al.<br><br>Defendants. | Case No. C 10-1993 CW<br><br>LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION<br><br>Date:  August 29, 2013<br>Time:  2:00 p.m.<br>Place:  Courtroom 2, 4th Floor<br>  (The Honorable Claudia Wilken) |

Case No. C 10-1993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

LEASING DEFENDANTS INCORPORATION BY REFERENCE OF ARGUMENTS SET FORTH IN MERCHANT SERVICES DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION - EXCESSIVE LEASE AMOUNTS CLASS .................................................................................................................. 1

    Plaintiffs Lack Article III Standing ............................................................................. 2
    Plaintiffs are Not Consumers Under the UCL ........................................................... 5

CERTIFICATION OF THE SKS POST-LEASE EXPIRATION CLASS SHOULD BE DENIED ............................................................................................................................ 7

THE CLAIMS OF THE PUTATIVE PROPERTY-TAX FEE NON-DISCLOSURE AND PROPERTY TAX EQUIPMENT COST BASIS CLASSES CANNOT BE PROVEN ON A CLASS-WIDE BASIS ................................................................................. 9

CERTIFICATION OF THE PUTATIVE CREDIT MONITORING MUST BE DENIED BECAUSE IT RELIES ON CERTIFICATION OF THE EXCESSIVE LEASE AMOUNT CLASS, AND BECAUSE IT DOES NOT HAVE A PROPER CLASS REPRESENTATIVE .............................................................................................. 11

CONCLUSION ................................................................................................................... 12

i      Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

Page(s)

CASES

*Campion v. Old Republic Home Prot. Co.*,
   272 F.R.D. 517, 536 (S.D. Cal. 2011) ............................................................................... 6

*Cohen v. DIRECTV, Inc.*,
   178 Cal. App. 4th 966 (2009) ............................................................................................ 5

*Davis-Miller v. Auto. Club of S. Cal.*,
   201 Cal. App. 4th 106 (2011) ............................................................................................ 6

*Easter v. Am. West Fin.*,
   381 F.3d 948, 962 (9th Cir. 2004) ..................................................................................... 2

*First Nat. Bank of Calexico v. Thompson*,
   212 Cal. 388 (1931) ........................................................................................................... 4

*Gonzalez v. Proctor & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ....................................................................................... 6

*Hanni v. Am. Airlines, Inc.*,
   No. C 08-00732 CW, 2010 WL 289297 (N.D. Cal. 2010) ................................................ 4

*In re Tobacco II*,
   46 Cal. 4th 298 (2009) ....................................................................................................... 5

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ............................................................................................ 6

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) ............................................................................... 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................... 2, 5

*Mazza v. Am. Honda Motor Co, Inc.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................................................... 2, 6

*O'Shea v. Epson Am., Inc.*,
   2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) .................................................................. 3

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................................................... 4

# TABLE OF AUTHORITIES

Page(s)

CASES

*Campion v. Old Republic Home Prot. Co.*,
   272 F.R.D. 517, 536 (S.D. Cal. 2011) ............................................................................... 6

*Cohen v. DIRECTV, Inc.*,
   178 Cal. App. 4th 966 (2009) ............................................................................................ 5

*Davis-Miller v. Auto. Club of S. Cal.*,
   201 Cal. App. 4th 106 (2011) ............................................................................................ 6

*Easter v. Am. West Fin.*,
   381 F.3d 948, 962 (9th Cir. 2004) ..................................................................................... 2

*First Nat. Bank of Calexico v. Thompson*,
   212 Cal. 388 (1931) ........................................................................................................... 4

*Gonzalez v. Proctor & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ....................................................................................... 6

*Hanni v. Am. Airlines, Inc.*,
   No. C 08-00732 CW, 2010 WL 289297 (N.D. Cal. 2010) ................................................ 4

*In re Tobacco II*,
   46 Cal. 4th 298 (2009) ....................................................................................................... 5

*In re Vioxx Class Cases*,
   180 Cal. App. 4th 116 (2009) ............................................................................................ 6

*In re Webkinz Antitrust Litig.*,
   695 F. Supp. 2d 987 (N.D. Cal. 2010) ............................................................................... 5

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................... 2, 5

*Mazza v. Am. Honda Motor Co, Inc.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................................................... 2, 6

*O'Shea v. Epson Am., Inc.*,
   2011 WL 4352458 (C.D. Cal. Sept. 19, 2011) .................................................................. 3

*Stearns v. Ticketmaster Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................................................... 4

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

*Stone v. Advance Am., Cash Advance Ctrs. Inc.*,
 278 F.R.D. 562 (S.D. Cal. 2011) .................................................................................... 4

*Tanedo v. East Baton Rouge Parish Sch. Bd.*,
 2011 WL 7095434 (C.D. Cal. 2011) ............................................................................... 6

**OTHER AUTHORITIES**

Local Rule 7-2(d) ................................................................................................................ 7

Rule 23 ............................................................................................................................ 2, 3

Rule 30(b)(6) .................................................................................................................. 3, 4

1      Defendants Northern Leasing Systems, Inc., MBF Leasing, LLC, Northern Funding, LLC, SKS Associates, LLC, Jay Cohen, Sara Krieger, Leonard Mezei and Sam Buono ("Leasing Defendants") respectfully submit this submit this sur-reply to Plaintiffs' Amended Motion for Class Certification ("Plaintiffs' Motion") and in further support of Leasing Defendants' opposition to class certification.[1] The pertinent facts were set forth in the accompanying declarations, and exhibits thereto, to Leasing Defendants' opposition to class certification.

     Plaintiffs seek certification of the following five classes against the Leasing Defendants: Excessive Lease Amount Class, SKS Post-Lease Expiration Class, Property-Tax Fee Non-Disclosure Class, Property Tax Equipment Cost Basis Class, Credit Monitoring Class.[2]

## LEASING DEFENDANTS INCORPORATION BY REFERENCE OF ARGUMENTS SET FORTH IN MERCHANT SERVICES DEFENDANTS' OPPOSITION TO CLASS CERTIFICATION - EXCESSIVE LEASE AMOUNTS CLASS

     As the Court is aware, this case was commenced against two sets of Defendants: Leasing Defendants and Merchant Services Defendants. In June 2013, Merchant Services Defendants and Plaintiffs submitted a proposed amended settlement and proposed order for preliminary approval (the "Amended Settlement").[3] Final approval of the Amended Settlement is still pending.[4]

---

[1] Docs. 459 (amended at doc. 473 to incorporate defendants' collective motion to strike all or part of the Declaration of Robyn Sands, dated August 23, 2012 (doc. #387-2) submitted in connection with Plaintiffs' Motion), 460 and 461.

[2] Doc. 522 (Plaintiffs' Amended Notice of Amended Motion for Class Certification, dated June 21, 2013).

[3] Doc. 519. Preliminary approval was subsequently granted by the Court. Doc. 524. A final approval hearing on the Amended Settlement is currently scheduled for November 21, 2013. Doc. 528.

[4] Leasing Defendants opposed and moved to continue the hearing on certification of the proposed Excessive Lease Class prior to final approval on the Amended Settlement. *See* docs. 525 and 530. Plaintiffs' Motion, particularly its arguments in support of the putative Excess Lease Amount Class, so inextricably intertwines the alleged concerted acts and/or omissions of both sets of defendants that it is virtually impossible to distinguish them from each other. Scheduling a hearing on class certification as against one set of defendants (Leasing Defendants) based on motion papers that pre-dated the Amended Settlement and before final approval thereon may potentially yield disparate results and a bifurcated class, at least with respect to the Excessive Lease Amount Class. For example, if final approval is denied with respect to the Amended Settlement, the Court will likely be forced to hold another class certification hearing with respect to Merchant Services Defendants (who will presumably not participate in the hearing on Plaintiffs' Motion – scheduled for August 29, 2013), wherein Plaintiffs will be given another bite of the apple.

                                      1                   Case No. C 10-1993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

Plaintiffs' Motion initially sought certification of various classes and subclasses as against Leasing Defendants, Merchant Services Defendants, and, in some instances, both Leasing Defendants and Merchant Services Defendants collectively. Merchant Services Defendants and Leasing Defendants filed separate but related oppositions to Plaintiffs' Motion.[5] Leasing Defendants' Opposition incorporated, by reference, the arguments set forth in Merchant Services Defendants' opposition, and vice-versa. In light of the Amended Settlement, however, pursuant to Plaintiffs' Amended Notice, Plaintiffs' Motion no longer includes Merchant Services Defendants' Opposition.[6] The arguments set forth in Merchant Services Defendants' Opposition that were incorporated by reference in Leasing Defendants' Opposition include, *inter alia*, Plaintiffs' lack of Article III standing and Plaintiffs are not consumers under the UCL.

**Plaintiffs Lack Article III Standing**

As set forth in Merchant Services Defendants' Opposition, Plaintiffs lack Article III standing with respect to their forgery allegations.[7] As a threshold issue, the Court must be satisfied that Article III standing exists for all putative class members (named and unnamed) before engaging in a Rule 23 analysis.[8] Plaintiffs submitted sworn declarations and discovery responses detailing supposed forgery in their contracts and account documents.[9] During depositions, however, the individual plaintiffs were unable to identify which documents or portions of

---

[5] Docs. 459 (amended at doc. 473), 460 and 461 ("Leasing Defendants'' Opposition"); and 469 - 471 ("Merchant Services Defendants' Opposition").

[6] Leasing Defendants submit that although they were granted this 12-page sur-reply by the Court, Merchant Services Defendants' Opposition should be considered by the Court in connection with Plaintiffs' Motion.

[7] (TAC, ¶¶ 317-318, 326, 338).

[8] Merchant Services Defendants' Opposition Doc. 469 at pp. 5-6 (citing *Easter v. Am. West Fin.*, 381 F.3d 948, 962 (9th Cir. 2004) ("The district court correctly addressed the issue of standing before it addressed the issue of class certification."). Each named and unnamed plaintiff must have directly "suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized…(b) "actual or imminent, not 'conjectural' or 'hypothetical,'" and which is likely to be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "[N]o class may be certified that contains members lacking Article III standing." *Mazza v. Am. Honda Motor Co, Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).

[9] *See, e.g.*, Declarations of Volker Von Glasenapp, Terry Jordan, and Verena Baumgartner (Docs. 150-1, 150-2, 150-3, filed Aug. 26, 2010).

documents they "believed" were forged.[10] For misrepresentation claims, Plaintiffs must establish that all named and unnamed plaintiffs "suffered an injury which was caused by [defendants'] alleged misrepresentation."[11] Plaintiffs allege that merchants paid more towards leases than if they had purchased the equipment outright; the Merchant Services Defendants charged a "service fee" or commission on leases; and the Merchant Services Defendants used names that are confusing to merchants.[12] These allegations do not demonstrate actual injury and, therefore, Plaintiffs lack Article III standing.

During depositions, plaintiffs testified that Merchant Services Defendants represented that they would save [plaintiffs] money,[13] but no "representations" were alleged to have been made by any of the Leasing Defendants. Even if Merchant Services Defendants are viewed as agents of Leasing Defendants, which they are not as a matter of law and contract, for purposes of Rule 23 analysis, to determine whether Plaintiffs actually obtained the savings promised to them by Merchant Services Defendants, the Court must examine the aggregate cost to the merchant, not the cost of any single component. The merchant suffered no injury if it saved money in the aggregate.[14] Plaintiffs have neither produced nor offered any evidence of any actual damages, and have been careful to avoid substantiating their purported damages. At deposition, Terry Jordan testified that she had no idea whether she or Dietz Towing suffered any damages.[15] Verena

---

[10] Merchant Services Defendants' Opposition at p. 5, citing Sullivan Decl. (doc. 470), at ¶6, Ex. E (Su Depo., 233:13-15, 242:11-17; 265:15-24).

[11] *Id*. at p. 6, citing *O'Shea v. Epson Am., Inc.*, No. CV 09–8063 PSG (CWx), 2011 WL 4352458, at *11 (C.D. Cal. Sept. 19, 2011).

[12] Pls. Mot. §§ II (B) (1) (d), 2(d).

[13] Merchant Services Defendants' Opposition at p. 7, citing Sullivan Decl. (doc. 470), Ex. E (Su Depo., 61:14-23, 64:1-5, 70:2-12, 75:22-76:12); Ex. F (VonGlasenapp Depo., 37:22-38:7, 38:20-39:8); Ex. G (Jordan Depo., 46:22-47:11); Ex. H (Baumgartner Depo., 71:2-10).

[14] *Id.*, at pp. 7-8 (citing *Lujan*, 504 U.S. at 559-60).

[15] Merchant Services Defendants' Opposition at p. 8, citing Sullivan Decl. (doc 470) at Ex. G (Jordan Depo. 59:9-60:1, 360:10-17). Ms. Jordan testified both in her individual capacity and as the Rule 30(b)(6) witness for Dietz Towing, Inc.

3     Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

1  Baumgartner testified that she was similarly uninformed.[16] Jerry Su claimed to have calculated

2  damages for his prior small-claims case against certain of the Merchant Services Defendants, but

3  he did not remember what he concluded, and he produced no calculations.[17] Su was a repeat

4  customer of Leasing Defendants, having assumed an equipment finance lease executed by the

5  previous owner of his shop, Precision Tune Auto Care.[18] Volker VonGlasenapp admitted that he

6  did not even attempt to calculate his damages because they would be speculative.[19]

7  As set forth in Merchant Services Defendants' Opposition, over the putative class period,

8  many merchants have elected to continue their processing and leasing contracts upon expiration of

9  the original term.[20] Indeed, plaintiff Su, a named plaintiff in this case, continued leasing with

10  Leasing Defendants, specifically MBF, even after commencement of this case, that he still uses

11  the equipment, and processing through Merchant Services Defendants for approximately two and

12  a half years after this action was commenced.[21] Where, as here, uninjured merchants would be

13  "swept willy-nilly into the class," *see Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir.

14  2011), it cannot be certified.[22]

15  Moreover, Leasing Defendants, specifically, NLS and MBF, establish their lease rate caps

16  based on what they believe the market will bear for a given piece of equipment.[23] The mere fact

---

[16] *Id.*, at Ex. H (Baumgartner Depo., 203:24-205:19).
[17] *Id.*, at Ex. E, (Su Depo., 162:6-164:17). Mr. Su testified both in his individual capacity and as the Rule 30(b)(6) witness for Rainbow Business Solutions d/b/a Precision Tune Auto Care.
[18] *See* Leasing Defendants' Opposition, Nigro Decl., at ¶ 24, Ex. 3 (Su Depo., 34:7-35:14, 129:10-141:23).
[19] Merchant Services Defendants' Opposition at p. 8, citing Sullivan Decl. (doc. 470) at Ex. F (VonGlasenapp Depo., 160:18-162:13).
[20] Merchant Services Defendants' Opposition at p. 8 (such renewal serves as a ratification, further precluding Article III standing. *See, e.g., First Nat. Bank of Calexico v. Thompson*, 212 Cal. 388, 407 (1931)).
[21] *See* Leasing Defendants' Opposition, Nigro Decl., at ¶¶ 30 and 32, Ex. 3 (Su Depo., 218:6-19; 77-85), Kravic Decl., Ex. 41.
[22] Plaintiffs likely propose such a broad class because any attempt to define a narrower class, such as by excluding those who did not save money, would make explicit the inherently individualized inquiries it requires. *See Stone v. Advance Am., Cash Advance Ctrs. Inc.*, 278 F.R.D. 562, 569-70 (S.D. Cal. 2011); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (Wilken, J.) ("A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class.") (quoting 5 James W. Moore, Moore's Federal Practice § 23.21 (2001)).
[23] Merchant Services Defendants' Opposition at p. 9, citing Sullivan Decl. (doc. 470) at Ex. D (Krieger Depo., 37:14-40:8, 58:5-15).

4   Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

1  that a merchant's lease payment exceeded the Leasing Defendants' caps, or that the Leasing
2  Defendants agreed to waive their caps for a particular merchant, does not establish injury.
3  Certification of the putative Excessive Lease Amount Class should be not granted because, *inter*
4  *alia*, Plaintiffs have not been injured and, therefore, fail to establish Article III standing.[24]

**Plaintiffs are Not Consumers Under the UCL**

Because plaintiffs are not consumers, their UCL claims against Leasing Defendants fail as a matter of law. As the *Avila* court recently held, "'small mom and pop merchants' cannot bring a UCL claim if it is clear that the alleged fraud arose from a commercial contract." *Avila*, 2012 WL 3165408, at *8; *see also In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010) (UCL claim based on a commercial contract only appropriate where brought to protect the public).[25]

Even if the UCL claim were colorable, Plaintiffs misrepresent the state of the law with respect to individualized reliance.[26] Plaintiffs cite *In re Tobacco II*, 46 Cal. 4th 298, 312 (2009), for the proposition that individualized reliance is not required. But the California Court of Appeal recently clarified that *Tobacco II* is "irrelevant" for certification purposes. In *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009), the California Court of Appeal held that individualized reliance is not necessary to establish standing with respect to UCL claims. *Id*. at 981. But the court clarified that *Tobacco II* is "irrelevant" for certification purposes because the issue of standing is not the same thing as commonality. *Id.* ("The trial court's concerns that the UCL and the CLRA claims … would involve factual questions associated with their reliance on DIRECTV's alleged false representations was a proper criterion for the court's consideration when examining 'commonality' in the context of … class certification, even after *Tobacco II*.").

In particular, reliance may be inferred only where uniform, material misrepresentations

---

[24] The mere fact that a merchant may have been charged more than the Leasing Defendants' self-imposed and arbitrary rate caps (without accounting for, *inter alia*, other discounts for which the merchant would not have qualified in the absence of a lease) does not constitute a concrete injury. *See Lujan*, 504 U.S. at 560-61.
[25] Plaintiffs do not seek to certify an injunctive class here, so they cannot claim to seek to protect the public.
[26] Pls. Mot. at pp. 39-43.

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

were made to each plaintiff.[27] *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009) ("If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class."). But there were no uniform misrepresentations here, as evidenced by Plaintiffs' own testimony. As a result, reliance may not be inferred here. *See Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 125 (2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class."); *Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 624 (S.D. Cal. 2007) ("California cases…refuse[] to certify a class when the plaintiffs [can]not allege that the same representations were specifically made to each class member."); *Mazza*, 666 F.3d at 596 ("A presumption of reliance does not arise when class members 'were exposed to quite disparate information from various representatives of the defendant.'") (quoting *Stearns*, 655 F.3d at 1020).[28]

Plaintiffs' Motion continues to define the Excess Lease Amount Class as "a subclass consisting of: 'All members of the Merchant Services Customer Class whose monthly lease amounts exceeded Northern Leasing's standard rate caps.'"[29] The "Merchant Services Customer Class", is more broadly defined as "All persons and businesses who, from March 26, 2006 to the present, who were enrolled by the Merchant Services Defendants in credit card processing services."[30] Plaintiffs' Errata and Amended Memorandum of Law filed on July 25, 2013 do not reflect the changes to the definition of the putative Excessive Lease Amount Class. Rather, in their June 21, 2013 Amended Notice of Amended Motion for Class Certification, Plaintiffs changed their definition of the Excessive Lease Amount Class (in a footnote) to "All persons and

---

[27] Reliance may not be inferred at all for fraud claims. *Tanedo*, 2011 WL 7095434, at *10 ("with respect to the fraud-based claims there is no reasonable person standard, but an individualized one").

[28] In addition, "courts are reticent to extend an inference of reliance to 'mixed' cases, *i.e.* those involving allegations of material omissions and misrepresentations." *Campion v. Old Republic Home Prot. Co.,* 272 F.R.D. 517, 536 (S.D. Cal. 2011). Plaintiffs here allege both omissions and misrepresentations. (*See* TAC, ¶ 661 ("This action involves...deceptive, unlawful and/or unfair statements and omissions"); Mot. at 42-43.)

[29] Pls. Mot. at p. ix. (defining the putative classes and subclasses)

[30] Pls. Mot. at p. ix. Plaintiffs, in connection with the Amended Settlement, summarily withdrew their motion to certify the Merchant Services Customer Class.

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

businesses who, from March 26, 2006 to present, who [*sic*] were enrolled by the Merchant Services Defendants in credit card processing services and leases, and whose monthly lease amounts exceeded Northern Leasing's standard rate caps."[31] This new class is not supported by Plaintiffs' Errata and Amended Memorandum of Law.[32]

The Excessive Lease Amount Class is simply not a viable class for the reasons set forth above and in Leasing Defendants' Opposition.

## CERTIFICATION OF THE SKS POST-LEASE EXPIRATION CLASS SHOULD BE DENIED

The putative SKS Post-Lease Expiration Class should be denied because the sole lead plaintiff does not and cannot represent the class, and because the putative class overlaps with the NY AG Settlement Class. *See* accompanying declaration of Cortes DeRussy dated August 8, 2013 ("DeRussy Decl.") and exhibits thereto. As set forth in Leasing Defendants' Opposition, the sole proposed representative for the SKS Post-Lease Expiration Class is Erin Campbell, who testified that ***no taxes or administrative fees were taken from her account(s) after her lease terminated.***[33] Her alleged injuries (time lost in having her assistant review the payment history on the lease for approximately 2 hours) are speculative at best and do not actually represent the alleged injuries to the putative class – to wit, the alleged unauthorized ***collection*** of taxes and/or administrative fees on terminated leases. Without a proper class representative, certification must be denied.

Moreover, the SKS Post-Lease Expiration Class is precluded by the settlement in the action entitled *People of the State of New York v. SKS Associates LLC, et al.*,) ("the NY AG Action").[34] Although the settlement was raised in connection with Leasing Defendants'

---

[31] Doc. 522
[32] Plaintiffs also failed to file a proposed order in connection with their Amended Notice of Motion and their Errata and Amended Memorandum of Law, required under Local Rule 7-2(d).
[33] Leasing Defendants' Opposition at p. 24 (doc. 473), citing Nigro Decl., ¶ 66; Kravic Decl., ¶ 29.
[34] The named (and settling) defendants in the NY AG Action include, *inter alia*, defendants SKS Associates, LLC,
(…continued)

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

1  Opposition, the agreement was still in the process of being drafted and executed by the parties

2  thereto.  As set forth in the DeRussy Decl., the Consent Order and Judgment in the NY AG Action

3  was signed and entered by the Hon. Donna Mills, J.S.C., New York State Supreme Court, County

4  of New York on February 28, 2013 (the "NY AG Settlement").  DeRussy Decl., at ¶ 2, Ex. 49.

5  Administration of the NY AG Settlement has been underway since the effective date and in

6  accordance with the express provisions thereof.  *Id*. at ¶ 49.

7  To date, approximately $1,068,000 has been and/or is in the process of being disbursed

8  through the restitution process.  This amount is *exclusive* of the amount paid directly to the New

9  York State Attorney General's Office under paragraph 26 of the NY AG Settlement.  *Id.* at ¶ 5.

10 Based on the information currently available from the settlement administrator, to date, the total

11 number of Automatic Restitution Customers ("ARCs") is 2,054; the total amount of money

12 disbursed to ARCs is: $210,058.32; the total number of Eligible Restitution Customers ("ERCs")

13 is 32,519; the total number of executed claim forms received is 8,583; and the total amount of

14 money to be disbursed to ERCs is approximately $902,000.  *Id*.

15 A final report from the settlement administrator is anticipated in the next 60 days.

16 DeRussy Decl., ¶ 4.  The report will set forth, *inter alia*, the total number of ERCs and ARCs, the

17 total number of executed claim forms received, the total number of restitution checks issued and

18 cashed, and the total amount of money disbursed through the restitution process.  *Id.* Ex. 49 at ¶

19 28.  The same plaintiffs cannot recover twice for the same injury; thus, Plaintiffs lack standing to

20 recover in this action.[35]

---

(…continued)
Northern Leasing Systems, Inc., and MBF Leasing, LLC.  *See* DeRussy Decl. at Ex. 49.

[35] At a minimum, the Court should delay final decision on certification of the putative SKS Post-Lease Expiration Class until such time as the report is delivered by the administrator and can be considered by the Court.

8                                    Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS
CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO
PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

# THE CLAIMS OF THE PUTATIVE PROPERTY-TAX FEE NON-DISCLOSURE AND PROPERTY TAX EQUIPMENT COST BASIS CLASSES CANNOT BE PROVEN ON A CLASS-WIDE BASIS

With respect to the putative Property Tax Fee Non-Disclosure Class, as discussed in Leasing Defendants' Opposition, the $25 processing fee charged in connection with the payment of taxes on behalf of the merchant lessee is intended to cover Leasing Defendants' overhead expenses in handling and processing personal property and other taxes to literally thousands of state, county and/or municipal taxing authorities in the areas where such taxes apply.[36] The merchant lessee's obligations with respect to payment of personal property tax(es) is spelled out in the equipment finance leases in use since 2006 in a variety of ways. One example is illustrated on page 1 of plaintiff Su's lease: under Schedule of Payments it states that the lessee will be paying a monthly base amount "plus applicable taxes"; at paragraph 11 on page 2 (continued on page 3) of plaintiff Su's equipment finance is a further description of the lessee's obligation to pay "all sales, use, excise, personal property . . .and similar charges imposed on you or us, for the ownership, use or possession of the Equipment", plus "***an administrative processing fee in the amount of $25.00***" which "***may provide us with a profit***."[37]

In contrast, the relevant provision in plaintiff VonGlasenapp's equipment lease (under ¶ 6 thereof) permits "handling and administration costs", which the lessor may estimate, to be added to the monthly lease payment.[38]

Also, as set forth in Leasing Defendants' Opposition, the $25 dollar administrative fee is not charged in all cases.[39]

An analysis of the approximately 382 lease forms used during the Putative Class Period

---

[36] Leasing Defendants' Opposition, Kravic Decl., ¶ 28; Kulangroth Decl., ¶ 34.
[37] Leasing Defendants' Opposition, Nigro Decl., Ex. 5 (equipment finance lease executed by plaintiff Jerry Su on behalf of Rainbow Business Solutions, Inc. (Precision Tune Auto Care)) at pp. 2-3, ¶ 11. (Emphasis added).
[38] Leasing Defendants' Opposition, Nigro Decl., Ex. 2, pp. 2-3, ¶ 6 (compare Ex. 5, pp. 2-3, ¶ 11).
[39] Leasing Defendants' Opposition, Kravic Decl., ¶ 28.

and the collection(s) thereunder for each and every putative class member (to see if the administrative fee was even collected) would have to be conducted in order to determine how many of the leases contain the stated amount of $25 and how many do not; regardless of whether the stated amount of $25 is in the lease itself, an individualized inquiry would have to be made to determine whether it was even collected from the merchant and, if so, how much was collected and whether that amount was reasonable.

With respect to the putative Property Tax Equipment Cost Basis Class, as discussed in Leasing Defendants' Opposition, in order to determine that the acquisition-cost basis was unlawful and/or unreasonable as a matter of law an individualized inquiry would have to be made into every one of the over 3,500 taxing jurisdictions to which Leasing Defendants are required to pay personal property taxes.[40] Moreover, Plaintiffs have failed to demonstrate that the acquisition-cost basis previously utilized by Leasing Defendants and third-party vendor, Portfolio Financial Servicing Company ("PFSC" – to whom Leasing Defendants have paid millions of dollars to process and report multi-state sales/use and personal property taxes on behalf of its merchant lessees),[41] was unlawful or even unreasonable as a matter of law. Each taxing jurisdiction bills for personal property tax(es) based on its own formulas and factors.[42] None of the taxing jurisdictions to which Leasing Defendants pay personal property taxes on behalf hundreds of thousands of merchant lessees has ever indicated to PFSC or Leasing Defendants that the acquisition cost basis was erroneous or unlawful, or that PFSC or Leasing Defendants overpaid the requisite personal property tax assessment(s), or refunded monies to PFSC or Leasing Defendants representing an overpayment of the personal property taxes due.[43] None of the foregoing is disputed by Plaintiffs. Plaintiffs have not and cannot establish that the acquisition-cost basis previously utilized by Leasing Defendants and PFSC was unlawful or unreasonable. Based on the foregoing, and under

---

[40] *See* Leasing Defendants' Opposition, Kulangroth Decl., ¶¶ 14-28.
[41] *Id.* Kulangroth Decl., ¶¶ 33.
[42] *Id.* Kulangroth Decl., at ¶¶ 17 -28.
[43] *Id.* Kulangroth Decl., at ¶¶ 30 - 32.

*Dukes*, the Property Tax Equipment Cost Basis Class is not a certifiable class.

**CERTIFICATION OF THE PUTATIVE CREDIT MONITORING MUST BE DENIED BECAUSE IT RELIES ON CERTIFICATION OF THE EXCESSIVE LEASE AMOUNT CLASS, AND BECAUSE IT DOES NOT HAVE A PROPER CLASS REPRESENTATIVE**

Mr. Lewis Bae, one of the two class representatives for the putative Credit Monitoring Class, is deceased. Plaintiffs only recently (via footnote) withdrew Mr. Bae as a lead plaintiff in this case.[44] The sole remaining lead plaintiff for the putative Credit Monitoring Class is Volker VonGlasenapp. Mr. VonGlasenapp, who filed for bankruptcy during the pendency of this case, testified at his deposition that he did not know if Northern Leasing had ever accessed his credit history or if it had ever placed any information on his credit report. Nigro Decl., Ex. 54. Moreover, there is no evidence that Mr. VonGlasenapp actually sustained any damages as a result of the allegations set forth in paragraphs 498 - 502 of the TAC, as they pertain to Leasing Defendants. Mr. VonGlasenapp is not a proper lead plaintiff for the Credit Monitoring Class.

Plaintiffs' Motion continues to define the putative Credit Monitoring Class as "All persons who on or after March 26, 2008, had their consumer credit reports inspected, viewed, monitored, or otherwise retrieved from a consumer credit reporting agency by any of the Merchant Services Defendants or Leasing Defendants in connection with an attempt to collect (1) amounts due on a lease whose monthly amount exceeds Northern Leasing's standard rate caps or (2) money owed after the termination of a credit card processing agreement."[45] Plaintiffs' Errata and Amended Memorandum of Law filed on July 25, 2013, do not reflect the changes to the definition of the putative Credit Monitoring Class. Rather, in their June 21, 2013 Amended Notice of Amended Motion for Class Certification, Plaintiffs changed their definition of the Credit Monitoring Class (in a footnote) to "All persons who on or after March 26, 2008, had their consumer credit reports inspected, viewed, monitored, or otherwise retrieved from a consumer credit reporting agency by

---

[44] Pls. Mot. at p. ix.
[45] Doc. 522, at ftnt. 3.

11  Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION

any of the Leasing Defendants in connection with an attempt to collect amounts due on a lease whose monthly amount exceeds Northern Leasing's standard rate caps." This new class is not supported by Plaintiffs' Errata and Amended Memorandum of Law. Moreover, in order to be a member of Plaintiffs' newly defined putative Credit Monitoring Class one must also be a member of the Excessive Lease Amount Class and meet at least two additional criteria: (1) the member must have had his/her consumer credit report inspected, viewed, monitored, otherwise retrieved from a credit reporting agency by any of the Leasing Defendants (2) in connection with trying to enforce the lease (e.g., default by the personal guarantor thereunder), as opposed to some other basis (e.g., a credit check, Leasing Defendants are authorized to conduct before agreeing to the lease). In order for the Credit Monitoring Class to even exist, the Court must first certify the Excessive Lease Amount Class, which, under *Dukes*, as further articulated in Leasing Defendants' Opposition, is not a certifiable class.

**CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in Leasing Defendants' Opposition, the Court should deny certification.

Dated: August 8, 2013
New York, New York

MOSES & SINGER LLP
Attorneys for Leasing Defendants

By:    /s/
Robert D. Lillienstein
Scott E. Silberfein
Jennifer Nigro
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-1299
Tel.: 212-554-7800

Rod O. Divelbiss (SBN 102345)
JRA LAW PARTNERS, LLP

12     Case No. CV 10-01993 CW

LEASING DEFENDANTS' SUR-REPLY TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION AND IN FURTHER SUPPORT OF LEASING DEFENDANTS' OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION