IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAINBOW BUSINESS SOLUTIONS, doing business as PRECISION TUNE AUTO CARE; DIETZ TOWING, INC.; THE ROSE DRESS, INC.; VOLKER VON GLASENAPP; JERRY SU; VERENA BAUMGARTNER; TERRY JORDAN; ERIN CAMPBELL; and LEWIS BAE, | No. C 10-1993 CW<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION<br>(Docket No. 508) |
| Plaintiffs, | |
| v. | |
| MERCHANT SERVICES, INC.; NATIONAL PAYMENT PROCESSING; UNIVERSAL MERCHANT SERVICES, LLC; UNIVERSAL CARD, INC.; JASON MOORE; NATHAN JURCZYK; ROBERT PARISI; ERIC MADURA; FIONA WALSHE; ALICYN ROY; MBF LEASING, LLC; NORTHERN FUNDING, LLC; NORTHERN LEASING SYSTEMS, INC.; JAY COHEN; LEONARD MEZEI; SARA KRIEGER; SAM BUONO; and SKS ASSOCIATES, LLC, | |
| Defendants. | |

Plaintiffs Volker von Glasenapp, who was the sole shareholder

of Just Film, Inc. and acquired its assets when it dissolved in

2011; Rainbow Business Solutions, doing business as Precision Tune

Auto Care, and its owner Jerry Su; Verena Baumgartner, doing

business as Burlingame Motors; Dietz Towing, Inc., and its CFO and

Secretary, Terry Jordan; The Rose Dress, Inc., and its owner Lewis

Bae; and Erin Campbell, doing business as Silicon Valley Pet

Clinic, move for class certification, to be appointed as class

representatives[1] and for their counsel to be appointed as class counsel.  Leasing Defendants[2] Northern Leasing Systems, Inc.; MBF Leasing, LLC; Northern Funding, LLC; SKS Associates, LLC; Jay Cohen; Sara Krieger; Leonard Mezei; and Sam Buono oppose the motion.  Having considered all of the parties' papers[3] and oral argument on the motion, the Court grants the motion in part.

BACKGROUND

Plaintiffs allege that Leasing Defendants acted as part of a conspiracy to defraud Plaintiffs and the putative class members in a scheme involving credit and debit card processing services and equipment.  In the currently operative third amended complaint (3AC), Plaintiffs generally explain the alleged fraud as follows.

Credit and debit card transactions are processed through financial networks, called interchanges, run by entities like Visa and Mastercard.  Banks, as members of these interchanges, can sell card processing services directly to merchants, or indirectly

---

[1] Plaintiff Lewis Bae, the owner of The Rose Dress, died in December 2013.  Plaintiffs no longer seek to have him appointed as a class representative.

[2] An order granting the motion for final approval of the class action settlement with respect to the other remaining Defendants in this case, Merchant Services Defendants, was entered on December 11, 2013.

[3] Leasing Defendants have filed an administrative motion to file under seal certain exhibits to the declaration of Cortes DeRussy in support of their sur-reply to Plaintiffs' amended motion for class certification.  (Docket No. 540).  Those exhibits contain lists of Leasing Defendants' customers' names, addresses and telephone numbers.  Good cause appearing, the Court GRANTS Leasing Defendants' motion to file under seal Appendix A to Exhibit 49  and Exhibit 51 to the DeRussy declaration.

United States District Court
For the Northern District of California

through companies and individuals known as Independent Sales Organizations and Merchant Service Providers (ISOs/MSPs). 3AC ¶¶ 65-67.  These ISOs/MSPs must be licensed and registered with both Visa and Mastercard, as well as with a bank or a bank-approved processing entity, called a processor.  Id.

Merchants pay a fee for each credit and debit card transaction.  Id. at ¶ 68.  The fee is "shared among (1) the bank that issued the credit or debit card to the customer, (2) the interchange, (3) the bank through whom the merchant is accepting the card, (4) the ISO/MSP that solicited the merchant and/or provides customer service to the merchant (if any) and (5) the third party-processor (if any)."  Id.  Merchants may also be required to pay for credit and debit card processing equipment, such as card terminals.  Id. at ¶ 69.

Plaintiffs allege that Leasing Defendants conspired with Merchant Services Defendants, a group of ISO/MSPs, to market fraudulent equipment leases and credit card processing services to merchants.  Id. at ¶ 71.  Plaintiffs allege that Merchant Services Defendants seek out merchants who wish to accept credit and debit cards and induce them "through a series of deceitful misrepresentations and forged documents" to enroll in fraudulent equipment leases.  Id. at ¶ 72.  Plaintiffs assert that the high cost of these leases does not pay for the equipment.  Instead, Plaintiffs allege that most of the money goes to commissions to Merchant Services Defendants for securing the leases and profits for Leasing Defendants.  Id. at ¶¶ 71-72.

Plaintiffs allege that Leasing Defendants assist Merchant Services Defendants in inducing merchants to accept the expensive leases by

> (1) using a contract that appears to be one-page in length, with all signatures on the first page, when in fact there are three subsequent pages not shown to the merchant; (2) failing to engage in effective verification procedures to ensure that the merchant knowingly signed the lease; (3) rejecting many claims by merchants of fraudulent inducement, regardless of the facts presented; (4) hiding their identities from merchants; and (5) engaging in abusive tactics to collect on the amounts purportedly owed on the leases, including aggressively monitoring consumer credit report, making false reports to credit bureaus, and filing unsupportable collection actions in foreign forums.

Id. at ¶ 73.

In addition, Plaintiffs allege that, while Leasing Defendants contract with hundreds of ISO/MSPs, these fraudulent practices exist only in the contracts marketed by Merchant Services Defendants in this case. Plaintiffs further allege that, in 2011, Leasing Defendants conspired with one another to defraud former lessees by collecting purported taxes that are not actually due or paid to any taxing authority. Id. at ¶¶ 1, 49. Plaintiffs allege that Leasing Defendants conducted a faulty simulation to determine how much to charge those former lessees and compiled the results on a spreadsheet referred to as Schedule 1. When attempting to collect those taxes, often long after the leases expired, Leasing Defendants charged merchants administrative fees allegedly not authorized by their leases. Id. at ¶ 80. Leasing Defendants sometimes collected these taxes and fees by abusing Automated Clearing House (ACH) authorizations to make withdrawals from merchants' bank accounts. Id. Finally, Plaintiffs allege that

United States District Court
For the Northern District of California

Leasing Defendants have created a network of shell companies that "ensures that their unlawful acts remain hidden and that victims and the courts are unable to identify the responsible party." Id. at ¶ 82.  Plaintiffs allege that Leasing Defendants are not separate entities, but alter egos of each other.  Id. at ¶ 83.

Plaintiffs allege that they meet the requirements for class certification with respect to a class defined as:

> All persons and businesses who, from March 26, 2006 to the present were bound by contracts or leases for merchant card services and/or related equipment with any of the Defendants, or signed personal guarantees for such contracts, or against whom Defendants attempted to enforce such contracts or leases, attempted to collect monies allegedly owed under such contracts or leases, or reported to credit agencies that monies were due under such contracts or leases.

3AC ¶ 657.  Plaintiffs seek certification of five subclasses:

> (1) the Excessive Lease Amount Class, which is defined as:

> All persons and businesses who, from March 26, 2006 to the present, were enrolled by the Merchant Services Defendants in credit card processing services and leases, and whose monthly lease amounts exceeded Northern Leasing's standard rate caps.

Am. Not. of Ps' Am. Mot. for Class Cert. at 1 n.1.

> (2) the SKS Post-Lease Expiration Class, which is defined as:

"All persons and businesses whose lease numbers appeared on Schedule 1."  Ps' Am. Mot. for Class Cert. at x.

> (3) the Property Tax Fee Non-Disclosure Class, which is defined as:

> All persons and businesses whose Equipment Finance Lease did not disclose "an administrative tax processing fee in the amount of $25" but who paid a $25 property tax administrative fee to any Leasing Defendant from March 26, 2006 to the present.

Id.

1    (4) the Property Tax Equipment Cost Basis Class, which is

2  defined as: "All persons and businesses who from March 26, 2006 to

3  the present paid any Leasing Defendants property taxes based on a

4  cost greater than the 'equipment cost.'"   Id.

5    (5) the Credit Monitoring Class, which is defined as:

6        All persons who on or after March 26, 2008, had their
         consumer credit reports inspected, viewed, monitored, or
7        otherwise retrieved from a consumer credit reporting
         agency by any of the Leasing Defendants in connection
8        with an attempt to collect amounts due on a lease whose
         monthly amount exceeds Northern Leasing's standard rate
9        caps

10  Am. Not. of Ps' Am. Mot. for Class Cert. at 1 n.2.

11                         LEGAL STANDARD

12    Plaintiffs seeking to represent a class must satisfy the

13  threshold requirements of Rule 23(a) as well as the requirements

14  for certification under one of the subsections of Rule 23(b).

15  Rule 23(a) provides that a case is appropriate for certification

16  as a class action if the class is so numerous that joinder of all

17  members is impracticable; there are questions of law or fact

18  common to the class; the claims or defenses of the representative

19  parties are typical of the claims or defenses of the class; and

20  the representative parties will fairly and adequately protect the

21  interests of the class.  Fed. R. Civ. P. 23(a).

22    Plaintiffs must also establish that one of the subsections of

23  Rule 23(b) is met.  In the instant case, Plaintiffs seek

24  certification under subsection (b)(3).

25    Rule 23(b)(3) permits certification where common questions of

26  law and fact "predominate over any questions affecting only

27  individual members" and class resolution is "superior to other

28  available methods for the fair and efficient adjudication of the

United States District Court
For the Northern District of California

controversy." Fed. R. Civ. P. 23(b)(3).  These requirements are

intended "to cover cases 'in which a class action would achieve

economies of time, effort, and expense . . . without sacrificing

procedural fairness or bringing about other undesirable results.'"

Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed.

R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment).

Regardless of what type of class the plaintiff seeks to

certify, it must demonstrate that each element of Rule 23 is

satisfied; a district court may certify a class only if it

determines that the plaintiff has borne this burden.  Gen. Tel.

Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v.

Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  In

general, the court must take the substantive allegations of the

complaint as true.  Blackie v. Barrack, 524 F.2d 891, 901 (9th

Cir. 1975).  However, the court must conduct a "'rigorous

analysis,'" which may require it "'to probe behind the pleadings

before coming to rest on the certification question.'"  Wal-Mart

Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting

Falcon, 457 U.S. at 160-61).  "Frequently that 'rigorous analysis'

will entail some overlap with the merits of the plaintiff's

underlying claim.  That cannot be helped."  Dukes, 131 S. Ct. at

2551.  To satisfy itself that class certification is proper, the

court may consider material beyond the pleadings and require

supplemental evidentiary submissions by the parties.  Blackie, 524

F.2d at 901 n.17.  "When resolving such factual disputes in the

context of a motion for class certification, district courts must

consider 'the persuasiveness of the evidence presented.'"  Aburto

v. Verizon Cal., Inc., 2012 WL 10381, at *2 (C.D. Cal.) (quoting

**United States District Court**
For the Northern District of California

Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)).  Ultimately, it is in the district court's discretion whether a class should be certified.  Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

ANALYSIS

I.   Excessive Lease Amount Class

Plaintiffs seek certification of the Excessive Lease Amount class to bring a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), and RICO conspiracy and fraud claims against Leasing Defendants.  Plaintiffs also seek certification of a California subclass to bring a claim under California's unfair competition law (UCL), California Business and Professions Code §§ 17200 et seq., and negligent misrepresentation claims.  Leasing Defendants contend that certification must be denied because Plaintiffs have failed to satisfy their burden with respect to commonality, predominance and typicality.

A. Numerosity

Plaintiffs assert that there would be approximately 2,000 members in the Excessive Lease Amount class.  Leasing Defendants do not contest this figure.  The Court finds that Plaintiffs satisfy the numerosity requirement with respect to the Excessive Lease Amount class.

B. Commonality and Predominance

Rule 23 contains two related commonality provisions.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3), in turn,

requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions predominate.  In Hanlon, the Ninth Circuit discussed the relationship between Rule 23(a)(2) and Rule 23(b)(3):

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3).  In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.

Id. at 1022 (citations and internal quotation marks omitted).

Plaintiffs argue that common questions of law and fact predominate for each of the claims it seeks to assert on behalf of the Excessive Lease Amount class.

       1.   RICO, RICO Conspiracy and Fraud Claims

"The elements of a civil RICO claim are as follows:

United States District Court
For the Northern District of California

(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's business or property." Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353, 361 (9th Cir. 2005) (citation and internal quotation marks omitted). "Causation lies at the heart of a civil RICO claim." Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004) (citations omitted). "Lumping claims together in a class action does not diminish or dilute this requirement." Id. To maintain a civil RICO claim based on mail fraud, a plaintiff must show that the defendant's "alleged misconduct proximately caused the injury." Id. Under California law, "[a] cause of action for fraud requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1201 (9th Cir. 2001).

Plaintiffs assert that their RICO claims involve a common set of facts and legal theories concerning whether Defendants were engaged in an association-in-fact enterprise, whether Defendants participated, directed or controlled the conduct of the enterprise and whether they did so through a pattern of racketeering activity. With respect to their fraud claim, Plaintiffs assert that common questions exist with respect to whether Leasing Defendants acted with an intent to defraud and whether Merchant Defendants were acting as Leasing Defendants' agents when they made false or misleading representations to the class.

**United States District Court**
For the Northern District of California

Leasing Defendants counter that Plaintiffs have failed to establish commonality and predominance with respect to their RICO and fraud claims because there are numerous issues that require an individualized inquiry. Specifically, Leasing Defendants argue that Plaintiffs must show whether an actionable omission or misrepresentation was made to each lessee and, if so, whether the lessee relied upon that omission or misrepresentation. In addition, Leasing Defendants contend that individualized questions of damages and standing preclude certification of the class.

a.   Misrepresentations or Omissions

Leasing Defendants first argue that Plaintiffs have failed to allege that they, as opposed to Merchant Services Defendants, made any affirmative misrepresentations to induce Plaintiffs to enter into any lease. Accordingly, Leasing Defendants argue that Plaintiffs' claims against them must be based on omissions. Moreover, Leasing Defendants argue, RICO claims based on fraud by omission require Plaintiffs to show that Leasing Defendants owed them a statutory or fiduciary duty to disclose information and Plaintiffs do not allege such a duty. Similarly, to assert a claim for fraud based on omissions under California law, Plaintiffs must demonstrate that Leasing Defendants owed them a duty to disclose, such as a statutory duty. See OCM Principal Opportunities Fund v. CIBC World Mkts. Corp., 157 Cal. App. 4th 835, 845 (2007) ("to establish fraud through nondisclosure or concealment of facts, it is necessary to show the defendant was under a legal duty to disclose them.") (internal quotation marks omitted). Plaintiffs agree that they did not have any direct contact with Leasing Defendants and also concede that there must

United States District Court
For the Northern District of California

1  be a duty to disclose in order to assert a RICO or fraud claim

2  based on omissions alone.  However, Plaintiffs have not identified

3  any such duty that they are owed by Leasing Defendants.

4  Without an affirmative misrepresentation or omission, the

5  only other basis for a RICO or fraud claim in this case would be

6  to show that Merchant Services Defendants presented Plaintiffs

7  with a half-truth, giving rise to a duty by Leasing Defendants to

8  disclose additional information to prevent that half-truth from

9  being misleading.  Leasing Defendants assert that no such half-

10  truths are alleged, and that even if they were, individualized

11  inquiries would be needed to determine the half-truths that were

12  presented to individual class members.

13  Plaintiffs counter that they have alleged a common scheme in

14  which Leasing Defendants conspired with Merchant Services

15  Defendants to mislead Plaintiffs.  Plaintiffs assert that Leasing

16  Defendants were aware of Merchant Defendants' fraudulent

17  activities "and either aided it or failed to stop it."  <u>Joint</u>

18  <u>Equity Comm. of Investors of Real Estate Partners, Inc. v.</u>

19  <u>Coldwell Banker Real Estate Corp.</u>, 281 F.R.D. 422, 424 (C.D. Cal.

20  2012).  Plaintiffs assert that Merchant Services Defendants used

21  uniform marketing materials indicating that Merchant Services was

22  a "Registered ISO," which it was not.  In addition, Plaintiffs

23  allege that they each received the same allegedly misleading Rate

24  Sheet from Merchant Services Defendants.  However, to the extent

25  that these alleged misrepresentations were universally presented

26  to the merchants, Plaintiffs have not established that the

27  misrepresentations were material.  When asked to identify other

28  material misrepresentations, Plaintiffs responded that Merchant

**United States District Court**
For the Northern District of California

Services Defendants and Leasing Defendants agreed that the first and last month payment fields would be left blank on the merchants' lease forms at the time the merchants signed them. However, when asked whether either Merchant Services or Leasing Defendants lied to the merchants regarding the amounts of those payments, Plaintiffs conceded that the question "raises individual issues" and accordingly is "not the basis" of the class certification motion.[4]  Transcript at 10.

The Court finds that Plaintiffs have failed to establish that common questions predominate with respect to misrepresentations or omissions.

> b.    Proximate Cause and Reliance

Plaintiffs argue that the Court can infer reliance on Defendants' misrepresentations on a class-wide basis, despite the fact that Plaintiffs signed documents containing the terms of the agreements, because the entire scheme was structured to trick merchants into enrolling in the leases.  Moreover, Plaintiffs argue that, given the disadvantageous terms of the leases, no merchant would have agreed to the lease unless it had relied upon Defendants' misrepresentations.  See, e.g., Negrete v. Alliance Life Ins. Co. of N. Am., 238 F.R.D. 482, 491 (C.D. Cal. 2006) (finding a "common sense inference that no rational class member

---

[4] Leasing Defendants contend that allegations about blanks in leases and forged signatures defeat typicality for Plaintiffs for all of the classes.  However, such allegations would only be relevant to Plaintiffs' RICO and fraud claims, for which the Court finds Plaintiffs have failed to establish that common questions predominate.  Because these allegations are not relevant to Plaintiffs' other breach of contract and UCL claims, they do not impact the typicality analysis for those claims

**United States District Court**
For the Northern District of California

1   would purchase the annuities in question[] upon adequate

2   disclosure of the facts, regardless of their individual

3   circumstances.").

4        Leasing Defendants argue that reliance cannot be inferred on

5   a class-wide basis because there is more than one logical reason

6   that a class member might want to enter into a lease, even if it

7   cost more than purchasing the product outright.  For example,

8   Leasing Defendants assert that a merchant might have "evaluated

9   the prices being charged by other ISO's, and made a decision that

10  the Leasing Defendants' lease prices were comparable."  Leasing

11  Defendants' Opposition at 17.  Plaintiffs counter that, within

12  days of signing the agreement, the merchant would have paid more

13  than the purchase price of the equipment, with forty-six

14  additional payments remaining.  However, as discussed above,

15  Plaintiffs have defined the class as any merchant "whose monthly

16  lease amounts exceeded Northern Leasing's standard rate caps."

17  Am. Not. of Ps' Am. Mot. for Class Cert. at 1 n.1.  There is

18  nothing to suggest that Northern Leasing's standard rate cap,

19  which Plaintiffs concede is not a legal limit on lease amounts, is

20  the outer limit of a reasonable amount that a person would agree

21  to pay for the type of lease in question.  Accordingly, reliance

22  cannot be presumed for a class defined by those rate caps.

23       The Court finds that individual issues of reliance will

24  predominate with respect to individual class members' reliance on

25  the alleged fraud.  Accordingly, the Court denies Plaintiffs'

26  motion for class certification with respect to the Excessive Lease

27  Amount Class's RICO, RICO conspiracy and fraud claims.

28

2.   Negligent Misrepresentation Claim

Leasing Defendants first argue that the Excessive Lease Amount Class's negligent misrepresentation claim fails on the merits because there is no evidence that they, as Leasing Defendants, and not Merchant Services Defendants, made any affirmative misrepresentations or had any duty to disclose the alleged misrepresentations by Merchant Services Defendants.  "A negligent misrepresentation claim requires a positive assertion, not merely an omission." Lopez v. Nissan North America, 201 Cal. App. 4th 572, 596 (2011) (internal quotation marks omitted).  At oral argument, Plaintiffs did not dispute this requirement. Plaintiffs also concede that Leasing Defendants did not have any interactions with the putative class members.  Because Plaintiffs concede that they cannot maintain a claim against Leasing Defendants for negligent misrepresentation, there are no common issues for the Court to decide.

3.   UCL Claim

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994). In addition, a business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal. 4th 798, 827 (2003).

United States District Court
For the Northern District of California

In the 3AC, Plaintiffs allege both violations of law and other unfair business practices as the basis for their UCL claims. Leasing Defendants assert that common issues do not predominate for the Excessive Lease Amount California subclass because the claim will require individualized proof of reliance and causation.[5]  Plaintiffs counter that only class representatives need to demonstrate reliance.  However, California law requires a UCL claim to allege actual reliance.  In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009).  "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct.  A plaintiff may establish that the defendant's misrepresentation is an 'immediate cause' of the plaintiff's conduct by showing that in its absence the plaintiff 'in all reasonable probability' would not have engaged in the injury-producing conduct."  Id. at 326 (citations omitted).

As discussed above, the Court rejects Plaintiffs' argument that reliance can be presumed for every merchant whose monthly lease amount exceeded Northern Leasing's standard rate caps. Plaintiffs provide no other grounds for presuming reliance on a class-wide basis for the Excessive Lease Amount California

---

[5] Leasing Defendants also argue that Plaintiffs lack standing for all of the proposed classes' UCL claims because Plaintiffs are merchants who have entered into commercial contracts with Leasing Defendants.  However, as the court in In re Yahoo! Litigation, 251 F.R.D. 459, 475 (C.D. Cal. 2008), held, where a proposed class of plaintiffs is not "uniformly sophisticated and capable of seeking relief against defendants," the fact that the plaintiffs are businesses does not establish that they lack standing.  Here, Plaintiffs are relatively unsophisticated small businesses.

subclass.  Accordingly, the Court finds that individual issues regarding reliance will predominate with respect to the Excessive Lease Amount California subclass.

C.   Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted).  The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  Rule 23(a)(3) is satisfied where the class representatives have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct.  Id.  Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)).

Plaintiffs assert that they all have claims typical of the Excessive Lease Amount Class because "all their leases were for amounts that exceeded the standard monthly lease caps." Plaintiffs' Amended Motion for Class Certification at 33. However, this simply shows that Plaintiffs would be members of the class if certified.  As Plaintiffs themselves argue and as

United States District Court
For the Northern District of California

discussed above, the Excessive Lease Class's claims are not substantively based on the lease caps.  Accordingly, Plaintiffs have not demonstrated that their claims are typical of the proposed class.  Plaintiffs have also failed to meet their burden with respect to typicality for the Excessive Lease Amount Class.

D.   Adequacy

Rule 23(a)(4) establishes as a prerequisite for class certification that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Plaintiffs assert that they will fairly and adequately protect the interests of the class.  Leasing Defendants do not contest this.  The Court finds Plaintiffs have met their burden on this prong.

E.   Superiority

In addition to predominance, Rule 23(b)(3) requires that Plaintiffs establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As discussed above, the Court finds that individual issues, particularly issues related to Plaintiffs' reliance on Leasing Defendants' alleged fraud, will predominate.  Accordingly, a class action is not superior with respect to Plaintiffs' proposed Excessive Lease Amount Class or the Excessive Lease Amount California subclass and the Court denies certification of these classes.

II.  SKS Post-Lease Expiration Class

Plaintiffs seek certification of a SKS Post-Lease Expiration class to bring RICO and RICO conspiracy claims, and a SKS Post-Lease Expiration California subclass to bring a UCL claim.

United States District Court
For the Northern District of California

A.   Numerosity

Plaintiffs assert that there would be more than 100,000 members in the SKS Post-Lease Expiration Class.  Leasing Defendants do not contest this figure.  The Court finds that Plaintiffs satisfy the numerosity requirement with respect to the SKS Post-Lease Expiration Class.

B.   Commonality and Predominance

1.   RICO and RICO Conspiracy Claims

As discussed above, the Court finds that individual issues predominate with respect to Plaintiffs' alleged RICO and RICO conspiracy claims.  Accordingly, the Court will not certify the SKS Post-Lease Expiration class to pursue such claims.

2.   UCL Claim

Plaintiffs' UCL claim on behalf of the proposed SKS Post-Lease Expiration California subclass is based on the theory that Leasing Defendants conspired with one another to defraud former lessees by collecting purported taxes that were not actually due or paid to any taxing authority.  Plaintiffs allege that Leasing Defendants conducted a faulty simulation to determine how much to charge those former lessees and compiled the results on a spreadsheet referred to as Schedule 1.  Plaintiffs further allege that Leasing Defendants made or attempted to make unauthorized ACH deductions from merchants' bank accounts in their efforts to collect the purported taxes.

The Court finds that common questions exist and predominate. Such issues include the propriety of Leasing Defendants' simulation to determine whether taxes were due and whether class

United States District Court
For the Northern District of California

members' form ACH agreements authorized the deductions after their leases had expired.

### 3.   Defenses

Leasing Defendants assert that Plaintiffs cannot meet their burden with respect to commonality and predominance as to any of their classes and claims because individualized inquiries are necessary to determine whether individual class members are subject to various defenses.  First Leasing Defendants argue that class action waivers or one year limitations on the commencement of actions appear in the leases of "many" putative class members. However, the legal questions of whether the limitations are enforceable are themselves common questions of law.  Moreover, it appears that Leasing Defendants maintain records of which leases contain each type of provision, allowing Leasing Defendants to determine to which putative class member each contractual defense applies.  See, e.g., Kravic Dec. at ¶ 41 ("Leasing Defendants estimate that at least 214,000 leases executed during the Putative Class Period since contain a limitation on action provision of one year.")

Leasing Defendants next argue that many putative class members are subject to the defense of res judicata because Leasing Defendants have obtained judgments against them or releases of claims from them.  However, the Court finds that the existence of these judgments and releases does not detract from the predominance of common questions of law to the extent they exist. If the case settles or any of the classes prevail on their claims, Leasing Defendants can use their records to assert defenses they believe apply to individual class members during the claims

process.   Accordingly, the Court finds that these defenses do not defeat commonality and predominance where Plaintiffs have established them.

    C.   Typicality

    As noted above, the SKS Post-Lease Expiration Class is defined as "All persons and businesses whose lease numbers appeared on Schedule 1."  Plaintiffs' Amended Motion for Class Certification at x.  Schedule 1 is a document created by Leasing Defendants as a result of a simulation they conducted to determine the former lessees from which they would seek taxes.

    Leasing Defendants argue that Plaintiff Campbell, the only Plaintiff named as a class representative for this class, lacks standing because Leasing Defendants have not successfully deducted any fees or taxes from her account since her lease expired. Plaintiffs counter that, although Leasing Defendants were not able to deduct money from Plaintiff Campbell's bank account, when she received the notice of debt from Leasing Defendants, she spent time away from her usual work and paid an assistant to assist her in researching and compiling financial records.  The Court finds that this is sufficient to establish that Campbell has standing to pursue a UCL claim.  Although Campbell may not be able to collect money damages, she can seek injunctive relief.  If liability is established, those individuals in the class who can demonstrate

United States District Court
For the Northern District of California

that they have had fees deducted from their bank accounts after their leases were terminated can also seek money damages.[6]

D.    Adequacy

Plaintiffs assert that they will fairly and adequately protect the interests of the SKS Post-Lease Expiration class. Leasing Defendants do not contest this.  The Court finds Plaintiffs have met their burden on this prong.

E.    Superiority

As discussed above, the Court finds that individual issues will predominate with respect to Plaintiffs' RICO and RICO conspiracy claims.  Accordingly, a class action is not superior with respect to Plaintiffs' proposed SKS Post-Lease Expiration Class and the Court denies certification of this class.

However, the members of the SKS Post-Lease Expiration California subclass satisfy the superiority prerequisite for their UCL claim.  The risks, small recovery, and relatively high costs

---

[6] Leasing Defendants also argue that all potential members of the SKS Post-Lease Expiration Class lack standing because they are all eligible for restitution for all amounts deducted from their bank accounts as part of the settlement of People of the State of New York v. SKS Associates LLC, et al., Supreme Court of State of N.Y., Index No. 400909/12.  However, to the extent that these individuals are entitled to restitution, Plaintiffs correctly argue that the New York settlement released only the New York state law claims raised by the New York State Attorney General in that case.  Moreover, the Consent Decree specifically provides that nothing contained within it "shall be construed as to deprive any individual or entity of any private right of action under the law."  Consent Decree at ¶ 33.  To the extent members of the SKS Post-Lease Expiration Class receive restitution from the New York settlement, that amount shall simply be deducted from any recovery in this case.

of litigation here make it unlikely that individual merchants will pursue claims against Leasing Defendants independently.  A class action, however, "would offer those with small claims the opportunity for meaningful redress."  Sullivan v. Kelly Services, Inc., 268 F.R.D. 356, 365 (N.D. Cal. 2010).  In addition, a class action would more efficiently resolve the numerous legal and factual questions relevant to this subclass's claim against Leasing Defendants.  Accordingly, the class action is superior to individual litigation for this subclass.

The Court certifies the SKS Post-Lease Expiration California subclass to pursue its UCL claim.

III. Property Tax Fee Non-Disclosure Class

Plaintiffs seek certification of a Property Tax Fee Non-Disclosure class (Non-Disclosure class) to bring RICO, RICO conspiracy and fraud claims and breach of contract claims. Plaintiffs further seek certification of a Non-Disclosure California subclass to bring negligent misrepresentation, breach of the duty of good faith and fair dealing and UCL claims.  These claims are based on Plaintiffs' allegations that Leasing Defendants assessed administrative fees not provided for in the proposed class members' leases.

A.   Numerosity

Plaintiffs estimate that there are more than 10,000 members of the Non-Disclosure class.  Leasing Defendants do not dispute this figure.  The Court finds that Plaintiffs have met their burden with respect to numerosity for this class.

United States District Court
For the Northern District of California

B.   Commonality and Predominance

1.   RICO, RICO Conspiracy and Fraud Claims

As discussed above, the Court finds that Plaintiffs have failed to establish commonality or predominance with respect to any of their RICO, RICO conspiracy or fraud claims.  Accordingly, the Court denies the motion for certification with respect to the Non-Disclosure class's RICO, RICO conspiracy and fraud claims.

2.   Breach of Contract Claim

The elements of a breach of contract claim are (1) the existence of a contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach; and (4) damages to the plaintiff as a result of the breach.  Armstrong Petrol. Corp. v. Tri-Valley Oil & Gas Co., 116 Cal. App. 4th 1375, 1391 n.6 (2004).  Plaintiffs assert that common questions regarding the interpretation of the form leases are likely to drive the outcome of this contract claim, specifically whether the leases authorize Leasing Defendants to assess the twenty-five dollar administrative fee.  Plaintiffs allege that the members of this proposed class entered into leases that provided, "Lessor will add such taxes, fees, and other charges to the monthly payments hereunder including handling and administrative costs."  See, e.g., Simplicio Ex. I.  Plaintiffs further argue, "There is no evidence that Defendants incurred" such costs.  Amended Motion for Class Certification at 17-18.

However, while the amount of the fee was not disclosed in the potential class members' leases, the fact that a fee could be assessed was disclosed.  Accordingly, individual analysis would be required with respect to whether the twenty-five dollar fee

24

assessed was appropriate in each merchant's case.  Such analysis might require information about the actual costs incurred by Leasing Defendants.  The Court finds that Plaintiffs have failed to establish that common questions of fact and law will predominate with respect to the Non-Disclosure class's breach of contract claim.

### 3.   Negligent Misrepresentation

Plaintiffs seek certification of a California subclass to bring a negligent misrepresentation claim.  As discussed above, Plaintiffs concede that they cannot maintain a negligent misrepresentation claim absent an affirmative misstatement by Leasing Defendants.  Plaintiffs further concede that Leasing Defendants had no direct contact with them.  Because Plaintiffs cannot maintain this claim, there are no common issues of law or fact.

### 4.   Claim for Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs also seek certification of a California subclass to bring a claim for breach of the duty of good faith and fair dealing.  Under California law, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  Comunale v. Traders & Gen. Ins. Co., 50 Cal. 2d 654, 658 (1958).  To prevail on a claim for breach of the implied covenant, the claimant must establish "that the conduct of the [opposing party], whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities,

United States District Court
For the Northern District of California

prompted not by an honest mistake, bad judgment or negligence but
rather by a conscious and deliberate act." Careau & Co. v.
Security Pac. Business Credit, Inc., 222 Cal. App. 3d 1371, 1395
(1990).

The allegations upon which this duty of good faith and fair
dealing claim is based are the same as those supporting the breach
of contract claims.  As discussed above, resolution of these
claims will require individualized analysis with respect to
whether the twenty-five dollar fees were properly assessed.
Accordingly, the Court finds that common issues of fact and law do
not predominate with respect to the proposed Non-Disclosure
California subclass's claim for breach of the duty of good faith
and fair dealing.

5.   UCL Claim

Plaintiffs' UCL claim on behalf of the proposed Non-
Disclosure California subclass is based on the theory that Leasing
Defendants knowingly assessed fees not provided for in the
merchants' leases.  However, the allegations upon which the UCL
claim is based are the same as those supporting the breach of
contract claim and the claim for the breach of the duty of good
faith and fair dealing.  Resolution of these claims will require
individualized analysis with respect to the propriety of the
twenty-five dollar fees.  The Court finds that common issues of
fact and law do not predominate with respect to the proposed Non-
Disclosure California subclass's UCL claim.

C.   Typicality

Plaintiffs assert that each of the proposed class
representatives for the Non-Disclosure class was enrolled in a

**United States District Court**
For the Northern District of California

1  lease that did not provide for a twenty-five dollar administrative

2  fee and each of the proposed representatives was assessed a

3  twenty-five dollar fee via automatic debit from its bank account.

4  The Court finds that Plaintiffs have met their burden with respect

5  to typicality.

6       D.    Adequacy

7       Plaintiffs assert that they will fairly and adequately

8  protect the interests of the class.  Leasing Defendants do not

9  contest this.  The Court finds Plaintiffs have met their burden on

10  this prong.

11       E.    Superiority

12       As discussed above, the Court finds that individual issues

13  will predominate for the Non-Disclosure Class's claims.

14  Accordingly a class action is not superior with respect to

15  Plaintiffs' proposed Non-Disclosure Class or the Non-Disclosure

16  California subclass and the Court does not certify those classes.

17  IV.  Property Tax Equipment Cost Basis Class

18       Plaintiffs seek certification of a Property Tax Equipment

19  Cost Basis (Equipment Cost Basis) class to bring RICO, RICO

20  conspiracy, fraud and breach of contract claims.  Plaintiffs

21  further seek certification of an Equipment Cost Basis California

22  subclass to bring negligent misrepresentation, breach of the duty

23  of good faith and fair dealing and UCL claims.  These claims are

24  based on Plaintiffs' allegations that Leasing Defendants

25  improperly assessed property taxes based on the purportedly

26  inflated "acquisition cost," including all amounts Leasing

27  Defendants paid to acquire a merchant's lease from Merchant

28

United States District Court
For the Northern District of California

Services Defendants, rather than the actual value of the equipment. Plaintiffs further allege that, even after changing their practice in late 2009 to assess taxes based on equipment cost, Leasing Defendants did not inform the merchants that they had changed their practices or provide any refund of the previously assessed taxes.

### A. Numerosity

Plaintiffs estimate that there are more than 10,000 members of the Equipment Cost Basis class. Leasing Defendants do not dispute this figure. The Court finds that Plaintiffs have met their burden with respect to numerosity for this class.

### B. Commonality and Predominance

#### 1. RICO, RICO Conspiracy and Fraud Claims

As discussed above, the Court finds that Plaintiffs have failed to establish commonality or predominance with respect to any of their RICO, RICO conspiracy or fraud claims. Accordingly, the Court denies the motion for certification with respect to this class's RICO, RICO conspiracy and fraud claims.

#### 2. Breach of Contract Claim

Plaintiffs assert that the predominant common question for the proposed Equipment Cost Basis class's breach of contract claim is "whether Defendants charged amounts greater than property taxes actually owed." Amended Motion for Class Certification at 43. Leasing Defendants counter that common questions cannot predominate for the Equipment Cost Basis Class, because Plaintiffs will be required to demonstrate what taxes each class member should have paid in order to determine whether it was charged in

excess of that amount.  To do so, Leasing Defendants argue that they will need to make individualized inquiries under the laws of over 3,500 taxing jurisdictions in which Leasing Defendants are required to pay personal property taxes.

However, as Plaintiffs point out, the predominant questions are whether Leasing Defendants' use of the "acquisition cost" to calculate taxes was improper, whether Leasing Defendants had a fiduciary duty to Plaintiffs to calculate their taxes properly when they assumed the duty to assess and pay taxes on Plaintiffs' behalf and whether Leasing Defendants breached that duty by using the "acquisition cost" to calculate taxes.  No matter what the tax rate is in a given jurisdiction, using an inflated figure to calculate taxes would lead to an incorrect assessment. Accordingly, the Court finds that Plaintiffs have met their burden with respect to commonality and predominance for the Property Tax Equipment Cost Basis Class's breach of contract claim.

### 3.   Negligent Misrepresentation Claim

Plaintiffs seek certification of a California Equipment Cost Basis subclass to bring a negligent misrepresentation claim.  As discussed above, Plaintiffs concede that they cannot maintain a negligent misrepresentation claim absent an affirmative misstatement by Leasing Defendants.  Plaintiffs further concede that Leasing Defendants had no direct contact with them.  Because Plaintiffs cannot maintain this claim, there are no common issues of law or fact.

4.   Claim for Breach of the Duty of Good Faith and Fair Dealing

Plaintiffs also seek certification of a California Equipment Cost Basis subclass to bring a claim for breach of the duty of good faith and fair dealing.  The same common questions of fact and law that will drive resolution of the Equipment Cost Basis class's breach of contract claims will drive the resolution of the subclass's claim for breach of the duty of good faith and fair dealing.  The Court finds that Plaintiffs have established commonality and predominance with respect to the Equipment Cost Basis California subclass's claim for breach of the covenant of good faith and fair dealing.

5.   UCL Claim

Plaintiffs' UCL claim on behalf of the proposed Equipment Cost Basis California subclass is based on the theory that Leasing Defendants knowingly and improperly calculated property taxes based on the "acquisition cost" of the lease rather than the value of the equipment itself.  Common questions exist and predominate, including whether it was permissible for Leasing Defendants to calculate property taxes based on the "acquisition cost."  Similarly, there is a common question with respect to Leasing Defendants' state of mind when they calculated those taxes.

The Court finds that Plaintiffs have established commonality and predominance with respect to the Equipment Cost Basis California subclass's UCL claims.

C.   Typicality

Plaintiffs assert that each of the proposed class representatives for the Equipment Cost Basis class was assessed

1  property taxes that were calculated using the "acquisition cost"

2  rather than the value of the equipment itself.  The Court finds

3  that Plaintiffs have met their burden on this prong.

4       D.   Adequacy

5       Plaintiffs assert that they will fairly and adequately

6  protect the interests of the class.  Leasing Defendants do not

7  contest this.  The Court finds Plaintiffs have met their burden on

8  this prong.

9       E.   Superiority

10      Plaintiffs satisfy the superiority prerequisite for the

11  Equipment Cost Basis class's breach of contract claim and the

12  Equipment Cost Basis California subclass's claim for breach of the

13  duty of good faith and fair dealing and UCL claim.  The risks,

14  small recovery, and relatively high costs of litigation here make

15  it unlikely that individual merchants will pursue claims against

16  Leasing Defendants independently.  A class action, however, "would

17  offer those with small claims the opportunity for meaningful

18  redress."  Sullivan v. Kelly Services, Inc., 268 F.R.D. 356, 365

19  (N.D. Cal. 2010).  In addition, a class action would more

20  efficiently resolve the numerous legal and factual questions

21  relevant to these classes' claims against Leasing Defendants.

22  Accordingly, the class action is superior to individual litigation

23  for this class.

24      The Court certifies the Equipment Cost Basis Class to pursue

25  its breach of contract claim and the Equipment Costs Basis

26  California subclass to pursue its claim for breach of the duty of

27  good faith and fair dealing and UCL claim.

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

V.   Credit Monitoring Class

Plaintiffs seek certification of a Credit Monitoring class to bring a claim pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., and a Credit Monitoring California subclass to bring a UCL claim.  At the hearing on the motion for class certification, Plaintiffs stated that the Credit Monitoring class itself is "a subclass of" the Excessive Lease Amount class and suggested that certification of the Credit Monitoring class depended on certification of the Excessive Lease Amount class. Transcript at 49.  Indeed, the Credit Monitoring class's claims rely on a presumption that it was inappropriate for Leasing Defendants to try to collect "amounts due on a lease whose monthly amounts exceeds Northern Leasing's standard rate caps."  As discussed above, the Court cannot presume that such leases are unenforceable.  Accordingly, resolution of the proposed Credit Monitoring class's claims would require individual inquiries as to the enforceability of each class member's lease.  The Court denies certification of the Credit Monitoring class.

VII. Appointment of Class Counsel

Rule 23(g)(1) of the Federal Rules of Civil Procedure provides in relevant part:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:
>
> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).

Plaintiffs' counsel has offered evidence that they are experienced in class action litigation and appeals and that they have committed considerable time and resources to the litigation of this case to date.  Leasing Defendants do not contest Plaintiffs' request to have their counsel appointed as class counsel.  Accordingly, the Court will appoint Plaintiffs' counsel as class counsel.

VIII. Compliance with the Court's Local Rules

Both parties include extensive footnotes that do not comply with the Local Rule's font requirements.  See Local Rule 3-4(c)(2).  Leasing Defendants' opposition contains thirty-seven footnotes in text smaller than the required 12-point font. Plaintiffs' reply similarly contains thirty footnotes in text smaller than the required 12-point font.  Among those footnotes are several that are the length of a full paragraph.  Leasing

**United States District Court**
For the Northern District of California

Defendants include one footnote that is two full paragraphs long.

In their Sur-Reply, Leasing Defendants also include multiple citations to their Opposition generally without providing a specific page number. See, e.g. Leasing Defendants' Sur-Reply at footnotes 21, 36, 37, 38 and 39. Such citations do little to aid the Court in assessing the parties' arguments. Finally, Leasing Defendants improperly use attorney declarations to summarize deposition testimony and make factual and legal arguments. See, e.g., Nigro Dec. at ¶ 14. This is a clear violation of Civil Local Rule 7-5(b) which provides, "An affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument."

The parties are reminded of their duty to abide by the Local Rules.

CONCLUSION

For the foregoing reasons, the Court GRANTS in part Plaintiffs' motion for class certification, to be appointed as class representatives and to appoint their counsel as class counsel. The Court certifies the following two classes: (1) A California subclass of the proposed SKS Post-Lease Expiration Class, which is defined as: "All persons and businesses whose lease numbers appeared on Schedule 1" to pursue a UCL claim. (2) The Property Tax Equipment Cost Basis Class, which is defined as: "All persons and businesses who from March 26, 2006 to the present paid any Leasing Defendants property taxes based on a cost greater than the 'equipment cost'" to pursue a breach of contract

claim and its California subclass to pursue a claim for breach of the duty of good faith and fair dealing and a UCL claim.

    IT IS SO ORDERED.

Dated: 12/20/2013

CLAUDIA WILKEN
United States District Judge