1

GUTRIDE SAFIER LLP
ADAM J. GUTRIDE (State Bar No. 181446)

2

SETH A. SAFIER (State Bar No. 197427)
KRISTEN SIMPLICIO (State Bar No. 263291)

3

100 Pine Street, Suite 1250
San Francisco, California 94111

4

Telephone: (415) 336-6545

5

Facsimile:  (415) 449-6469

6

*Class Counsel*

7

8

UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12

RAINBOW BUSINESS SOLUTIONS, D/B/A
PRECISION TUNE AUTO CARE, ET AL.

13

Plaintiffs,

14

v.

15

MERCHANT SERVICES, INC.; ET AL.,

16

Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: CV 10-01993 CW

**DECLARATION OF ADAM
GUTRIDE IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAINTIFFS'
APPLICATION FOR ATTORNEYS'
FEES, COSTS AND INCENTIVE
AWARDS**

DATE:        November 28, 2017
TIME:         2:30 p.m.
CTRM:       TBD
JUDGE:      Hon. Claudia Wilken

I, Adam Gutride, declare as follows:

1.      I am a member of this Court and attorney of record for Plaintiffs in this action.  I make this declaration of my own personal knowledge and could testify competently to the facts stated herein.

2.      I make this declaration in support of Plaintiffs' motion for final approval of class action settlement and application for attorneys' fees, costs and incentive awards ("Motion").  In that regard, I discuss, in the following order: (a) the history of this litigation which includes a summary description of the legal services provided by my law firm, Gutride Safier LLP ("GSLLP") and our co-counsel in this litigation to date; (b) a summary of the settlement negotiations and Settlement; (c) the risks borne by GSLLP; (d) the time, rate, expenses and other data underlying this Motion; and (e) GSLLP's continuing obligations in this litigation and under the Settlement Agreement.

3.      GSLLP initiated this litigation with the assistance of Michael Sweet, a partner at the McNutt Law Group LLP ("McNutt"), which was co-counsel of record for Plaintiffs. In May 2011, Mr. Sweet joined Meyers Nave LLP ("Meyers Nave"), which agreed to substitute for McNutt as co-counsel of record for Plaintiffs. In January 2012, Meyers Nave stopped performing work on the matter, and in July 2012, a formal motion to withdraw was filed. Since January 2012, GSLLP has been the sole firm performing work for Plaintiffs on this case.

**A.      History of the Litigation**

      **1.      Investigation and Early Stages of Litigation**

4.      On March 26, 2010, GSLLP and McNutt filed a nationwide class action complaint entitled *Just Film, Inc., et. al v. Merchant Services, Inc., et al* in the Superior Court of California, City and County of San Francisco, Case No. CGC-10-498225. The Complaint was filed on behalf of two businesses and their owners against 35 entities and individuals in the credit card processing and equipment leasing industry, including the remaining Defendants in this action ("Leasing Defendants") as well as 10 defendants with whom Plaintiffs settled in 2013 ("Merchant Services Defendants") (Leasing Defendants, Merchant Services Defendants, and other parties named in the suit but dismissed for various reasons shall be referred to as "Defendants").

5.      In the Complaint, Plaintiffs pled the following statutory and common-law claims: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); fraud, deceit and/or misrepresentation; negligent misrepresentation; breach of contract; breach of the duty of good faith; false advertising under California Business and Professions Code sections 17500, *et seq.*; breach of contract; false advertising; and unfair business practices under California Business and Professions Code sections 17200, *et seq*.

6.      Prior to drafting, filing and serving the Complaint, GSLLP spent time communicating with the Plaintiffs concerning their claims, gathering their documentation and negotiating retainer agreements with them.  GSLLP also undertook extensive pre-filing investigation, including without limitation, communicating with other business owners and reviewing their documentation; researching, tracking and analyzing Defendants' agreements and Former Defendants' marketing materials; and analyzing the lengthy terms and conditions associated with the multiple contracts for each business.  GSLLP also conducted extensive investigation into understanding the interchange, the system of electronic payments put in place and regulated by Visa and MasterCard.  McNutt assisted with some of this work.  Throughout this litigation, GSLLP has continued to monitor, research and review such materials.

7.      GSLLP also undertook extensive research into Defendants' identities, true corporate names, locations of operation, and relationships to one another.  For example, because Merchant Services Defendants' advertising materials merely identified themselves as "Merchant Services," Plaintiffs' counsel needed to analyze and compare information regarding dozens of entities with similar names to determine which "Merchant Services" was the proper defendant, where its registered agent was located, and where it operated. Similarly, Leasing Defendants used their own system of shell companies with confusing names, such as "MBF Leasing" and "MBF Merchant Capital," which required GSLLP also researched and tracked.  As a result, effecting service of all 35 Defendants was a time consuming and expensive process.

8.      On May 11, 2010, several of the defendants removed this case from state court, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), *et seq*.  (Dkt.# 1.) GSLLP additionally researched, but did not file, a motion to remand.

### 2.   Amended Complaints; Initial Discovery

9.      GSLPP and McNutt then negotiated and drafted case management stipulations and an electronic service agreement with counsel for many of the Defendants.  These stipulations were the first of dozens of stipulations that GSLLP drafted, negotiated and/or filed in this litigation.

10.      Following removal, nearly all the Defendants moved to dismiss.  (Dkts.## 41, 45-52, 55, 58-61, 66-71.)  GSLLP reviewed those motions.   It then conducted extensive research regarding the arguments set forth in the motions.  McNutt assisted with some of this research. GSLLP also continued to investigate the claims, and interviewed witnesses, including several former sales representatives of the Merchant Services Defendants.  In addition, by this point, GSLLP started to be contacted by many putative class members who sought help and representation as well as by other persons with knowledge of the allegations and Defendants' conduct.  Based on the new information obtained from these persons and other witnesses, Plaintiffs filed an 89-page First Amended Complaint ("FAC"), including a new claim for fraudulent conveyance, in response to the pending motions to dismiss.  (Dkt.# 91.)  In the FAC, three additional businesses and their owners were added to the lawsuit, as named representatives. Plaintiffs also withdrew some defendants, but added additional Defendants.

11.      Defendants again moved to dismiss portions of the FAC.  (Dkts.## 108-16, 120-24.) In addition, a group of then-parties to the case, the payment processors, and their affiliated entities (the "TransFirst Defendants"), moved to compel arbitration.  GSLLP researched, drafted, and filed a consolidated opposition to those motions.  McNutt assisted with some of this work.

12.      On September 16, 2010, the Court held a hearing on the motions to dismiss and motion to compel arbitration, as well as a case management conference.  The Court ordered discovery on issues relating to corporate relationships and forgery, and set a briefing scheduling on the TransFirst Defendants' motion to compel arbitration.  The Court also granted the motions to dismiss, with leave to amend, and suggested that the parties work together to resolve Plaintiffs' concerns about difficulties identifying responsible parties, and further suggested that certain Defendants consider entering into tolling agreements with Plaintiffs.  (Dkt.# 179.)

13.      Around this time, GSLPP and McNutt researched and drafted preliminary

discovery requests and propounded them on all remaining Defendants.

14.     When Defendants responded, GSLLP and McNutt reviewed the responses, and engaged in a lengthy meet and confer process.  As part of this process, McNutt filed a motion to compel against Merchant Services Defendant Fiona Walshe.  That motion was granted.

15.     In the fall and winter of 2010 and 2011, GSLLP researched and drafted a proposed amended complaint, a draft of which was circulated to Defendants in November 2010. GSLLP also undertook extensive research into Defendants' identities, true corporate names, locations of operation, and relationships to one another.  McNutt assisted with some of this work.  GSLLP also began negotiating tolling agreements with certain Defendants in exchange for limited discovery.  After Plaintiffs obtained key discovery from the TransFirst Defendants and dismissed them from the action, the Merchant Services Defendants sought to enforce the arbitration provision in the Plaintiffs' purported contracts with TransFirst. They also moved for summary judgment on the question of whether Plaintiffs' contracts had been forged in March 2011. (Dkt.## 195-99.)  As a result, GSLLP engaged in additional research and investigation and drafted oppositions to the motions.  The Court denied the motions.  (Dkt.# 200.)

16.     Beginning in early March 2011, GSLLP began receiving calls from former lessees who believed that a company called "SKS" had debited or attempted to debit their bank accounts. GSLLP researched these claims.

17.     On March 18, 2011, GSLLP filed a 120-page second amended complaint ("SAC"), which re-pled all of the above claims except the claim for fraudulent conveyance. The SAC added common law claims for conversion and abuse of process, and claims under the Fair Credit Reporting Act ("FCRA").  (Dkt.# 207.)  Plaintiff Erin Campbell was added to the lawsuit, as was Defendant SKS Associates. Campbell, a former lessee, asserted UCL and RICO claims against Leasing Defendants in response to their efforts to collect funds for purported back taxes and fees.

### 3.     SKS Motion Practice, Injunction And Interlocutory Appeal

18.     On March 22, 2011, GSLLP and McNutt researched, prepared, and filed a Motion for Preliminary Injunction to enjoin the SKS debt collection scheme. (Dkt. # 208.) In the weeks that followed, GSLLP engaged in numerous discussions with counsel for Leasing Defendants

regarding service on SKS Associates, LLC; the relief sought under the motion; the briefing schedule; and other case management issues. GSLLP also continued to investigate the SKS scheme. As part of their research into legal and factual theories, they spoke with dozens of class members on a daily basis, as well as third parties with information about banking regulations. They also investigated Pushpin Holdings, LLC, identified as the owner of SKS Associates in its Certificate of Interested Entities. (Dkt. # 225.)

19.    On April 6, 2011, GSLLP and McNutt researched, prepared and filed an Ex Parte Request for a Temporary Restraining Order. (Dkt. # 231.) After the TRO was entered on April 8, GSLLP communicated that information to the public to assist victims.

20.    The Leasing Defendants opposed the motion for a preliminary injunction, and with it, submitted the Declaration of Jonathan Mirsky. GSLLP prepared a reply brief, which involved extensive analysis into Mirsky's statements and supporting evidence. GSLLP also prepared for and argued the motion at oral argument. After the preliminary injunction was entered, GSLLP communicated that information to the public.

21.    The Leasing Defendants also filed a motion to compel arbitration, which this Court denied (Dkt.# 253). GSLLP researched and drafted the opposition to that motion. GSLPP also prepared for and argued against the motion at oral argument.

22.    Leasing Defendants then appealed the orders granting a preliminary injunction and denying the motion to compel arbitration. GSLLP researched and prepared the answering brief. McNutt assisted with some of this work. GSLLP also prepared for and attended oral arguments. The orders were upheld.

23.    GSLLP has spent time monitoring compliance with the injunction and communicating to class members about it.

**4.    Other Motions to Compel Arbitration; Motions to Dismiss**

24.    In response to the Second Amended Complaint, Merchant Services Defendants filed a second motion to compel arbitration.  (Dkt.## 221-24.)  GSLPP researched, drafted, and filed an opposition. GSLLP also prepared for, and attended, oral argument.  The Court denied the Merchant Services Defendants' second motion to compel arbitration.  (Dkt.# 292.)

25.     All Defendants moved to dismiss portions of the SAC.  (Dkt.## 245-49.)  GSLLP devoted a significant amount of time toward researching and drafting an opposition to these motions.  McNutt assisted with some of this work.  The Court granted the motions to dismiss in part, dismissing in entirety the abuse of process claim, and permitting each of the other above-listed claims to remain pending against one or more of the Defendants, but dismissing Northern Leasing Systems from the RICO claim.  (Dkt.# 292.)  GSLLP reviewed that order and devised a litigation strategy.

26.     On September 30, 2011, Defendants answered the SAC.  GSLLP reviewed the answers.

### 5.     Motions to Stay

27.     While Leading Defendants' appeal on the motion to compel arbitration and motion for preliminary injunction was pending, they twice moved to stay the litigation. (Dkt.## 283, 303.)  GSLLP researched and prepared oppositions to both those motions.  (Dkt.## 287, 305.)  Both motions to stay were ultimately denied by this Court.  (Dkt.## 293, 322.)

### 6.     Written Discovery and Motion Practice

28.     On October 11, 2011, GSLLP drafted and served Plaintiffs' initial disclosures.  GSLLP produced documents in conjunction with Plaintiffs' initial disclosures.  GSLLP also reviewed Defendants' initial disclosures. Meyers Nave assisted with this work.

29.     In October 2011, GSLLP drafted Plaintiffs' first requests for the production of documents and first set of interrogatories for all 18 Defendants. GSLLP also drafted and noticed 30(b)(6) depositions for all eight of the entity defendants. GSLLP drafted electronic search terms, and counsel for all parties communicated extensively about electronic search terms.  Meyers Nave assisted with this work.

30.     GSLLP and Meyers Nave reviewed the discovery responses from the 18 Defendants and drafted meet and confer letters. Numerous meet and confer sessions occurred and much correspondence was exchanged on the matter.

31.     In 2011 and 2012, GSLLP engaged in a lengthy meet-and-confer regarding Defendants' responses to Plaintiffs' first set of requests. Plaintiffs eventually filed motions to

compel against all Defendants. (Dkt. #341, 342) Negotiations continued during the briefing. In a court-ordered meet-and-confer session on the day of the hearing, many of the issues were resolved in Plaintiffs' favor. Other issues required additional time and court assistance to resolve, but ultimately were decided in Plaintiffs' favor.  (Dkt.## 355, 356, 357, 364.)

32.     In February 2012, GSLLP propounded a second set of requests for production. GSLLP reviewed Defendants' objections and engaged in lengthy meet-and-confer process.  On April 24, 2012, GSLLP briefed a motion to compel against the Leasing Defendants. (Dkt. # 365.) After Leasing Defendants did not comply with the terms of the order of the first motion to compel, GSLLP filed another motion to compel on May 15, 2012. In conjunction with both of these motions, the parties engaged in numerous negotiations, as well as discussions regarding the briefing and hearing schedule. Both motions were resolved at a hearing on May 29, 2012 in Plaintiffs' favor. (Dkt. # 376, 377, 380.)

33.     As a result of this work, Plaintiffs received and reviewed well over a million pages of documents and 30GB of databases from Defendants.  GSLLP invested significant time reviewing these documents.  In addition, GSLLP also spent time meeting-and-conferring with Defendants about redactions, privilege issues, confidentiality designations, and other production concerns.

34.     In April 2012, Leasing Defendants also served documents requests and interrogatories on all the Plaintiffs.  GSLLP worked extensively with the Plaintiffs, and then drafted and served responses to Defendants' discovery requests.

35.     In December 2012 and January 2013, Plaintiffs filed an additional motion to compel against Leasing Defendants, seeking documents pertaining to the New York Attorney General's lawsuit. (Dkt. # 428) GSLLP also filed a motion for sanctions, seeking documents that Leasing Defendants were to have produced pursuant to the orders following the three previous motions to compel, including emails relating to the scheme and additional documents evidencing payments to taxing authorities. (Dkt. # 429.) Both of these motions were resolved favorably for Plaintiffs.

36.     In 2014, Plaintiffs filed two motions to compel production of documents. (Dkt. #

588, 616, 617.) These motions sought information phone records, bank records, and other information relating to the SKS RICO claims. GSLLP was to resolve some of the issues raised in these motions via a stipulation, but GSLLP had to prepare for and attend a hearing on the matter. The remaining issues were resolved in Plaintiff's favor at that hearing. (Dkt. #613.)

### 7.   Third Party Discovery

37.     At various times in the years 2011 through 2014, GSLLP also prepared and served third party discovery on approximately 20 third parties. For example, GSLLP prepared and served subpoenas on the banks and processors used to facilitate the SKS debits, including Teledraft, Inc., ProfitStars, First National Bank of Central Texas and Metro Phoenix Bank, and all three major credit bureaus. Meyers Nave assisted with some of this work. Later, GSLLP subpoenaed additional witnesses, including NACHA, the organization responsible for overseeing the automated clearinghouse through which the Leasing Defendants processed the electronic debits; other shell companies and affiliates of Leasing Defendants; and First Premier Bank of South Dakota.

38.     GSLLP spent time negotiating with these and other third parties about document production.  GSLLP reviewed the document production for all of these third parties. As part of this work, GSLLP spent a significant amount of time researching banking regulations and protocols, NACHA guidelines, and other industry standards.

39.     GSLLP also spent time interviewing witnesses to Defendants' conduct.  For example, GSLLP had numerous conversations with former employees and contractors (including sales representatives) of the Merchant Services Defendants. McNutt assisted with some of this work.

40.     GSLLP also discussed this litigation with several payment processing experts.

41.     GSLLP also had one-on-one conversations, by phone and email, with dozens of putative class members who contacted the firm (with new inquiries coming every week, and often several times per week). GSLLP communicated to these persons information regarding the status of the litigation. It also obtained information from them about their experiences regarding Defendants' debt collection efforts, as well as information about class members' experiences

regarding Merchant Services Defendants' sales pitches and customer service practices.

### 8.   Depositions

42.   GSLLP also prepared Plaintiffs for their depositions, and defended them during ten days of depositions.  Meyers Nave assisted with some of this work, attending all preparation sessions and appearing at five of the ten Plaintiffs' depositions. GSLLP prepared Plaintiff Campbell for her deposition, and defended that deposition.

43.   GSLLP engaged in lengthy negotiations regarding the number of depositions that Plaintiffs would be permitted to take. Defendants initially refused to produce more than 10 witnesses for deposition. After weeks of negotiations, a stipulation was reached.  Later, Defendants stated they would not abide by it. GSLLP then engaged in more negotiations, but the negotiations were unsuccessful. GSLLP accordingly drafted and filed a motion to compel. (Dkt. # 336.) After that motion was filed, Defendants agreed to permit Plaintiffs to depose all Defendants. GSLLP negotiated and drafted a stipulation resolving that motion. (Dkt. # 345.)

44.   In May, June, and July of 2012, GSLLP spent eighteen days deposing Defendants and other witnesses in San Francisco, Irvine, Los Angeles, and New York. Because of the complicated nature of the case, the need to keep track of a large number of documents that could be used as deposition exhibits, and the fact that the depositions were scheduled back-to-back, two attorneys from GSLLP attended and conducted all depositions.

45.   In January 2013, Defendants deposed Plaintiffs' database expert, Robyn Sands. GSLLP prepared her for the deposition, and defended it.  GSLLP also spent significant time negotiating the timing and scope of the deposition and meeting and conferring on other discovery matters relating to that deposition.

46.   In April 2014, Plaintiffs deposed Teledraft, Inc., a payment processor used to conduct the SKS debits. Teledraft had filed for bankruptcy and was to be dissolved that spring. GSLLP spent a significant amount of time working with the bankruptcy attorney to schedule the deposition prior Teledraft's dissolution and to obtain the necessary documents. As the deposition sought information about interpretations of and compliance with highly technical banking regulations, preparation for it was a time-consuming process, necessitating consultations with

other third parties.

**9.    New York Attorney General Action And New York Litigation**

47.    On April 24, 2012, the Office of the Attorney General for the State of New York ("OAG") filed a lawsuit against some of the Leasing Defendants, raising allegations substantially similar to Campbell's, but asserting claims under New York state law. In 2012 and 2013, GSLLP monitored the progress of this litigation and researched the impact of the litigation on the claims of Campbell and the class. GSLLP reviewed briefs and other filings and had several conversations with OAG attorneys to discuss the status of the respective lawsuits. On February 28, 2013, the OAG filed a consent degree, and GSLLP monitored the settlement process on behalf of the class.

48.    On April 13, 2016, the OAG filed a new lawsuit against various Leasing Defendants and their affiliates for their abusive debt collection practices. Like the OAG's 2012 SKS lawsuit, the 2016 lawsuit borrows heavily from this litigation, including specific allegations that Defendants' lease terms are onerous and one-sided; that the credit card equipment leased to consumers by Defendants is valued at only a few hundred dollars (at most), yet lessees are required to pay thousands of dollars for the equipment; that Defendants continues to deduct lease payments from bank accounts for months or years after the lease's initial term; and that Defendants improperly obtain default judgments against lessees. The 2016 lawsuit seeks to vacate default judgments obtained by Defendants and other relief, including but not limited to a permanent injunction prohibiting Northern Leasing, its related entities, and its owners and officers from continuing their deceptive business practices; ordering Northern Leasing to pay restitution to consumers; dissolving Northern Leasing Systems, Inc.; and directing Northern Leasing to notify all three national credit reporting agencies that the default judgments have been vacated and should be removed from consumers' credit reports. GSLLP has communicated with the OAG's office about this lawsuit and has reviewed and continues to review the filings and developments in that case.

49.    During the course of this litigation, other class action and individual lawsuits were being litigated against Defendants. These cases included *Pludeman et al. v. Northern Leasing*

*Systems, Inc.,* Index No. 04/101059, Supreme Court of the State of New York (Cty of New York); *Serin et al. v. Northern Leasing Systems, Inc., et al.,* Case No. 06 CV 1625 (S.D.N.Y.); *Gagasoules et al., v. MBF Leasing LLC*, Case No. 08 CV 2409 (E.D.N.Y.); *Simington, et al., v. Lease Finance Group, LLC, Northern Leasing Systems, Inc., et al.,*  Case No. 10 CV 6052 (S.D.N.Y.); and *Teague, et al. v. Lease Finance Group, LLC, et al.,* 11 CV 8125 (S.D.N.Y.). GSLLP monitored the status of these cases, reviewing the filings and researching key issues therein. GSLLP also communicated with the plaintiffs' attorneys in these various cases, including Krishnan Chittur and Mitchell Breit, to discuss litigation strategy and devise joint settlement agreements.

### **10.** **Third Amended Complaint**

50. In August 2012, GSLLP prepared a 189-page third amended complaint ("TAC"), which set forth new predicate acts under RICO and also sought to reinstate certain claims against certain Defendants, particularly Northern Leasing Systems. (Dkt.# 383.)  In conjunction with drafting the TAC, GSLLP synthesized information obtained during the many depositions and extensive document review, and conducted research into new legal theories.  GSLLP then attempted to negotiate a stipulation with Defendants regarding leave to file the TAC.  Because agreement could not be reached, GSLLP prepared a motion for leave to amend.  GSLLP also reviewed Defendants' extensive confidentiality designations on documents and deposition transcripts, took the necessary steps to comply with those designations, preparing an administrative motion to seal and two different redacted versions of the TAC to comply with this Court's orders. (Dkt. ## 385, 421, 431, 432.)

51. After some procedural motions regarding the timing of the hearing on the motion to amend, the Court instructed Defendants to include any Rule 12(b)(6) arguments in opposition to the motion for leave to amend.  (Dkt.# 397.)  They did so.  (Dkt.# 401.)  GSLLP then researched and briefed many 12(b)(6) type questions when drafting and filing the reply in support of leave to amend.  On December 6, 2012, the Court granted Plaintiffs' motion for leave to amend.  (Dkt.# 425.)  GSLLP revised and filed the TAC to comply with that order.

### 11.   Class Certification And Appeals

52.     On August 23, 2012, Plaintiffs filed a comprehensive 50-page motion for class certification, which contained nearly 150 exhibits. (Dkt.## 386-87.) Part of the work done by GSLLP on class certification involved hiring and supervising a database expert consultant, who extracted information from the Lease Database in order to assist with the identification of class members and to determine damages.

53.     GSLLP later researched, briefed, and filed a reply memorandum in support of class certification. (Dkt. # 479.) Following the reply, the parties engaged in extensive discussions as to the briefing schedule and necessity of supplemental briefing. In July 2013, Leasing Defendants filed a sur-reply. GSLLP researched, drafted, and filed another response. (Dkt. #544.) GSLLP also prepared for and attended oral arguments.  In addition, extensive work was required to ensure compliance with the protective order and this Court's orders on the motions to seal. (Dkt. ## 385, 421, 431, 432, 510-15, 535-36.)

54.     In January 2014, GSLLP researched and briefed a motion for leave to seek reconsideration of the denial of class certification as it pertained to the SKS class's RICO claims, and supporting motion. (Dkt. #584.) This Court granted the motion for leave to seek reconsideration, and after Leasing Defendants opposed the motion for reconsideration and GSLLP prepared the reply, this Court granted that motion. (Dkt. # 589, 592.)

55.     In April 2014, GSLLP prepared oppositions to Leasing Defendants' Rule 23(f) petition, in which they sought to reverse this Court's order certifying various classes to pursue claims against Defendants for the SKS scheme.

56.     After the Ninth Circuit granted Defendants' Rule 23(f) petition, Defendants filed their notice of appeal and subsequently an opening brief. GSLLP researched and prepared an answering brief, reviewed Defendants' reply, and appeared and argued. On February 7, 2017, the Ninth Circuit fully affirmed this Court's orders, finding that this Court did not abuse its discretion in certifying the SKS Post-Lease Expiration Class and the Property Tax Equipment Cost Basis Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017).

### 12.   Preparation For Trial

57.     After certification was granted, GSLLP began doing other work to prepare for an

eventual trial on the merits to obtain a permanent injunction. GSLLP retained experts and began developing a trial plan. GSLLP reviewed discovery to date and identified additional witnesses and discovery needed, then negotiated depositions and scheduling with Leasing Defendants. GSLLP also initiated discussions with Leasing Defendants regarding deficiencies in their privilege log. During that time, GSLLP also began reviewing documents and the privilege log obtained in during that period, including those received after the two motions to compel filed that year, discussed in Paragraph 36, *supra*.  Plaintiffs resumed this work again in the spring of 2017, after Plaintiffs were successful on their appeal.

### 13. Other Administrative Motions and Case Management Responsibilities

58.     The schedule on several of Plaintiffs' motions were extended multiple times, requiring GSLLP to draft, negotiate and file several stipulations relating to briefing schedules on dispositive motions and class certification.

59.     GSLLP also researched, drafted and filed a number of administrative motions, including a number of motions to seal, and several motions to shorten time.

60.     GSLLP drafted and negotiated five joint case management statements.

61.     GSLLP also drafted, negotiated and filed a stipulated protective order.

62.     In conjunction with all of the above work, GSLLP spent a great deal of time involved in internal strategy discussions. GSLLP also spent a great deal of time meeting and conferring with Defense counsel on numerous issues.   It also spent time following other cases against Leasing Defendants that were pending around the country and conferring with counsel in those cases.

63.     GSLLP has also researched and drafted a motion for an interim fee award.

64.     GSLLP has also researched and drafted a motion for preliminary approval, as well as this motion for final approval. GSLLP will spend additional time drafting the reply papers. GSLLP will also prepare for and attend any hearing on this matter.

### 14. Settlement Discussions

65.     Over the course of the entire litigation, GSLLP engaged in regular communication with all Defendants to attempt to settle the disputes.  As there were multiple litigations pending

around the country involving the Leasing Defendants, some of the early negotiations involved plaintiffs' counsel in those cases as well.

66.     The proposed Settlement was reached following many rounds of arms-length talks stretching over many months.  Settlement discussions began in the late summer of 2012, after Plaintiffs filed their opening class certification brief and before Defendants had filed their oppositions.

67.     In conjunction with that process, GSLLP spent time negotiating with Defendants regarding available mediators.  The parties eventually agreed to mediate before Antonio Piazza.

68.     In preparation for the mediation with Mr. Piazza, GSLLP researched, drafted and prepared a comprehensive mediation statement.  GSLLP also prepared a presentation.

69.     In addition to preparing the mediation brief and presentation, GSLLP spent a significant amount of time strategizing for the mediation session, including researching and reviewing certain class benefit proposals.

70.     The first all-day mediation was held on November 7, 2012 in San Francisco, California.  Plaintiffs reached a tentative agreement with the Merchant Services Defendants, but over the next several months, the parties were unable to resolve all concerns.  Before that happened, GSLLP spent significant time drafting and negotiating a draft settlement agreement. GSLLP also spent significant time trying to negotiate a settlement with Leasing Defendants. While these negotiations were ongoing, GSLLP also negotiated various stipulations surrounding the class certification briefing schedule and Defendants' timing for responding to Plaintiffs' TAC.

71.     Following the filing of Defendants' opposition to plaintiffs' renewed motion for class certification and Plaintiffs' reply, the Parties agreed to proceed to mediation again.

72.     The second all-day mediation was held on March 20, 2013, in San Francisco, California before Mr. Piazza.  Late in the afternoon, the Plaintiffs and Merchant Services Defendants reached agreement in principal. Plaintiffs and Leasing Defendants did not reach resolution that day, and continued to discuss settlement in the weeks and months that followed.

73.     The mediations resulted in a class action settlement agreement between Plaintiffs and the Merchant Services Defendants.   GSLLP drafted the agreement and all exhibits (including

long-form notice, summary postcard notice, claim form, and proposed orders). GSLLP also supervised the claim administrator's construction of, and thoroughly tested, the settlement website as well as its processing of claims.  GSLLP directly communicated with numerous class members. GSLLP also negotiated several amendments to the settlement agreement in response to issues raised at the preliminary and final approval hearings.  Additional details regarding the work performed in connection with the Merchant Services settlement can be found in my declaration of October 3, 2013, Dkt. # 551.

74.     Plaintiffs were not able to reach agreement with the Leasing Defendants at that time, and they were accordingly excluded from the Settlement.

75.     In August 2014, in connection with the Leasing Defendants' appeal from the orders of class certification, the Ninth Circuit appointed a mediator, Peter Sherwood, to facilitate additional settlement discussions.  Discussions continued regularly under Mr. Sherwood's auspices for approximately 18 months.  During this time, GSLLP drafted numerous term sheets as well as nearly all of a proposed settlement agreement, including exhibits such as class notice, claim form, and proposed orders.

76.     The parties then agreed to pursue private mediation while the appeal was pending. On February 3, 2016, the parties attended a mediation session with Mark Segall, a mediator with JAMS in New York City. The mediation was unsuccessful.

77.     Since 2016, the parties remained in regular contact with Mr. Segall until a settlement was reached. The parties did not discuss fees and costs until agreement had been reached on all other issues.

78.     Following the entry of the order of preliminary approval, GSLLP has spent time working toward final approval of the Settlement.  GSLLP's efforts have included, without limitation, reviewing the class notices and the Settlement Website; corresponding with and reviewing reports by the Claims Administrator; reviewing, testing and troubleshooting the Settlement Website and online claim form process, and recommending and supervising changes to it; reviewing changes to the Settlement Notice and proofreading for final publication; and corresponding with and responding to telephone inquiries from Class Members, including persons

1  who had questions regarding the settlement and class benefits.   I am informed by the Claim

2  Administrator that notices were mailed to approximately 239,000 Settlement Class Members,

3  with most having notice mailed to both a business and residence address.  In addition, I am

4  informed that notice was sent to the various Attorneys General as required by the Class Action

5  Fairness Act.  I also am informed that fewer than 20 exclusion requests have been received.

6  Finally, the Claim Administrator has estimated that its costs of notice and administration will be

7  approximately $800,000. No later than 14 days before the final approval hearing, the Claim

8  Administrator will provide a declaration regarding notice provided, claims, opt-outs, objections

9  and costs.

10         79.     Based on my and my colleagues' familiarity with the factual issues in this

11  litigation, I believe that GSLLP was able to negotiate a fair settlement taking into account the

12  costs and risks of continued litigation.  It is my opinion that counsel for both Parties had full

13  knowledge of the strengths and weaknesses of all Parties' claims due to the extensive discovery

14  and motion work that had preceded the settlement talks.  The final settlement was the result of

15  serious, informed and non-collusive negotiations.

16         80.     After engaging in all of the aforementioned tasks, as a partner with GSLLP, I am

17  in a unique position to evaluate this Settlement.  Indeed, in advising the Representative Plaintiffs

18  whether or not to enter into the Settlement Agreement, I was very cognizant of the risks involved

19  in protracted litigation.  I was also cognizant of Defendants' size and financial resources.

20         81.     When considering the risks and costs associated with proceeding to trial against

21  the nature of the benefit that was being offered by Defendants, it was clear that the Settlement is

22  in the best interests of the class.  Indeed, with this Settlement, Plaintiffs have achieved their

23  desired goal in this litigation—i.e., obtaining cash refunds for class members.  In addition,

24  Settling Defendants have agreed to changed practices.  Based on my evaluation of the facts and

25  legal issues presented, I believe that the settlement is fair, adequate and reasonable.

26         82.     The Class Representatives are each requesting an incentive award of $5,000.  They

27  (as both individuals and as small businesses) took on the risk of the possibility of bearing Leasing

28  Defendants' costs in a losing effort.  Indeed, Defendants questioned them at length regarding their

ability to pay those costs at deposition.  They worked with my firm and our co-counsel to provide a number of declarations and other information throughout the seven-year litigation and have remained involved since case inception through settlement.  They all conducted lengthy searches of their personal records and their business records.  For example, all Plaintiffs turned over several years of their businesses' bank statements and other sensitive, private financial documents for inspection and questioning.  They also spent a good deal of time as follows:

    a.  Ms. Campbell was deposed for a full day.  She answered questions and provided assistance when GSLLP needed various declarations to support the motion for preliminary injunction and for class certification, and to oppose Defendants' motion to compel arbitration. She responded to 22 interrogatories and 82 requests for production of documents. She remained available for consultation during the entire six years she was involved in the litigation. As she was not a class representative in the previous settlement with the Merchant Services Defendants, she has not received any compensation for her work in bringing this lawsuit.

    b.  Ms. Jordan was deposed for two full days, once personally, and once in connection with her business, Dietz Towing, Inc., travelling to San Francisco from her home in Ontario, California.  She also attended the deposition of Pearl Pannone, the president of Dietz Towing.  She responded to 48 interrogatories, 124 requests for production of documents, and an additional 47 interrogatories and 124 requests for production on behalf of Dietz Towing.  She again travelled to San Francisco a to attend one of the mediation sessions, and was available for consultation during the entire seven years she was involved in the litigation.

    c.  Mr. Von Glasenapp was deposed for two full days, once personally, and once in connection with his now-dissolved business, Just Film, Inc.  He also answered questions and provided assistance when Settling Defendants sought partial summary judgment on his claims.  He responded to 48 interrogatories, 126 requests for production of documents, and responded to an additional 23 interrogatories and 44 requests for production on behalf of Just Film, Inc.  He also

attended one of the mediation sessions and was available for consultation during

the entire seven years she was involved in the litigation.

    d.   Mr. Su was deposed for two full days, once personally, and once in connection

with his business, Rainbow Business Solutions.  He responded to 48

interrogatories, 126 requests for production of documents, and an additional 47

interrogatories and 127 requests for production on behalf of Rainbow Business

Solutions.  He also attended one of the mediation sessions and was available for

consultation during the entire seven years she was involved in the litigation.

83.    In my opinion, all Plaintiffs' participation in this litigation has been exemplary.

**B.**    **The Risks Borne By GSLLP.**

84.    In accepting this case, GSLLP bore considerable risk in litigating this case wholly

on a contingent basis and advancing costs. From the outset, GSLLP recognized, among other

things, that it would be contributing a substantial amount of time and advancing significant costs

in prosecuting a nationwide class action, with no guarantee of compensation or recovery, in the

hopes of prevailing against a well-funded defense.

85.    GSLLP originally agreed to handle this case with the assistance of Michael Sweet

at McNutt. GSLLP believed that McNutt would assist in what it anticipated would be a long, and

expensive litigation. During the first year of the litigation, GSLLP performed most of the work in

the case.

86.    In May 2011, Michael Sweet left McNutt, and joined Meyers Nave, which agreed

to assist GSLLP in the litigation. In January 2012, however, Meyers Nave informed GSLLP that

it intended to withdraw from the litigation immediately, in part, because of the high risk that it

would be years, if ever, before it got paid. While the withdrawal was filed and approved by this

Court in July 2012, Meyers Nave stopped performing work for this litigation in late January 2012,

when only a small fraction of discovery had been completed.  Because of this, GSLLP had to

devote internal resources to litigating the case that it had not anticipated.  For example, in the

months that followed Meyers Nave's decision to withdraw, attorney Kristen Simplicio billed in

excess of 200 hours a month on this matter, and therefore was not available to work on other

matters.

87.     During the course of the litigation, GSLLP in fact has turned away other cases due to its involvement with this matter. Among these were cases that were subsequently filed by other firms.

88.     The risk in this litigation was heightened in large part due to concern that even if Plaintiffs were ultimately successful, collecting against the Defendants would be expensive, difficult, and perhaps impossible. Because of Defendants' complicated corporate structure, GSLLP continues to have concerns that the named companies were empty shells, and the funds taken from the class had been transferred to unknown entities outside this court's jurisdiction. During GSLLP's lengthy investigation, attorneys on the case spoke with witnesses who suggested that GSLLP's concerns were well-founded.  For example, a New York Times article reported that, in the SKS case brought by the NY Attorney General, it was discovered that Defendants Mezei and Cohen have placed their assets in trust in the Cook Islands, making them difficult or impossible to reach.  *See* http://www.nytimes.com/2013/12/15/business/international/paradise-of-untouchable-assets.html, last visited Feb. 10, 2017.

89.     Because Leasing Defendants raised a number of strong arguments at the preliminary stages, there was further risk that Plaintiffs would lose the motion to dismiss, motion to compel arbitration, and motion for preliminary injunction, either before this Court, or later, at the Ninth Circuit. There also was a risk that a class would not be certified, causing the hard-fought injunction to be dissolved.

90.     The fact that Leasing Defendants have been the target of other litigation has also raised the risks for GSLLP. GSLLP has risked the possibility that a settlement or judgment in other litigation, including the New York Attorney General's case, could preclude this litigation, or even force one or more Defendants into bankruptcy. This risk recently because more acute. GSLLP also faces risks due to the long duration of the case. Evidence may be lost, and witnesses may become unavailable. In fact, one such witness, Teledraft, Inc., declared bankruptcy, requiring an eleventh-hour deposition, before evidence was lost. Similar problems may befall other witnesses. Thus, with each passing day, the risks in this case grow greater.

### C.    Lodestar and Expenses for GSLLP

#### 1.    Overview of Work Performed To Date On This Case

91.    Based on the time records of GSLLP, it has spent over 7080 hours prosecuting all claims and fact patterns at issue in this litigation through August 31, 2017. The following table shows for each attorney the total number of hours, the Effective Hourly Rate, and the total lodestar.

| Attorney | Hours | Effective Hourly Rate | Total |
|---|---|---|---|
| Adam J. Gutride | 1337.3 | $950.00 | $1,270,435.00 |
| Seth A. Safier | 375.4 | $925.00 | $347,245.00 |
| Jay Kuo | 762.00 | $775.00 | $590,550.00 |
| Todd Kennedy | 11.30 | $850.00 | $9,350.00 |
| Kristen Simplicio | 4530.56 | $616.18 | $2,791,662.00 |
| Matthew McCrary | 72.3 | $700.24 | $50,627.50 |
| Marie McCrary | 2.9 | $750.00 | $2175.00 |
| **TOTAL** | **7088.86** | | **$4,865,864.50** |

92.    The Effective Hourly Rates are based on two factors: (1) the number of years of experience (i.e., years since graduation from law school) that the attorney had at the time the work was performed and (2) the current (2017) billing rate for an attorney with those number of years of experience.  For example, when this case began in 2010, Kristen Simplicio had three years of experience, as she was a 2007 graduate, so her hours worked in 2010 were computed as if billed at GSLLP's current (2017) rates for a third-year associate, i.e. $525.00 per hour. Likewise, her work in 2011 was computed at GSLLP's current (2017) rates for a fourth-year associate, i.e. $575.00 per hour, and so on. The following table sets forth the rates charged by GSLLP in 2017 based on years of experience:

| Years of Practice | 2017 Rate |
|---|---|
| 1 | $425 |

| 2 | $475 |
|---|---|
| 3 | $525 |
| 4 | $575 |
| 5 | $625 |
| 6 | $675 |
| 7 | $700 |
| 8 | $725 |
| 9 | $750 |
| 10 | $775 |
| Partners | $850-950 |

93.    These are GSLLP's regular hourly rates charged for their services in other litigation in 2017.

94.    McNutt and Meyers Nave assigned to GSLLP the right to recover the fees and costs they incurred. As set forth in the Declaration of Michael Sweet (dkt. # 552), McNutt's records are as follows:

| Timekeeper | Hours Worked | Hourly Rate | Total Amount |
|---|---|---|---|
| Dickson, Marianne | 5.70 | $300.00 | 1,710.00 |
| Graham, Douglas | 59.70 | $425.00 | 25,372.50 |
| Keasler, Melissa | 1.50 | $100.00 | 150.00 |
| Moses, Shane | 313.20 | $375.00 | 117,450.00 |
| Snell, Carol | .40 | $150.00 | 60.00 |
| Sweet, Michael | 158.70 | $495.00 | 78,556.50 |
| **TOTAL** | **539.20** | **$414.13** | **$223,299.00** |

95.    As set forth in the Declaration of Marilee Bass (Dkt. # 551), Meyers Nave's time records are as follows:

| Timekeeper | Hours Worked | Hourly Rate | Total Amount |
|---|---|---|---|
| Kahramanian, Lala Z. | 219.40 | $275.00 | 60,335.00 |

-21-

| | | | |
|---|---|---|---|
| Kephart, Allison R. | 83.50 | $275.00 | 22,962.50 |
| McBride, Patti D | 127.90 | $140.00 | 17,906.00 |
| McIntosh, Dawn A. | 30.70 | $275.00 | 8,442.50 |
| Munsell, Anne E. | .40 | $140.00 | 56.00 |
| Rossman, Paul S. | 77.60 | $140.00 | 10,864.00 |
| Sathienmars, Vasudhsiri T. | 32.40 | $140.00 | 4,536.00 |
| Sweet, Michael A. | 388.70 | $350.00 | 136,045.00 |
| **TOTAL** | **960.60** | **$271.86** | **261,147.00** |

The total lodestar for all three firms through August 31, 2017 is as follows:

| Firm | Hours | Total Amount |
|---|---|---|
| McNutt | 539.20 | $223,299.00 |
| Meyers Nave | 960.60 | $261,147.00 |
| GSLLP | 7088.86 | $4,865,864.50 |
| **TOTAL** | **8,588.86** | **$5,350,310.50** |

96.     On December 11, 2013, this Court approved the settlement with the Merchant Services Defendants. This Court also approved our 2013 rates of $700 per hour for me, $675 for Seth Safier, $625 for Jay Kuo, and $450 for Kristen Simplicio. It also approved all the rates shown in the prior paragraph for the McNutt and Meyers Nave Firms. (Dkt. # 551.) It awarded GSLLP $923,000 in fees and costs. GSLLP attributed $871,000 to its lodestar, applying the balance to costs.  At that time, GSLLP's lodestar was $2.95 million, based on its 2013 rates.

97.     Thus far, my firm has not recovered any other attorneys' fees and costs in connection with this case. Thus, Plaintiffs' Counsel's unpaid lodestar to date ($5,350,310.50 less $871,000) is $4,479,310.50.

98.     The rates charged by GSLLP are appropriate in light of our experience. I am a 1994 graduate from Yale Law School.  Mr. Kuo is a 1994 graduate from Boalt Hall Law School. Mr. Safier is a 1998 graduate from Harvard Law School. Mr. Kennedy is 2003 graduate from Yale Law School.  Ms. Simplicio is 2007 graduate of the American University, Washington College of Law. Mr. McCrary is a 2009 University of Texas Law School. Ms. McCrary is a 2008 graduate of the New York University School of Law.

99.     I and Mr. Safier were previously attorneys at the law firm of Orrick Herrington &

Sutcliffe. Mr. Kuo was previously with Howard Rice Nemerovski Canady Falk & Rabkin, and Keker & Van Nest. Mr. Kennedy and Ms. McCrary were previously with Quinn Emanuel Urquhart & Sullivan, LLP. Mr. McCrary was most recently with McDermott Will & Emery, LLP. It is my understanding that attorneys at those firms in the litigation departments, with the same number of years of experience as us, are billing at higher rates.  For example, attorneys who graduated in 1994 (such as me and Mr. Kuo) are currently billing at hourly rates in excess of $1100; attorneys who graduated in 1998 (such as Mr. Safier) are currently billing at hourly rates in excess of $1000; attorneys who graduated in 2003 (such as Mr. Kennedy) are billing in excess of $900 per hour, while attorneys who graduated in 2007-09 (such as Ms. Simplicio, Ms. McCrary, and Mr. McCrary) are billing in excess of $700 per hour. The same is true of lawyers at similar firms in the San Francisco Bay Area. I therefore believe that my firm's hourly rates are at or below market for attorneys with similar backgrounds and experience.

100.    Courts have regularly approved our standard billing rates. On July 7, 2017, Judge Gonzales Rogers approved our regular 2016 billing rates of $950 for me, $925 for Seth Safier, $850 for Todd Kennedy, $775 for Kristen Simplicio, $750 for Marie McCrary, and $725 for Matt McCrary. On February 24, 2016, Judge Peter Kirwan of the Santa Clara Superior Court approved our regular 2015 billing rates of $825 for me, $800 for Seth Safier, and $700 for Todd Kennedy, in *Mackinnon v. IMVU, Inc*. Case No. 111 CV 193767 (County of Santa Clara). On February 20, 2015, Magistrate Judge Beeler, approved and awarded our regular 2014 billing rates of $750 for me, $725 for Seth Safier, and $700 for Jay Kuo, in *Miller v. Ghirardelli Chocolate Company*, Case No. 12-cv-4936 (N.D. Cal.). On February 20, 2014, Judge Ernest Goldsmith of the San Francisco Superior Court approved our firm's regular 2013 billing rates of $700 per hour for me and $675 for Seth Safier in *Haven v. Betz & Sons, Inc., et al*, Case No. 438719. On August 1, 2013, Judge Dale S. Fischer also approved our firm's regular 2013 billing rates of $700 per hour for me, $675 for Seth Safier, $625 for Jay Kuo and $450 for Kristen Simplicio, in *Mancini, et al v Ticketmaster, et al*, Case No. 07-cv-01459-DSF-JTL (C.D. Cal).[1]

---

[1] Earlier fee awards further demonstrate approval of increasing regular annual billing rates. On June 1, 2012, Judge Jeffrey White approved our firm's regular 2012 billing rates of $650 per hour for me, $625 for Seth Safier and Jay Kuo and $400 for Kristen Simplicio, in *Chavez v. Blue Sky*

### 2.   Expenses Incurred

101.    Expenses are accounted for and billed separately and are not duplicated in my firm's professional billing rates. GSLLP has not received reimbursement for all expenses incurred in connection with this litigation.

102.    As of September 30, 2013, in connection with final approval of the settlement with the Merchant Services Defendants, my firm reported that it had advanced a total of $97,301.31 in unreimbursed actual third-party expenses in connection with the prosecution of these cases. The actual expenses incurred in the prosecution of these cases are reflected on the computerized accounting records of my firm prepared by bookkeeping staff, based on receipts and check records and accurately reflect all actual expenses incurred. In addition, I am informed that McNutt LLP had incurred costs of just less than $5000.00 in association with this case. (Dkt.# 552.) I am further informed that Meyers Nave had incurred costs of $2,890.69 in association with this case.  (Dkt.# 551-2.)   Thus, the total costs for all firms at that time were $105,192.00.

103.    In conjunction with the settlement with the Merchant Services Defendants, on December 11, 2013, this Court awarded $923,000.00 in fees and costs in this case. In that order, the Court indicated that it "need not determine at this time the percentage of the expenses and fees

---

*Beverage, et al*, Case No. 06-cv-6609 (N.D. Cal.). On February 14, 2012, Chief Judge James Ware approved our firm's regular 2011 billing rates of $625 per hour for me, $600 for Seth Safier and Jay Kuo, $500 for Todd Kennedy, and $375 for Kristen Simplicio, in *Embry v. Acer America Corporation*, Case No. 5:09-cv-1808 (ND. Cal.). On November 22, 2011, Judge John Munter also approved our firm's regular 2011 billing rates of $625 per hour for me, $600 per hour for Seth Safier and Jay Kuo, $375 per hour for Kristen Simplicio, and $500 per hour for Todd Kennedy in *Gauss v. Millennium Products, Inc.*, Case No. CGC-10-503347. On November 30, 2011, Judge James F. Holderman approved our firm's regular 2010 billing rates of $600 per hour for me, and $575 per hour for Seth Safier in *In Re: Kentucky Grilled Chicken Coupon Marketing & Sales Practices Litigation*, Case No. 1:09-cv-07670 (ND. Ill.). On December 24, 2009, Judge Richard A. Kramer approved our firm's regular 2009 billing rates of $550 for me and $525 for Seth Safier in *Deaton et al v. Hotwire*, Case Number CGC-05- 437631. On August 20, 2008, Judge Charlotte Walter Woolard approved our firm's regular 2008 billing rates of $525 for me and $500 for Seth Safier in *Nelsen v. PeoplePC*, Case Number 07-460240.  Between November 2006 and April 2008, rates of $450 to $475 for me and $425 to $450 for Mr. Safier were approved in the following cases: *Siemers v. Wells Fargo*, Case No. 3:05-cv-04518-WHA (N.D. Cal.) (Feb. 5, 2008) (Alsup, J.); *Howard et al. v. Betz & Sons*, S. F. Superior Case No. CGC-03-422529 (Apr. 30, 2008) (Woolard, J.); *Cho v. Seagate*, S. F. Superior Case No. CGC-06-453195 (Apr. 14, 2008) (Wiss, J.); *Vroegh v. Dane Electric et al.*, S. F. Superior Case No. Case No. CGC-04-428953(Nov. 20, 2006) (Kramer, J.)

that is allocable to Settling Defendants, because Class counsel is requesting only a small portion of what has been incurred to date; if necessary, such allocation can be made at the conclusion of litigation against Leasing Defendants." (Dkt.# 574.) For internal purposes, my firm allocated $52,000.00 of the funds received from the settlement with the Merchant Services Defendants to the costs incurred, leaving a balance at that time of $53,192.00.

104.    Since that time, GSLLP has accrued an additional approximately $20,270.34 in unreimbursed costs in this case.

105.    This means that the total costs incurred to date are approximately $125,462.34, of which $73,462.34 have yet to be reimbursed.  A true and correct accounting of our costs in this case is attached as Exhibit A.

106.    The total costs claimed are conservative.  For example, we have not included amounts expended for internal printing and copying, nor apportioned costs for facsimile, internet usage, or online legal research (Lexis and Westlaw).

**D.    GSLLP's Continuing Obligations to Class Members**

107.    Since the filing of this lawsuit, Plaintiffs' Counsel has been contacted regularly by customers of Defendants in this litigation, and has established standardized procedures to ensure that all inquiries from these persons and other Class Members were timely and accurately handled.  During the first four or five years of the litigation, Plaintiffs' Counsel received several inquiries a week; while it has decreased somewhat, GSLLP still receives several inquiries per month.

108.    Plaintiffs' Counsel also worked the Claim Administrator to assure that Settlement Website functioned properly, was easy to use and properly designed.  I received weekly updates from the Claims Administrator regarding the administration of the Settlement.  GSLLP will continue in this capacity should the Settlement be finally approved.

109.    GSLLP will also prepare for and appear at the fairness hearing.  If the Settlement is approved and fees awarded, GSLLP also will oppose any appeals that may be filed.  Based on my experience with class actions, I additionally anticipate that there will be another 50–75 hours of work before this settlement is entirely complete and an estimated 175-250 hours if this Court's

1  judgment is appealed.

2     110.   I believe that the Settlement is in the best interests of the class in light of the risks

3  of continued litigation as described in this declaration and the benefits being provided to class

4  members in settlement.  The litigation had been highly contentious, and the parties strongly

5  disagreed on Plaintiffs' ability to prove liability and damages.  With this Settlement, Plaintiffs

6  have achieved their desired goal in this litigation—i.e., obtaining for class members cash refunds,

7  as well as changed business practices.   In light of the risks, I believe that the recovery provided

8  by the Settlement is fair wand reasonable when compared to the likely recovery after trial, appeal

9  and collection efforts.

10     This declaration was executed this 10th day of October, at Berkeley, California. I state the

11  foregoing under penalty of perjury under the laws of the United States.

12

13                              /s/ Adam Gutride

14                              Adam Gutride, Esq.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ADAM GUTRIDE ISO MOTION FOR INTERIM FEE AWARD AND COSTS
Case No. 4:10-cv-1993-CW

# EXHIBIT A

| | | | | | | |
|---|---|---|---|---|---|---|
| **Arbitrators/Mediators (E121)** | | 37,857.87 | | | | |
| | | | 10/1/12 | Mediated Negotiations | 12,000.00 | |
| | | | 3/18/13 | Antonio Piazza | 8,000.00 | |
| | | | 2/1/16 | JAMS | 5,050.00 | |
| | | | 3/8/16 | JAMS | 1,995.37 | |
| | | | 4/12/16 | JAMS | 1,775.00 | |
| | | | 5/16/16 | JAMS | 1,125.00 | |
| | | | 6/13/16 | JAMS | 525.00 | |
| | | | 7/1/16 | JAMS | 487.50 | |
| | | | 7/22/16 | JAMS | 112.50 | |
| | | | 9/2/16 | JAMS | 375.00 | |
| | | | 10/24/16 | JAMS | 375.00 | |
| | | | 1/5/17 | JAMS | 187.50 | |
| | | | 4/30/17 | JAMS | 1,972.50 | |
| | | | 5/31/17 | JAMS | 1,938.75 | |
| | | | 6/30/17 | JAMS | 1,938.75 | |
| | | | | | | |
| | | | | | 37,857.87 | |
| **Court Fees (E112)** | | 920.00 | | | | |
| | | | 3/26/10 | US Legal - Filing Fees - SFSC | $920.00 | |
| | | | | | | |
| **Delivery Svcs & Msgrs (E107)** | | 9,585.13 | | | | |
| | | | 3/26/10 | US Legal - File/Conform/Return - SFSC | $160.50 | |
| | | | 4/7/10 | US Legal - svc on National Payment Processing | $132.69 | |
| | | | 4/7/10 | US Legal - svc on SPC, Inc. DBA First National Mercha | $128.18 | |
| | | | 4/7/10 | US Legal - svc on Northern Leasing Systems, Inc. | $132.69 | |
| | | | 4/7/10 | US Legal - svc on Third Fifth Bank | $54.00 | |
| | | | 4/7/10 | US Legal - svc on Atlas Payment Processing | $54.00 | |
| | | | 4/7/10 | US Legal - svc on Eric Madura | $54.00 | |
| | | | 4/7/10 | First Legal - svc on Merchant Svcs | $148.55 | |
| | | | 4/7/10 | First Legal - svc on Universal Card, 3 addresses | $559.84 | |
| | | | 4/7/10 | First Legal - svc on Univesal Merchant Services Corp | $50.25 | |
| | | | 4/7/10 | First Legal - svc on Fiona Walshie, 2 addresses | $248.88 | |
| | | | 4/7/10 | First Legal - svc on Jason Moore, 2 addresses | $193.55 | |
| | | | 7/6/10 | US Legal - Filing Summons USDC-Oakland - rejected | $64.70 | |
| | | | 7/7/10 | US Legal - Filing USDC-Oakland - Summons | $60.95 | |
| | | | 7/8/10 | US Legal - svc on Universal Merchant Svcs, Inc. | $302.69 | |
| | | | 3/22/11 | First Legal - svc on SKS Associates LLC | $304.00 | |
| | | | 3/23/11 | First Legal - svc on SKS Associates LLC | $643.00 | |
| | | | 3/29/11 | First Legal - filing USDC - San Francisco | $27.25 | |
| | | | 6/27/11 | US Legal | 45.00 | |
| | | | 2/16/12 | A&A Legal - filing USDC - Eastern Districk of VA - Subpoena to Produce Docs | $156.00 | |
| | | | 4/17/12 | First Legal - USDC - SF - Joint St | $32.63 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | 4/24/12 | First Legal - USDC - Oakland - Stip | $45.00 | |
| | | | | 4/24/12 | First Legal - USDC - SF - Declaration/Exhibits/Motion | $95.13 | |
| | | | | 5/6/12 | First Legal - USDC - SF - Motin/Dec(2)/PO/Response(2)/Reply | $19.25 | |
| | | | | 5/10/12 | A&A Legal - filing USDC - NDCA- Subpoena to Produce Docs | $108.00 | |
| | | | | 5/10/12 | A&A Legal - filing USDC - S.Dakota - Subpoena to Produce Docs | $169.00 | |
| | | | | 5/10/12 | A and A Legal Service | $108.00 | |
| | | | | 5/10/12 | A and A Legal Service | $169.00 | |
| | | | | 5/25/12 | First Legal - USDC - SF - Reply (2) | $34.25 | |
| | | | | 7/11/12 | A and A Legal Service | $129.00 | |
| | | | | 8/29/12 | First Legal - filing USDC-Oakland; Courtesy Copy to Jdg Wilken | $45.00 | |
| | | | | 10/9/12 | First Legal - filing USDC-Oakland; Plt Motn for Leave | $298.75 | |
| | | | | 12/11/12 | A&A Legal - Filing Second Amended Class Action Complaint in NY Supreme Court | $248.50 | |
| | | | | 12/11/12 | A&A Legal - Filing Third Amended Class Action Complaint, Demand for Jury Trial in USDC-Oakland | $230.35 | |
| | | | | 12/27/12 | A&A Legal - Filing multiple docs incl. Pl's Amended Motion for Class Certification in USDC-Oakland | $255.90 | |
| | | | | 12/27/12 | A&A Legal - Filing letter dated 12/5/12 in NY Supreme Court | $305.00 | |
| | | | | 12/27/12 | A&A Legal - Filing Notice of Petition Verified Petition in NY Supreme Court | $410.50 | |
| | | | | 12/27/12 | A&A Legal - Filing multiple docs incl. Decl of Simplicio in Support of Plaintiff's Motion for Sanction in USDC-Oakland | $203.40 | |
| | | | | 2/21/13 | Rapid Legal | 47.40 | |
| | | | | 2/26/13 | A&A Legal filing of Reply in Support of Ameded Mot for Class Cert in USDC-Oakland | $426.95 | |
| | | | | 3/1/13 | Rapid Legal | 96.15 | |
| | | | | 3/5/13 | Rapid Legal | 49.80 | |
| | | | | 3/6/13 | Rapid Legal | 46.20 | |
| | | | | 3/19/13 | Rapid Legal - Svc of documents to Mediated Negotiations | $168.95 | |
| | | | | 4/23/13 | Rapid Legal | 78.90 | |
| | | | | 5/1/13 | Rapid Legal | 46.20 | |
| | | | | 6/11/13 | Rapid Legal | 94.80 | |
| | | | | 8/17/13 | Rapid Legal | 47.40 | |
| | | | | 10/8/13 | Rapid Legal | 61.20 | |
| | | | | 10/24/13 | Rapid Legal | 46.50 | |
| | | | | 11/9/13 | Rapid Legal | 66.00 | |
| | | | | 12/14/13 | Rapid Legal | 65.40 | |
| | | | | 2/20/14 | S&R Services | 85.00 | |
| | | | | 2/20/14 | A&A Legal Svc - Filing Pl's Mot for Leave to Seek Reconsideration re SKS in USDC-Oakland | $156.75 | |
| | | | | 4/7/14 | S&R Services | 86.00 | |
| | | | | 4/23/14 | A&A Legal Svc - Svc of  Subpoena to Testify at Depo on  Metro Phoenix Bank | $265.00 | |
| | | | | 5/15/14 | A&A Legal Svc - Svc of  Subpoena to Testify at Depo on Eaglenx,Inc. | $236.45 | |
| | | | | 5/15/14 | A&A Legal Svc - Svc of  Subpoena to Testify at Depo on Archie Emerson | $223.70 | |
| | | | | 5/15/14 | A&A Legal Svc - Svc of  Subpoena to Testify at Depo on Jonathan Mirsky | $200.00 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | 6/2/14 | S&R Services | 45.00 | |
| | | | 6/13/14 | S&R Services - Deliver Chamber's Copy for Jdg Laporte | $133.50 | |
| | | | 4/4/16 | S&R Services | 45.00 | |
| | | | 4/12/17 | S&R Services - USDC - Deliver Chamber's Copy to Judge C. Wilken | 50.00 | |
| | | | 4/20/17 | S&R Services - Courtesy Copies for Judge Wilken - Renewed Mot for Interim Fee Award | 123.50 | |
| | | | 8/2/17 | S&R Services - Mot for Prelim Approval Class Action Sett | 90.00 | |
| | | | 9/12/17 | S&R Services - Courtesy Copies Jdg Wilken - ISO Just Film Opposition to UCI Motion to Enf Sett | 70.00 | |
| | | | | | 9,585.13 | |
| | | | | | | |
| **Deposition Transcripts (E115)** | | 29,149.37 | | | | |
| | | | | | | |
| | | | 9/16/10 | Ravnee H. Mercado, 9/16/10 Hearing Transcript | $120.00 | |
| | | | 4/3/12 | Connie Kuhl, RMR - Transcript of Proceedsings before Judge E. D. Laporte | $82.40 | |
| | | | 5/17/12 | Nogara Reporting - Fiona Walshe | $1,262.71 | |
| | | | 5/24/12 | Charles A. J. Barber - Video Depostion | $297.50 | |
| | | | 5/31/12 | Sahar Bartlett, CSR - Transcript of Proceedings held on 5/29/12 | $54.00 | |
| | | | 6/4/12 | Nogara Reporting - Robert Parisi | $1,647.25 | |
| | | | 6/5/12 | Nogara Reporting - Nathan Jurczyk, V1 | $2,304.35 | |
| | | | 6/6/12 | Nogara Reporting - Nathan Jurczyk, V2 | $1,540.55 | |
| | | | 6/19/12 | Nogara Reporting - Samuel Buono | $1,137.40 | |
| | | | 6/19/12 | Liquid Steel - video depo of Buono | $300.00 | |
| | | | 6/20/12 | Nogara Reporting - Lina Dravic V1 | $1,560.15 | |
| | | | 6/20/12 | Liquid Steel - video depo of Kravic | $300.00 | |
| | | | 6/21/12 | Nogara Reporting - Lina Dravic V2 | $772.10 | |
| | | | 6/21/12 | Liquid Steel - video depo of Karvic | $150.00 | |
| | | | 6/22/12 | Nogara Reporting - Dinesh Kulangroth | $1,339.00 | |
| | | | 6/22/12 | Liquid Steel - video depo of Kulagroth | $300.00 | |
| | | | 6/26/12 | Nogara Reporting - Leonard Mezei | $487.15 | |
| | | | 6/26/12 | Liquid Steel - video depo of Mezei | $150.00 | |
| | | | 6/27/12 | Nogara Reporting - Cortes DeRussy | $672.65 | |
| | | | 6/27/12 | Liquid Steel - video depo of Derussy | $300.00 | |
| | | | 7/9/12 | Nogara Reporting - Jason Moore | $965.82 | |
| | | | 7/10/12 | Nogara Reporting - Alicyn Roy | $1,368.22 | |
| | | | 7/11/12 | Nogara Reporting - Eric Madura | $1,388.77 | |
| | | | 7/12/12 | Nogara Reporting - Nathan Jurczyk, V3 | $1,564.27 | |
| | | | 7/13/12 | Nogara Reporting - Nathan Jurczyk, V4 | $1,242.26 | |
| | | | 7/16/12 | Liquid Steel - video depo of Krieger | $300.00 | |
| | | | 7/16/12 | Nogara Reporting - Sara Krieger | $1,246.78 | |
| | | | 7/17/12 | Liquid Steel - video depo of Cohen | $150.00 | |
| | | | 7/17/12 | Liquid Steel - video depo of Bernadone | $150.00 | |
| | | | 7/17/12 | Nogara Reporting - Ari Jay Cohen | $1,269.71 | |
| | | | 7/18/12 | Liquid Steel - video depo of Mirsky | $150.00 | |
| | | | 7/18/12 | Nogara Reporting - Jonathan Mirsky | $550.43 | |
| | | | 7/23/12 | Insight Media Corp.; 5 days video depo | $2,069.00 | |
| | | | 1/3/13 | Southern District Court Reporters PC | 52.80 | |

| | | | | | |
|---|---|---|---|---|---|
| | | | 2/12/13 | David Feldman Worldwide - copy of transcript of Robyn Sands | $742.60 |
| | | | 5/15/14 | Nogara Reporting - John Hughes | $1,161.50 |
| | | | | | 29,149.37 |
| | | | | | |
| Experts (E119) | | 12,966.55 | | | |
| | | | 8/24/10 | The TASA Group, Inc. | 1,079.05 |
| | | | 10/24/12 | Robyn Anderson Sands | 6,000.00 |
| | | | 2/25/13 | Robyn Anderson Sands | 2,400.00 |
| | | | 7/12/13 | Robyn Anderson Sands | 450.00 |
| | | | 9/12/13 | Robyn Anderson Sands | 1,050.00 |
| | | | 5/19/14 | 7S Consulting, Inc., Daniel Fink, lease database | 862.50 |
| | | | 7/24/14 | 7S Consulting, Inc., Daniel Fink, lease database | 1,125.00 |
| | | | | | 12,966.55 |
| | | | | | |
| Local Travel (E109) | | 652.15 | | | |
| | | | 6/14/10 | Impark | 9.00 |
| | | | 6/17/10 | Ampco Parking | 29.00 |
| | | | 7/8/10 | Impark | 6.00 |
| | | | 9/15/10 | Imperial Parking - Safier | 12.00 |
| | | | 9/16/10 | Oakland Parking Meter | 4.00 |
| | | | 12/30/10 | 2010 Auto Mileage Gutride | 25.00 |
| | | | 12/30/10 | 2010 Auto Mileage Safier | 25.00 |
| | | | 12/30/11 | 2011 Auto Mileage Gutride | 53.25 |
| | | | 1/19/12 | BART - Gutride | 1.75 |
| | | | 3/14/12 | Delta Parking Management - Gutride | 10.00 |
| | | | 5/11/12 | CCSF MTA Civic Cntr Garage | 3.50 |
| | | | 5/15/12 | St.Mary's Square Garage - Gutride | 15.50 |
| | | | 5/17/12 | 51 City Park SF MOMA - Simplicio | 30.00 |
| | | | 5/29/12 | CCSF MTA Civic Cntr Garage | 6.50 |
| | | | 6/4/12 | Radisson Hotel Newport Beach-Simplicio | 12.01 |
| | | | 6/5/12 | Radisson Hotel Newport Beach-Simplicio | 4.00 |
| | | | 12/30/12 | 2012 Auto Mileage Gutride | 55.50 |
| | | | 12/30/12 | 2012 Auto Mileage Safier | 11.10 |
| | | | 3/20/13 | 51 City Park SF MOMA - Simplicio | 30.00 |
| | | | 5/2/13 | Dalziel Garage - Simplicio | 9.00 |
| | | | 8/29/13 | Oakland Convention Cntr | 15.75 |
| | | | 11/21/13 | City of Oakland - Gutride | 8.00 |
| | | | 11/22/13 | Clay Street Garage - Simplicio | 13.00 |
| | | | 12/31/13 | 2013 Auto Mileage Gutride | 22.60 |
| | | | 4/24/14 | Uber Technologies - Simplicio | 35.77 |
| | | | 4/25/14 | TXP Get-Ride.net Oakland - Simplicio | 61.50 |
| | | | 8/31/14 | 2014 Auto Mileage Safier | 56.00 |
| | | | 12/30/14 | 2014 Auto Mileage Gutride | 11.20 |
| | | | 2/2/16 | St.Mary's Square Garage - Gutride | 30.99 |
| | | | 12/31/16 | 2016 Auto Mileage Gutride | 21.60 |
| | | | 4/16/17 | Paypal Lyft Ride - Simplicio | 12.80 |
| | | | 4/19/17 | Paypal Lyft Ride - Simplicio | 10.83 |
| | | | | | 652.15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Meals (E111)** | | | 2,949.75 | | | |
| | | | 6/17/10 | Perrys Embarcadero - Gutride | 59.68 | |
| | | | 9/15/10 | Americano Restaurant - Safier | 71.00 | |
| | | | 9/16/10 | Le Cheval Restaurant - Gutride | 23.38 | |
| | | | 6/2/11 | Siam Thai Cuisine - Gutride | 24.84 | |
| | | | 1/10/12 | El Faro Mexican - Simplicio | 15.52 | |
| | | | 1/10/12 | Sunrise Deli - Gutride | 7.04 | |
| | | | 1/11/12 | SF Soup Co - Simplicio | 9.78 | |
| | | | 1/18/12 | Henry's Hunan - Gutride | 29.45 | |
| | | | 1/18/12 | Peet's Coffee - Gutride | 2.85 | |
| | | | 1/19/12 | Irish Bank Bar & Rest - Gutride | 40.56 | |
| | | | 1/19/12 | Starbuck's - Gutride | 1.95 | |
| | | | 4/23/12 | Dobbs Ferry Restaurant - Gutride | 44.23 | |
| | | | 5/2/12 | Dobbs Ferry Restaurant - Simplicio | 31.38 | |
| | | | 5/3/12 | Dobbs Ferry Restaurant - Simplicio | 28.09 | |
| | | | 5/14/12 | Peet's Coffee - Gutride | 4.35 | |
| | | | 5/16/12 | Paladar Café - Gutride | 26.04 | |
| | | | 5/17/12 | Darn Good Food - Gutride | 22.42 | |
| | | | 6/3/12 | Balducci's - JFK - Kuo | $13.69 | |
| | | | 6/3/12 | United Airlines - Kuo | $5.49 | |
| | | | 6/4/12 | Corea Galbi Korean BBQ - Simplicio | 95.81 | |
| | | | 6/4/12 | Panini Cafe-Irvine - Simplicio | 41.00 | |
| | | | 6/4/12 | Starbucks - Kuo | $5.15 | |
| | | | 6/5/12 | Kitayama - Simplicio | 108.00 | |
| | | | 6/5/12 | Panini Cafe-Irvine | 41.37 | |
| | | | 6/6/12 | Starbucks - Simplicio | 7.45 | |
| | | | 6/6/12 | 24 Carrots - Simplicio | 10.40 | |
| | | | 6/6/12 | Fiesta Cantina - Kuo | $21.94 | |
| | | | 6/7/12 | United Airlines - Kuo | $2.99 | |
| | | | 6/18/12 | Starbucks - Simplicio | 10.96 | |
| | | | 6/18/12 | Room Service - Simplicio | 40.00 | |
| | | | 6/19/12 | Sinigual 7260 - Simplicio | 45.00 | |
| | | | 6/20/12 | Cipriani Lespecialita - Simplicio | 11.84 | |
| | | | 6/20/12 | Cipriani Lespecialita - Simplicio | 4.72 | |
| | | | 6/20/12 | Desi Shack -Simplicio | 10.34 | |
| | | | 6/20/12 | Cinema Cafe on 34th - Simplicio | 23.94 | |
| | | | 6/21/12 | Cipriani Lespecialita - Simplicio | 7.35 | |
| | | | 6/21/12 | Oyster Bar Restaurant NY - Simplicio | 51.77 | |
| | | | 6/21/12 | Hell's Kitchen Rest - Simplicio | 93.38 | |
| | | | 6/22/12 | Pershing Square - Simplicio | 61.17 | |
| | | | 6/22/12 | Cipriani Lespecialita - Simplicio | 19.82 | |
| | | | 6/24/12 | Num Pang Sandwich Shop - Simplicio | 14.20 | |
| | | | 6/25/12 | Num Pang Sandwich Shop - Simplicio | 11.45 | |
| | | | 6/25/12 | Daniel's Bagels - Simplicio | 13.17 | |
| | | | 6/26/12 | Cipriani Lespecialita - Simplicio | 13.81 | |
| | | | 6/26/12 | Pershing Square = Simplicio | 71.51 | |
| | | | 6/27/12 | Cipriani Lespecialita - Simplicio | 19.39 | |
| | | | 6/27/12 | Pershing Square - Simplicio | 68.80 | |
| | | | 6/27/12 | Cinema Cafe on 34th = Simplicio | 16.01 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | 6/28/12 | Eastgate - Simplicio | 44.95 | |
| | | | 7/8/12 | The Farm of Beverly - Simplicio | 30.00 | |
| | | | 7/9/12 | Orchid Hotel Oh! Rest LA - Simplicio | 97.65 | |
| | | | 7/9/12 | Chaya Downtown - Simplicio | 65.46 | |
| | | | 7/10/12 | Ciudad Restaurant - Simplicio | 66.55 | |
| | | | 7/11/12 | Chaya Downtown - Simplicio | 73.99 | |
| | | | 7/11/12 | Sugarfish by Sushi Nozawa - Simplicio | 85.78 | |
| | | | 7/12/12 | Ciudad Restaurant - Simplicio | 72.26 | |
| | | | 7/13/12 | Drago Central - Simplicio | 110.16 | |
| | | | 7/14/12 | T6 La Brea Bak - Simplicio | 11.52 | |
| | | | 7/14/12 | Num Pang Sandwich Shop - Simplicio | 12.25 | |
| | | | 7/15/12 | Otto - Simplicio | 26.95 | |
| | | | 7/15/12 | DBGB Kitchen & Bar - Simplicio | 35.00 | |
| | | | 7/16/12 | Cipriani Lespecialita - Simplicio | 18.02 | |
| | | | 7/16/12 | Scottys Diner - Simplicio | 21.85 | |
| | | | 7/16/12 | Pershing Square - Simplicio | 72.21 | |
| | | | 7/17/12 | Cipriani Lespecialita - Simplicio | 11.53 | |
| | | | 7/17/12 | Starbucks - Simplicio | 4.68 | |
| | | | 7/17/12 | Sinigual 7260 - Simplicio | 82.77 | |
| | | | 7/18/12 | Cipriani Lespecialita - Simplicio | 19.85 | |
| | | | 7/18/12 | Pershing Square - Simplicio | 76.42 | |
| | | | 7/18/12 | Icon Restaurant - Simplicio | 19.03 | |
| | | | 7/18/12 | Cinema Cafe on 34th - Simplicio | 25.63 | |
| | | | 7/19/12 | OTG JFK T5 Venture LLC - Simplicio | 13.60 | |
| | | | 8/1/12 | Lers Ros & Red - Safier | 55.20 | |
| | | | 9/6/12 | Velo Rouge Café - Gutride | 8.63 | |
| | | | 10/18/12 | Royal Exchange - Gutride | 74.70 | |
| | | | 11/7/12 | Peets Coffee/Tea - Simplicio | 4.05 | |
| | | | 1/3/13 | Rigolo - Gutride | 23.72 | |
| | | | 1/27/13 | Brick House Café - Simplicio | 33.96 | |
| | | | 1/29/13 | Quattro Stagioni - Simplicio | 20.01 | |
| | | | 1/29/13 | Peets Coffee/Tea - Simplicio | 2.95 | |
| | | | 3/20/13 | LaRegency San Francisco - Gutride | 28.55 | |
| | | | 4/24/14 | Totties Asian Fusion - Safier | 12.58 | |
| | | | 4/24/14 | Totties Asian Fusion - Safier | 8.58 | |
| | | | 4/25/14 | Whole Foods - Safier | 12.89 | |
| | | | 4/25/14 | Cyprus Grill - Simplicio | 12.80 | |
| | | | 2/3/16 | Timna - Safier | 72.97 | |
| | | | 2/4/16 | JFK - T5 - Venture - Gutride | 53.82 | |
| | | | 2/4/16 | JFK - T5 - Venture - Gutride | 21.75 | |
| | | | | | 2,949.75 | |
| | | | | | | |
| **Online Research (E106)** | | 643.70 | | | | |
| | | | 2/1/11 | Pacer Service Center | 46.72 | |
| | | | 5/2/12 | Pacer Service Center | 51.68 | |
| | | | 5/3/12 | Pacer Service Center | 59.12 | |
| | | | 8/3/12 | Pacer Service Center | 81.80 | |
| | | | 10/29/12 | Pacer Service Center | 10.60 | |
| | | | 10/30/12 | Pacer Service Center | 29.70 | |
| | | | 3/5/13 | Pacer Service Center | 73.30 | |

| | | | | | |
|---|---|---|---|---|---|
| | | | 5/3/13 | Pacer Service Center | 60.00 |
| | | | 5/7/13 | Pacer Service Center | 20.40 |
| | | | 8/5/13 | Pacer Service Center | 40.22 |
| | | | 11/5/13 | Pacer Service Center | 4.36 |
| | | | 2/5/14 | Pacer Service Center | 14.30 |
| | | | 5/5/14 | Pacer Service Center | 34.50 |
| | | | 8/5/14 | Pacer Service Center | 49.60 |
| | | | 11/5/14 | Pacer Service Center | 21.40 |
| | | | 2/4/15 | Pacer Service Center | 0.40 |
| | | | 4/26/16 | Pacer Service Center | 9.90 |
| | | | 7/14/16 | Pacer Service Center | 5.10 |
| | | | 7/21/16 | Pacer Service Center | 30.60 |
| | | | | | 643.70 |
| | | | | | |
| **Other (E124)** | | 118.73 | | | |
| | | | 2/24/12 | Sina Aboutaleb - sec svcs | 30.00 |
| | | | 2/26/14 | Teris LLC | 61.57 |
| | | | 2/2/16 | Cash Receipt - Gutride | 27.16 |
| | | | | | 118.73 |
| | | | | | |
| **Out-of-Town Travel (E110)** | | 16,553.76 | | | |
| | | | 1/16/12 | Hotwire - Safier | 268.56 |
| | | | 4/15/12 | Southwest Airl- Simplico - OAK to ONT on 4/17 | 379.60 |
| | | | 4/16/12 | Hotels.com - Simplicio | 79.19 |
| | | | 4/18/12 | Alamo Rent-A-Car - Simplicio | 104.46 |
| | | | 5/31/12 | Southwest Airlines - Simplicio | 379.60 |
| | | | 6/1/12 | Hotels.com - Simplicio | 967.18 |
| | | | 6/3/12 | United Airfare - JFK to LAX, Kuo | $744.60 |
| | | | 6/3/12 | Uber - Kuo to JFK | $85.00 |
| | | | 6/3/12 | Go-Go Inflight wireless - Kuo | $17.95 |
| | | | 6/6/12 | AMPCO - parking - Kuo | $20.00 |
| | | | 6/6/12 | AMPCO - parking - Kuo | $20.00 |
| | | | 6/6/12 | Budget Car Rental - Kuo | $229.00 |
| | | | 6/7/12 | Uber - Kuo fm JFK | $85.00 |
| | | | 6/9/12 | JetBlue - Simplicio | 725.60 |
| | | | 6/10/12 | Hotels.com - Simplicio | 2,569.43 |
| | | | 6/12/12 | Radisson Hotel Newport Beach - Simplicio | 66.35 |
| | | | 6/12/12 | Radisson Hotel Newport Beach - Simplicio | 88.43 |
| | | | 6/18/12 | NYC - Taxi - Simplicio | 59.30 |
| | | | 6/18/12 | NYC - Taxi - Simplicio | 10.80 |
| | | | 6/20/12 | Hotels.com - Simplicio | 2,329.52 |
| | | | 6/21/12 | NYC - Taxi - Simplicio | 12.80 |
| | | | 6/22/12 | NYC - Taxi - Simplicio | 16.50 |
| | | | 6/26/12 | Jay Kuo - hotel, ground transportation flights - depositions | 908.50 |
| | | | 6/26/12 | JetBlue - Simplicio | 584.60 |
| | | | 6/27/12 | NYC - Taxi - Simplicio | 59.30 |
| | | | 6/27/12 | JetBlue - Simplicio | 50.00 |
| | | | 6/27/12 | Hotels.com - Simplicio | 1,055.96 |
| | | | 7/2/12 | Southwest Airlines - Simplicio | 109.80 |

| | | | 7/14/12 | O Hotel - Simplicio | 196.58 | |
| | | | 7/14/12 | Leon Limousine - Simplicio | 65.00 | |
| | | | 7/15/12 | NYC Taxi Med - Simplicio | 58.30 | |
| | | | 7/18/12 | JetBlue - Simplicio | 50.00 | |
| | | | 7/20/12 | RAMLOP - Simplicio | 70.00 | |
| | | | 7/31/12 | Jay Kuo - hotel, ground transportation flights - depositions | 562.60 | |
| | | | 8/1/12 | Royal Taxi - Safier | 20.00 | |
| | | | 11/7/12 | Le Regency - Safier | 27.66 | |
| | | | 3/15/13 | Southwest Airlines - Simplicio | 386.30 | |
| | | | 4/4/13 | Terry Jordan - expense reimbursement | 44.00 | |
| | | | 5/23/13 | Delta In flight - Gutride | 6.00 | |
| | | | 4/22/14 | Southwest Airlines - Simplicio | 652.00 | |
| | | | 4/23/14 | Hotwire - Safier | 374.80 | |
| | | | 4/23/14 | Southwest Airlines - Safier | 704.00 | |
| | | | 4/24/14 | National Car Rental - Safier | 58.05 | |
| | | | 4/25/14 | Circle K - Safier | 5.80 | |
| | | | 4/25/14 | Southwest Airlines - Simplicio | 20.00 | |
| | | | 4/25/14 | Omni Montelucia Rooms - Simplicio | 34.30 | |
| | | | 4/25/14 | Omni Montelucia Rooms - Simplicio | 10.52 | |
| | | | 4/25/14 | AAA Taxi - Simplicio | 27.02 | |
| | | | 4/25/14 | Omni Montelucia Rooms - Safier | 36.83 | |
| | | | 4/26/14 | SFO Parking - Safier | 60.00 | |
| | | | 1/26/16 | JetBlue - Safier | 440.40 | |
| | | | 2/2/16 | Hotwire - Safier | 343.60 | |
| | | | 2/2/16 | Uber - Safier | 59.46 | |
| | | | 2/2/16 | Uber - Gutride | 31.56 | |
| | | | 2/3/16 | NYC - Taxi - Safier | 70.84 | |
| | | | 2/3/16 | Uber - Safier | 16.52 | |
| | | | 2/4/16 | Uber - Gutride | 44.42 | |
| | | | 2/5/16 | Lyft - Safier | 31.17 | |
| | | | 2/6/16 | JetBlue Inflight - Safier | 19.00 | |
| | | | | | 16,553.76 | |
| **Outside Printing (E102)** | | 5,751.12 | | | | |
| | | | 3/15/12 | Merrill Communications - organize/upload Def's produced documents | $374.01 | |
| | | | 3/15/12 | Merrill Communications - organize/upload Def's produced documents | $108.30 | |
| | | | 3/22/12 | Merrill Communications - organize/upload Def's produced documents | $64.01 | |
| | | | 5/17/12 | Fedex Kinkos | 47.87 | |
| | | | 5/17/12 | Fedex Kinkos | 0.91 | |
| | | | 5/22/12 | Fedex Kinkos | 28.50 | |
| | | | 6/6/12 | Fedex Kinkos | 8.31 | |
| | | | 6/19/12 | Fedex Kinkos | 14.63 | |
| | | | 6/20/12 | The UPS Store | 1.64 | |
| | | | 6/21/12 | Merrill Communications - prep/binding deposition materials | $7.65 | |
| | | | 6/21/12 | Merrill Communications - prep/binding deposition materials | $496.84 | |
| | | | 6/22/12 | Fedex Kinkos | 26.51 | |
| | | | 6/22/12 | Fedex Kinkos | 56.28 | |

| | | | Date | Description | Amount | |
|---|---|---|---|---|---|---|
| | | | 6/26/12 | The UPS Store | 9.15 | |
| | | | 6/27/12 | Fedex Kinkos | 21.61 | |
| | | | 7/9/12 | Fedex Kinkos | 6.23 | |
| | | | 7/10/12 | Fedex Kinkos | 3.03 | |
| | | | 7/11/12 | Fedex Kinkos | 3.33 | |
| | | | 7/12/12 | Fedex Kinkos | 43.91 | |
| | | | 7/12/12 | Fedex Kinkos | 36.40 | |
| | | | 7/12/12 | Fedex Kinkos | 10.33 | |
| | | | 7/12/12 | Fedex Kinkos | 9.92 | |
| | | | 7/13/12 | Fedex Kinkos | 14.61 | |
| | | | 7/16/12 | The UPS Store | 3.27 | |
| | | | 7/16/12 | Fedex Kinkos | 39.74 | |
| | | | 7/17/12 | The UPS Store | 6.54 | |
| | | | 7/17/12 | Fedex Kinkos | 66.37 | |
| | | | 7/26/12 | Merrill Communications - deposition prep | $371.15 | |
| | | | 7/31/12 | Merrill Communications - binding exhibits/documents for internal reference | $662.41 | |
| | | | 8/30/12 | Merrill Communications - prep of courtesy copies for class cert and TAC | $648.36 | |
| | | | 10/25/12 | Fedex Kinkos | 10.41 | |
| | | | 10/28/12 | Fedex Kinkos | 20.34 | |
| | | | 10/30/12 | Fedex Kinkos | 58.29 | |
| | | | 11/7/12 | Fedex Kinkos | 21.92 | |
| | | | 5/21/13 | Merrill Communications - printing and binding per Simplicio | $900.73 | |
| | | | 7/31/13 | Merrill Communications - printing and binding per Simplicio | $855.41 | |
| | | | 4/24/14 | Fedex Kinkos | 50.75 | |
| | | | 4/25/14 | The UPS Store | 7.54 | |
| | | | 8/12/14 | Merrill Communications - refund dup pmt | -37.80 | |
| | | | 5/4/16 | Lone Star Legal | 227.71 | |
| | | | 8/2/17 | S&R Services - Mot for Prelim Approval Class Action Sett | 444.00 | |
| | | | | | 5,751.12 | |
| | | | | | | |
| **Postage (E108)** | | 190.87 | | | | |
| | | | 4/15/10 | USPS | 15.19 | |
| | | | 1/20/12 | USPS | 38.83 | |
| | | | 4/26/12 | USPS | 18.95 | |
| | | | 5/17/12 | Fedex | 35.45 | |
| | | | 8/15/12 | USPS | 75.00 | |
| | | | 1/30/13 | USPS | 7.45 | |
| | | | | | 190.87 | |
| | | | | | | |
| **Subpoena Fees (E113)** | | 154.00 | | | | |
| | | | 4/23/14 | A&A Legal - Subpoena fees advanced - Metro Phoenix Bank | $40.00 | |
| | | | 5/15/14 | A&A Legal - Subpoena fees advanced - Eaglenx | $57.00 | |
| | | | 5/15/14 | A&A Legal - Subpoena fees advanced - Archie Emerson | $57.00 | |
| | | | | | $154.00 | |
| | | | | | | |
| **Trial Transcripts (E116)** | | 78.65 | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | 12/5/13 | Diane Skillman | 78.65 | |
| | | | | | | |
| **TOTAL** | | 117,571.65 | | | | |
| | | | | | | |
| **TOTAL AS OF 9/30/13** | | | | | | |
| | **GSLLP** | 97,301.31 | | | | |
| | **Myers Nave--per declaration** | 2,890.69 | | | | |
| | **McNutt--per declaration** | 5,000.00 | | | | |
| **GRAND TOTAL as of 9/30/13** | | 105,192.00 | | | | |
| | | | | | | |
| **NEW SINCE 10/1/13** | | | | | | |
| | **GSLLP** | 20,270.34 | | | | |
| | | | | | | |
| **TOTAL TO DATE** | | 125,462.34 | | | | |
| | | | | | | |
| **Expense Reimbursement** | | | | | | |
| | | -52,000.00 | | Merchant Services Settlement | | |
| | | 1,445.35 | 2/20/14 | Meyers Nave Riback et al - share of cost recovery | 1,445.35 | |
| | | -50,554.65 | | net to GSLLP | | |
| | | | | | | |
| | **NET TOTAL** | 73,462.34 | | | | |